# Exhibit A

GIPSON HOFFMAN & PANCIONE
A Professional Corporation
DANIEL R. PALUCH (State Bar No. 287231)
*dpaluch@ghplaw.com*
1901 Avenue of the Stars, Suite 1100
Los Angeles, California 90067-6002
Telephone: (310) 556-4660
Facsimile: (310) 556-8945

Attorneys for Plaintiff StandWithUs
Center for Legal Justice

*(Additional counsel listed on following page*)

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| STANDWITHUS CENTER FOR LEGAL JUSTICE,<br><br>Plaintiff,<br><br>v.<br><br>CODEPINK, PALESTINIAN YOUTH MOVEMENT, and WESPAC FOUNDATION,<br><br>Defendants. | Case No.:<br><br>**COMPLAINT FOR:**<br><br>**1) Threatening and Intimidating Persons in Violation of 18 U.S.C. § 248(a)(2)**<br>**2) Threatening and Intimidating Persons in Violation of Cal. Pen. Code § 423.2**<br>**3) Threatening and Intimidating Persons in Violation of 18 U.S.C. § 248(a)(2)**<br>**4) Threatening and Intimidating Persons in Violation of 18 U.S.C. § 248(a)(2)** |

GIPSON HOFFMAN & PANCIONE
A PROFESSIONAL CORPORATION

1

COMPLAINT
CASE NO.

Mark Goldfeder (*Pro Hac Vice* forthcoming)
*mark@jewishadvocacycenter.org*
Ben Schlager (*Pro Hac Vice* forthcoming)
*ben@jewishadvocacycenter.org*
NATIONAL JEWISH ADVOCACY CENTER, INC.
INTERNATIONAL LEGAL FORUM
1718 General George Patton Drive
Brentwood, TN 37027
(800) 269-9895 (telephone)
(800) 758-5232 (facsimile)


Jason B. Torchinsky (*Pro Hac Vice* forthcoming)
*jtorchinsky@holtzmanvogel.com*
Edward M. Wenger (*Pro Hac Vice* forthcoming)
*emwenger@holtzmanvogel.com*
Erielle Davidson (*Pro Hac Vice* forthcoming)
*edavidson@holtzmanvogel.com*
HOLTZMAN VOGEL BARAN
TORCHINSKY & JOSEFIAK, PLLC
2300 N Street NW
Suite 643
Washington, DC 20037
(202) 737-8808 (telephone)
(540) 341-8809 (facsimile)


John Cycon (*Pro Hac Vice* forthcoming)
*jcycon@holtzmanvogel.com*
HOLTZMAN VOGEL BARAN
TORCHINSKY & JOSEFIAK, PLLC
15405 John Marshall Highway
Haymarket, VA 20169
(540) 341-8808 (telephone)
(540) 341-8809 (facsimile)

GIPSON HOFFMAN & PANCIONE
A PROFESSIONAL CORPORATION

2

COMPLAINT
CASE NO.

1473889.4 - 00057.00002

Plaintiff StandWithUs Center for Legal Justice ("Plaintiff" or "SCLJ") alleges as follows:

## **INTRODUCTION**

1.      Bear-sprayed worshippers. Jews assaulted, intimidated, and threatened. Bloodied members of the Jewish community whose only transgressions were to attend synagogue. The images that emerged from the antisemitic riot outside Adas Torah synagogue ("Adas Torah") on June 23, 2024, are outrageous.

2.      Deplorably, those images also are no longer surprising.

3.      Indeed, they are emblematic of an increasingly common occurrence: organized riots that violently target the American Jewish community.

4.      On June 23, individuals organized by Defendants Code Pink, Palestinian Youth Movement, and WESPAC Foundation (collectively, "Defendant Organizations") terrorized Jewish congregants outside their house of worship, blocking access to those seeking religious services and trapping others inside.

5.      Outside, Jewish worshippers were bear-sprayed, assaulted, intimidated, and threatened.

6.      This violence forcibly halted multiple daily *minyanim* (prayer services) and Torah study sessions.

7.      Defendant Organizations' violent riot also prevented congregants

COMPLAINT
CASE NO.

GIPSON HOFFMAN & PANCIONE
A PROFESSIONAL CORPORATION

1473889.4 - 00057.00002

from attending an event that, as elaborated on below, not only involved prayer but also sought to educate Jewish congregants about housing opportunities in Israel that would fulfill the religious commandment to "make *Aliyah*," or immigrate to Israel.

8.   The event is referred to henceforth as the *Aliyah* Event.[1]

9.   Appreciating the repugnance inherent in forcibly preventing the faithful from worship, Congress created a statutory mechanism to punish those who would inflict this harm and to enjoin them from ever doing it again.

10.   Specifically, the federal FACE Act, 18 U.S.C. § 248, ensures that worshippers may practice their respective religions free from persecution, interference, and intimidation.

---

[1] Aliyah comes from the Hebrew word for "rise" or "ascent":

> The term Aliyah, going up to Israel, is used in Genesis in reference to our forefather Jacob's bones being brought from Egypt to what would be the Land of Israel: "And Joseph returned to Egypt, he and his brothers, and all **who had gone up with him** to bury his father, after he had buried his father." Genesis 50:14. The Talmudic sages state that the Land of Israel is higher than all other lands. (Talmud Bavli, Kiddushin, 69a) This is not meant in a topographical sense, for clearly this is not the case. Rather, it means that the Holy Land is the most suitable place to relate and connect to the Almighty, and the primary location to lovingly engage in the observance of G-d's commandments. In other words, to go there is to be elevated, to go up to a higher level.

*What is "Aliyah"?,* CHABAD.ORG, chabad.org/library/article_cdo/aid/1584066/jewish/What-Is-Aliyah.htm (last visited July 21, 2024); *see also Mitzvah to Live in Israel,* AISH, https://aish.com/mitzvah-to-live-in-israel/#:~:text=The%20mitzvah%20to%20live%20in,Come%22%20(Ketuvot%20111a) (last visited July 21, 2024). As described below, 'making Aliyah', and even preparing to make Aliyah, is considered by many Jewish people to be a fulfillment of one of the most important religious commandments in the Torah.

GIPSON HOFFMAN & PANCIONE
A PROFESSIONAL CORPORATION

COMPLAINT
CASE NO.

4

11.     California has enacted a materially identical statute. *See* Cal. Pen. Code § 423.2.

12.     Having violated both, Defendant Organizations are liable for statutory damages and should be subject to appropriate injunctive relief to prevent them from ever violating the federal or California FACE Acts again.

## JURISDICTION AND VENUE

13.     This Court has jurisdiction under 28 U.S.C. §§ 1331 and 1343, which confer original jurisdiction on federal district courts to hear suits alleging the violation of rights and privileges under acts of Congress.

14.     This action, based on a violation of SCLJ's rights under the FACE Act, is brought under 18 U.S.C. § 248(c)(1)(A), which provides that "[a]ny person aggrieved by reason of the conduct prohibited by subsection (a) may commence a civil action."

15.     This Court has supplemental jurisdiction over SCLJ's California FACE Act claims because these state-law claim are "so related to [the] claims in [this] action within" the Court's "original jurisdiction that [it] form[s] part of the same case or controversy." 28 U.S.C. § 1367.

16.     Venue is proper in this district under 28 U.S.C. § 1391(b), because a substantial part of the events giving rise to SCLJ's claims occurred in the Pico-Robertson neighborhood of Los Angeles, California, which is in this District.

GIPSON HOFFMAN & PANCIONE
A PROFESSIONAL CORPORATION

5

COMPLAINT
CASE NO.

1473889.4 - 00057.00002

# **PARTIES**

17.     SCLJ is a tax-exempt membership organization organized under the laws of California.

18.     SCLJ's membership is composed of individuals from a host of different communities across the country, including Jewish and/or Israeli individuals who share SCLJ's dedication to combating antisemitism through legal action.

19.     SCLJ includes congregants from Adas Torah and members of the Los Angeles Jewish community who registered to go to Adas Torah on June 23, 2024, for organized Jewish activities, and/or who regularly attend religious services there.

20.     SCLJ Member #1 is a Jewish resident of Los Angeles who sought to attend the Aliyah Event at the time of the riot.

21.     SCLJ Member #2 is a Jewish resident of Los Angeles who sought to attend the Aliyah Event, as well as a religious service, at the time of the riot.

22.     SCLJ Member #3 is a Jewish resident of Los Angeles who sought to attend the Aliyah Event, as well as a religious service, at the time of the riot.

23.     SCLJ Member #4 is a Jewish resident of Los Angeles who sought to attend the Aliyah Event, as well as a religious service, at the time of the riot.

24.     SCLJ Member #5 is a Jewish resident of Los Angeles who sought to attend the Aliyah Event, as well as a religious service, at the time of the riot.

COMPLAINT
CASE NO.

GIPSON HOFFMAN & PANCIONE
A PROFESSIONAL CORPORATION

1473889.4 - 00057.00002

25.     SCLJ Member #6 is a Jewish resident of Los Angeles, as well as a member of Adas Torah, who was studying Torah at the synagogue at the time of the riot.

26.     SCLJ Member #7 is a Jewish resident of Los Angeles, as well as a member of Adas Torah, who sought to attend the afternoon prayer services at the time of the riot.

27.     During the riot, SCLJ members sought "to exercise the First Amendment right of religious freedom at a place of religious worship," namely Adas Torah, but were forcefully prevented from doing so.

28.     Specifically, on June 23, 2024, at approximately 1:30 p.m. local time, over two-hundred rioters, organized by Defendant Organizations and joined by their members, blocked SCLJ members' access to Adas Torah, where a series of religious services and study sessions were taking place, along with the Aliyah Event.

29.     Defendant CodePink ("CodePink") is a non-profit entity with Section 501(c)(3) tax-exempt status in the United States.

30.     CodePink describes itself as a "feminist grassroots organization working to end U.S. warfare and imperialism, support peace and human rights initiatives, and redirect resources into healthcare, education, green jobs and other

GIPSON HOFFMAN & PANCIONE
A PROFESSIONAL CORPORATION

7

COMPLAINT
CASE NO.

life-affirming[] programs."[2]

31.    Contrary to that description, CodePink has long supported terrorists and terrorist entities, including Iran, the largest state-sponsor of terror; Ansar Allah (also known as the "Houthis"),[3] which was previously designated a Foreign Terrorist Organization; and Hamas.[4]

32.    Each of these terrorist entities has called for the annihilation of the Jewish people.

33.    Members of CodePink have attended a conference in Iran with Holocaust deniers, and they have met with Hamas officials "several times."[5]

34.    Defendant WESPAC Foundation ("WESPAC") is a Section 501(c)(3) organization with its principal place of business in White Plains, New York.

35.    WESPAC is the fiscal sponsor of Defendant Palestinian Youth Movement ("PYM").[6]

---

[2] *What is CODEPINK?*, CODEPINK, https://www.codepink.org/about (last visited July 12, 2024).

[3] Haley Strac, *Another Defense of Terrorism from Code Pink*, NAT'L REVIEW (Jan. 16, 2024), https://www.nationalreview.com/corner/another-defense-of-terrorism-from-code-pink/.

[4] CODEPINK Staff, *CODEPINK Women Travel To Gaza TODAY To Witness Damage And Demand A Lifting Of The Blockade; Plan To Meet With Women's Groups, Hamas Officials*, CODEPINK (Jan. 29, 2009) https://www.codepink.org/official_release_codepink_women_travel_to_gaza_today_to_witness _damage_and_demand_a_lifting_of_the_blockade_plan_to_meet_with_women_s_groups_ham as_officials.

[5] James Reinl, *Hard-Left Activists Code Pink's History Of Israel-Bashing Revealed: Anti-War Feminist Group That's Under Congressional Scrutiny Over Ties To Chinese Communist Party Has A Record Of Links To Iran, Hamas And 'Antisemitism'*, DAILY MAIL (Dec. 23, 2023, 7:11 AM), https://www.dailymail.co.uk/news/article-12797043/Codepink-antisemitic-left-war-congress-Iran-Hamas-Israel.html.

[6] *Palestinian Youth Movement Profile*, NGO MONITOR (June 2, 2024), https://www.ngo-monitor.org/ngos/palestinian-youth-

8

COMPLAINT
CASE NO.

GIPSON HOFFMAN & PANCIONE
A PROFESSIONAL CORPORATION

36.     PYM is an unincorporated association without a formal principal place of business or publicly identified leadership structure.

37.     PYM regularly justifies terror attacks against Jewish persons and has expressed public support for members of U.S.-designated Foreign Terrorist Organizations.

38.     PYM's latest campaign of terrorizing Jewish people outside Adas Torah mirrors its previous activities.

39.     For instance, PYM recently helped organize a conference, titled the People's Conference for Palestine (the "Conference"), which involved multiple speakers who are affiliated with Foreign Terrorist Organizations.

40.     One such speaker was Sana Daqqah, the Conference's keynote speaker and wife of Walid Daqqah, a Popular Front for the Liberation of Palestine terrorist convicted of the kidnapping, torture, and murder of Israeli Moshe Tamam.[7]

41.     One PYM organizer at the Conference, Sarah Abdelshamy, celebrated the terror attacks of October 7, 2023, while speaking on a panel: "In the past eight months, we've seen incredible images of victory—from witnessing the families of political prisoners reunite with, and embrace their loved ones for the first time in

---

movement/#:~:text=WESPAC%20Foundation%20serves%20as%20the,amounts%20disbursed%20for%20PYM%20activities.

[7] Michael Starr, *Rashida Tlaib attends conference honoring terrorists, hosting terrorist speaker*, JERUSALEM POST (May 26, 2024), https://www.jpost.com/international/article-803703.

9

COMPLAINT
CASE NO.

1473889.4 - 00057.00002

GIPSON HOFFMAN & PANCIONE
A PROFESSIONAL CORPORATION

years—to scenes of our heroic people breaking down the siege that has suffocated the Gaza Strip for 17 years."[8]

42.     PYM often collaborates with the organization National Students for Justice in Palestine ("NSJP")—another of WESPAC's fiscal sponsorships—that is now being sued in the wake of the October 7 attacks in the U.S. District Court for the Eastern District of Virginia for providing material support to Hamas and other Foreign Terrorist Organizations.[9]

43.     Upon information and belief, members of PYM were among those who blocked access to Adas Torah on June 23, 2024.

44.     PYM operates as a fiscal sponsorship of WESPAC, meaning WESPAC collects and disburses donations on PYM's behalf because PYM lacks tax-exempt status.[10]

45.     The IRS requires fiscal sponsors to retain "control and discretion as to the use of the funds and maintain[] records establishing that the funds were used for section 501(c)(3) purposes."[11]

---

[8] *Id.*

[9] *See* Complaint for Damages and Jury Trial Demand, *Parizer v. AJP Educational Foundation Inc.*, No. 1:24cv724 (E.D. Va.).

[10] *Palestinian Youth Movement Profile*, NGO MONITOR (June 2, 2024), https://www.ngo-monitor.org/ngos/palestinian-youth-movement/#:~:text=WESPAC%20Foundation%20serves%20as%20the,amounts%20disbursed%20for%20PYM%20activities.

[11] 1968 IRB LEXIS 179, *1 (I.R.S. July 1, 1968); *see also National Foundation v. United States*, 13 Cl. Ct. 486, 87-2 USTC para. 9602 (1987).

COMPLAINT
CASE NO.

GIPSON HOFFMAN & PANCIONE
A PROFESSIONAL CORPORATION

1473889.4 - 00057.00002

46.     Thus, as the fiscal sponsor of PYM, WESPAC is responsible for how PYM uses its funds.

47.     Consequently, WESPAC is responsible for the promotion and funding that resulted in the violent riot that blocked the entrance to Adas Torah.

## **LEGAL STANDARD**

48.     The FACE Act imposes civil and criminal penalties on any person who "by force or threat of force or by physical obstruction, intentionally injures, intimidates or interferes with or attempts to injure, intimidate or interfere with any person lawfully exercising or seeking to exercise the First Amendment right of religious freedom at a place of religious worship." 18 U.S.C. § 248(a)(2).

49.     The FACE Act also imposes civil and criminal penalties on any person who "intentionally damages or destroys the property of a place of religious worship." *Id*. § 248(a)(3).

50.     The FACE Act creates a private right of action: "Any person aggrieved by reason of the conduct prohibited by subsection (a) may commence a civil action for the relief set forth in subparagraph (B)." *Id*. § 248(c)(1)(A).

51.     The FACE Act authorizes courts to "award appropriate relief, including temporary, preliminary or permanent injunctive relief and compensatory and punitive damages, as well as the costs of suit and reasonable fees for attorneys and expert witnesses." *Id*. § 248(c)(1)(B).

COMPLAINT
CASE NO.

GIPSON HOFFMAN & PANCIONE
A PROFESSIONAL CORPORATION

1473889.4 - 00057.00002

52.     "With respect to compensatory damages, the plaintiff may elect, at any time prior to the rendering of final judgment, to recover, in lieu of actual damages, an award of statutory damages in the amount of $5,000 per violation." *Id*.

53.     The California FACE Act, Cal. Pen. Code § 423.2, provides a similar cause of action: "Every person who . . . [b]y force, threat of force, or physical obstruction that is a crime of violence, intentionally injures, intimidates, interferes with, or attempts to injure, intimidate, or interfere with a person lawfully exercising or seeking to exercise the First Amendment right of religious freedom at a place of religious worship," violates the California FACE Act. Cal. Pen. Code § 423.2(b).

54.     Finally, "[e]very person who . . . [i]ntentionally damages or destroys the property of a place of religious worship," violates the California FACE Act. *Id*. § 423.2(f).

55.     Section 423.4 of the California Penal Code provides that "[a] person aggrieved by a violation of" the California FACE Act "may bring a civil action to enjoin the violation, for compensatory and punitive damages, and for the costs of suit and reasonable fees for attorneys and expert witnesses," so long as the plaintiff is either a person "lawfully exercising or seeking to exercise the First Amendment right of religious freedom in a place of religious worship, or the entity that owns or operates a place of religious worship." *Id*. § 423.4(a).

COMPLAINT
CASE NO.

GIPSON HOFFMAN & PANCIONE
A PROFESSIONAL CORPORATION

1473889.4 - 00057.00002

56.    And "[w]ith respect to compensatory damages, the plaintiff may elect, at any time prior to the rendering of a final judgment, to recover, in lieu of actual damages, an award of statutory damages in the amount of one thousand dollars ($1,000) per exclusively nonviolent violation, and five thousand dollars ($5,000) per any other violation, for each violation committed." *Id*.

57.    Actual damages may exceed the $1,000 or $5,000 statutory-damage amounts contemplated by the federal and state FACE Acts.

## STATEMENT OF FACTS

58.    On June 23, 2024, more than two-hundred rioters, organized by Defendant Organizations, marched into the predominantly orthodox Jewish neighborhood of Pico-Robertson in Los Angeles's Westside and blocked access to Adas Torah.

59.    Many of those rioters were armed with various weapons, including bear-spray.

60.    The rioters prevented worshippers (including members of SCLJ) from attending regularly scheduled afternoon prayers at Adas Torah.

61.    By stoking such unrest and engaging in physical violence, members of Defendant Organizations made it impossible for members of Adas Torah to practice their religion free from persecution, intimidation, and violence.

62.    As discussed below, the riot Defendant Organizations planned violated both the federal and state FACE Acts.

COMPLAINT
CASE NO.

GIPSON HOFFMAN & PANCIONE
A PROFESSIONAL CORPORATION

1473889.4 - 00057.00002

**Adas Torah's Services on June 23, 2024.**

63.     In the days before June 23, 2024, a real estate company called My Home in Israel, which specializes in assisting American Jews buy homes in Israel, announced the *Aliyah* Event, which was to be held at Adas Torah.[12]

64.     This event was scheduled for June 23, 2024.

65.     Although outsiders have characterized the Adas Torah event as a "mere" housing or real estate event, it was anything but that.

66.     For many in the Orthodox Jewish community, the event—and others like it— which educate people about the realities of making Aliyah, represents a key aspect of an integral part of Jewish religious observance.

67.     Many members of the Jewish community believe that their faith includes a religious commandment ("*mitzvah*") to buy land in their ancestral homeland of Israel and to dwell there.[13]

68.     In fact, the Sages of the Talmudic era were clear that the commandment to settle the land, which specifically includes buying a home in Israel (*see,* e.g., Babylonian Talmud Gittin 8b) "is equivalent to all of the other commandments in the Torah." (Sifrei, Re'eh, 53).

---

[12] MY  HOME IN ISRAEL, https://homeinisrael-il.com/ / (last visited July 24, 2024).

[13] *See, e.g.*, Babylonian Talmud, Ketubot 110b; Numbers 33:53; Deuteronomy 11:31.; *see also Mitzvah to Live in Israel*, AISH, https://aish.com/mitzvah-to-live-in-israel/#:~:text=The%20mitzvah%20to%20live%20in,Come%22%20(Ketuvot%20111a) (last visited July 12, 2024).

COMPLAINT
CASE NO.

14

GIPSON HOFFMAN & PANCIONE
A PROFESSIONAL CORPORATION

69. Moving to Israel, thereby fulfilling this religious commandment, is known as "making *Aliyah*."

70. The preparations to make *Aliyah* (including educating oneself about the options for doing so, and then buying a home) are also considered at least a partial fulfillment of the commandment.[14]

71. The specific commandment to buy a home in Israel is so special that it may even override certain other commandments.[15]

72. Indeed, this commandment merits its own discussions in the Talmudic and rabbinic sources.[16]

73. This is why events like the *Aliyah Event* are often held in synagogues and often include some form of prayer or Torah study—because it is generally understood by the community for which such events are intended that these are *not* just "real estate events" and are, in fact, manifestly religious in nature.

74. In other words, had Defendant Organizations' mob allowed the *Aliyah Event* to proceed, attendance by members of the community would have fulfilled an important religious commandment for those seeking to learn more about or to fulfill the *mitzvah* of *Aliyah*.

---

[14] *See* Peninei Halakha, Shabbat 9:12 (citing Ramban (Nachmanides) on Babylonian Talmud Shabbat 130b); Rivash §387; *see also* Artzot Ha'Chaim, p. 2 (discussing how every step on the way is a separate fulfillment of a commandment).

[15] *See* Babylonian Talmud, Bava Kamma 80b.

[16] *See, i.e.*, Babylonian Talmud, Gittin 8b, Shulchan Aruch (Code of Jewish Law), Orach Chayim 306:11.

COMPLAINT
CASE NO.

GIPSON HOFFMAN & PANCIONE
A PROFESSIONAL CORPORATION

1473889.4 - 00057.00002

75.     For most attendees and potential attendees, attendance at this event, or any such *Aliyah* Event, would constitute a lawful exercise of their First Amendment right of religious freedom.

76.     Simultaneously, on the day and time of the *Aliyah* Event, Adas Torah was also hosting multiple afternoon prayer services, or *minyanim*, as well as Torah study sessions.

77.     These prayer services are held every day.

78.     Around thirty to forty people, including members of SCLJ, regularly attend the 1:30 pm *minyanim*.

**Defendant Organizations Call Rioters to Assemble Outside Adas Torah.**

79.     Upon learning of the *Aliyah* Event, Defendant Organizations called on their members to assemble outside Adas Torah based on the lie that Adas Torah was hosting an event that encouraged its congregants to "steal" Palestinian land.

80.     Upon information and belief, these dishonest social media posts were designed to generate the most possible outrage.

81.     For instance, on June 20, 2023, the People's City Council–Los Angeles, a Los Angeles-based "[a]bolitionist, anti-capitalist & anti-imperialist collective," posted on X a statement reading: "OUR LAND IS NOT FOR SALE! This Sunday, 6/23, a real estate event will be marketing homes in 'anglo

COMPLAINT
CASE NO.

GIPSON HOFFMAN & PANCIONE
A PROFESSIONAL CORPORATION

1473889.4 - 00057.00002

neighborhoods' in effort to further occupy Palestine[.] Racist settler expansionists arent [sic] welcome in LA! Join us @ 12 PM- 9040 W Pico Blvd."[17]

82. Other organizations, including Defendant Organizations, followed suit.

83. On Friday, June 21, 2024, CodePink's Los Angeles and Southeast Los Angeles chapters issued a collaborative post[18] on Instagram claiming that "A MEGA ZIONIST REAL ESTATE EVENT IS IN LA THIS WEEK!"[19]

84. The post featured multiple slides, including a slide that urged: "HELP US ADVOCATE THE STOP OF HOMES BEING SOLD ON STOLEN PALESTINIAN LAND!"[20]

85. The call to assemble included the dates and addresses of two events— one in North Hollywood on June 20 and the second at Adas Torah on June 23.[21]

---

[17] @PplsCityCouncil, X (June 20, 2024, 7:26 PM), https://x.com/PplsCityCouncil/status/1803932341875937685?ref_src=twsrc%5Etfw%7Ctwcamp%5Etweetembed%7Ctwterm%5E1803932341875937685%7Ctwgr%5Ee52cce6315c004ed398fbd50753fe57fb520d5c2%7Ctwcon%5Es1_&ref_url=https%3A%2F%2Fforward.com%2Ffast-forward%2F626491%2Fla-synagogue-adas-torah-protest-palestinians-israel%2F.

[18] A collaborative post is one that both accounts agree to have appear on their respective profiles. *See* HUBSPOT, *How to Collab Post on Instagram as a Brand or Creator [Steps + Tips]*, https://blog.hubspot.com/marketing/instagram-collab-post (last visited July 5, 2024).

[19] CODEPINK Southeast Los Angeles (@codepinksela) & CODEPINK Los Angeles (@codepinkla), INSTAGRAM, https://www.instagram.com/p/C8c6f8dyplb/?img_index=1 (last visited July 3, 2024).

[20] *Id.*

[21] *Id.*

COMPLAINT
CASE NO.

GIPSON HOFFMAN & PANCIONE
A PROFESSIONAL CORPORATION

1473889.4 - 00057.00002

86. The dates and addresses were placed inside inverted red triangles. [22] *See* Exhibit A.

87. Since October 7, 2023, Hamas and its supporters on social media have used inverted red triangles as a symbol for Hamas and to celebrate its use of violence against Jews and Israelis.

88. In other words, the inverted red triangle acts as a target designator to identify Jews and Jewish targets for extermination.[23]

89. Also, on June 21, 2024, PYM posted a slide on its Instagram, calling for members to show up at "12 PM SHARP" and declaring "OUR LAND IS NOT FOR SALE."[24]

90. The slide continues: "STAND AGAINST SETTLER EXPANSION AT SUNDAY'S REAL ESTATE EVENT SELLING HOMES TO BUILD 'ANGLO NEIGHBORHOODS' IN PALESTINE."[25]

91. The caption beneath the slide states: "Racist settler expansionists are not welcome in Los Angeles! This blatant example of land theft is operating in our own backyard. The Nakba[[26]] is ongoing and must be confronted!"

---

[22] *Id.*

[23] https://extremismterms.adl.org/glossary/inverted-red-triangle

[24] PYM LA-OC-IE (@pymlaocie) & Palestinian Youth Movement (@palestinianyouthmovement), INSTAGRAM, https://www.instagram.com/p/C8dActZyjiI/?igsh=d3o3eWw3OTZrZjhk (last visited July 3, 2024).

[25] *Id.*

[26] PYM LA-OC-IE (@pymlaocie) & Palestinian Youth Movement

COMPLAINT
CASE NO.

18

GIPSON HOFFMAN & PANCIONE
A PROFESSIONAL CORPORATION

1473889.4 - 00057.00002

92.     It concludes: "FROM THE BELLY OF THE BEAST[.] NO JUSTICE, NO PEACE."[27]

93.     Upon information and belief, the phrase "BELLY OF THE BEAST" refers to a synagogue, a place where Jews congregate to pray.

**Defendant Organizations Riot Outside Adas Torah.**

94.     On Sunday, June 23, 2024, organized by Defendant Organizations and others, more than two-hundred rioters (upon information and belief) descended to the streets surrounding Adas Torah.

95.     Chaos and violence ensued right after.

96.     Specifically, the rioters drawn to Adas Torah by Defendant Organizations' calls for action donned masks and signs; threw punches at synagogue members and Jews who had arrived to provide support for their fellow worshippers; and engaged in other acts of violence.

97.     Some rioters were wearing Hamas's green headbands, chanting "Intifada," and calling for indiscriminate violence against Jewish people.[28]

---

(@palestinianyouthmovement), INSTAGRAM, https://www.instagram.com/p/C8dActZyjiI/?igsh=d3o3eWw3OTZrZjhk (last visited July 3, 2024). *Nakba* refers to the defeat of the Arab armies in the 1948 war for Israel's independence after the Arab armies invaded Israel. *See Nakba*, Jewish Virtual Library, https://www.jewishvirtuallibrary.org/nakba (last visited July 12, 2024).

[27] *Id.*

[28] Summer Lin et al., *More Details Emerge On Protest Outside L.A. Synagogue*, YAHOO! NEWS (June 27, 2024, 6:00 AM), https://au.news.yahoo.com/very-traumatic-medic-describes-things-100038626.html.

19

COMPLAINT
CASE NO.

GIPSON HOFFMAN & PANCIONE
A PROFESSIONAL CORPORATION

1473889.4 - 00057.00002

98. Some rioters arrived wearing ski goggles in preparation for the violence.[29]

99. Footage of the violence quickly spread through social media.[30]

100. Scenes of blood on the streets, use of bear-spray, and the brandishing of make-shift weapons (including, among other things, a skateboard), permeated cyberspace and were reported by dozens of news outlets.

101. About sixty police officers were called to the scene to stop the violent rioters, while many people were treated for their injuries.

102. While the riot was raging, worshippers, many of whom are members of SCLJ, were attempting to enter Adas Torah to attend one or several of the following: an afternoon prayer session or *minyan*, a Torah study session, and the *Aliyah* Event.

103. SCLJ Member #1 was one of the worshippers who was prevented by the mob from exercising his constitutionally and statutorily protected free-exercise rights to attend the *Aliyah* Event.

104. SCLJ Member #1 had preregistered to attend the *Aliyah* Event.

---

[29] Michael Starr, *Anti-Israel Protestors Beat, Bear Mace Jews, Journalists At LA Synagogue*, JERUSALEM POST (June 24, 2024, 2:13 AM), https://www.jpost.com/breaking-news/article-807411.

[30] CODEPINK Southeast Los Angeles Chapter (@codepinksela), INSTAGRAM, https://www.instagram.com/reel/C8khglxyMw4/?utm_source=ig_web_copy_link&igsh=MzRlO DBiNWFlZA== (last visited July 3, 2024).

COMPLAINT
CASE NO.

GIPSON HOFFMAN & PANCIONE
A PROFESSIONAL CORPORATION

1473889.4 - 00057.00002

105.   SCLJ Member #1 managed to enter Adas Torah through an alleyway behind the building, where an armed security guard admitted him into the building.

106.   SCLJ Member #1 learned of this secret entrance through a WhatsApp group, though not all attendees of the June 23 events were on the group.

107.   SCLJ Member #2 was one of the worshippers who was initially prevented by the mob from exercising her constitutionally and statutorily protected free-exercise rights to attend both the *Aliyah* Event and an afternoon prayer service.

108.   SCLJ Member #2 had preregistered to attend the *Aliyah* Event.

109.   SCLJ Member #2 managed to enter Adas Torah through an alleyway behind the building, where an armed security guard admitted her into the building.

110.   SCLJ Member #2 learned of this secret entrance through a WhatsApp group, though not all attendees of the June 23 events were on the group.

111.   SCLJ Member #2 did not find a prayer service available for her to join.

112.   SCLJ Member #3 was one of the worshippers who was initially prevented by the mob from exercising her constitutionally and statutorily protected free-exercise rights to attend both the *Aliyah* Event and an afternoon prayer service.

113.   SCLJ Member #3 had intended to attend the *Aliyah* Event with her mother.

COMPLAINT
CASE NO.

1473889.4 - 00057.00002

114. SCLJ Member #3 managed to enter Adas Torah synagogue through an alleyway behind the building, where an armed security guard admitted her into the building.

115. SCLJ Member #3 learned of this secret entrance through a WhatsApp group, though not all attendees of the June 23 events were on the group.

116. SCLJ Member #3 did not find a prayer service available for her to join.

117. SCLJ Member #4 was one of the worshippers who was initially prevented by the mob from exercising his constitutionally and statutorily protected free-exercise rights to attend the *Aliyah* Event and participate in an afternoon prayer service.

118. SCLJ Member #4 managed to enter Adas Torah through an alleyway behind the building, where an armed security guard admitted him into the building.

119. SCLJ Member #4 learned of this secret entrance through a WhatsApp group, though not all attendees of the June 23 events were on the group.

120. SCLJ Member #4 did not find a prayer service available for him to join.

121. SCLJ Member #5 was one of the worshippers who initially was prevented by the mob from exercising his constitutionally and statutorily protected free-exercise rights to attend the *Aliyah* Event and participate in an afternoon prayer service.

22

COMPLAINT
CASE NO.

GIPSON HOFFMAN & PANCIONE
A PROFESSIONAL CORPORATION

1473889.4 - 00057.00002

122. SCLJ Member #5 had preregistered to attend the *Aliyah* Event.

123. SCLJ Member #5 managed to enter Adas Torah through an alleyway behind the building, where an armed security guard admitted him into the building.

124. SCLJ Member #5 learned of this secret entrance through a WhatsApp group, though not all attendees of the June 23 events were on the group.

125. SCLJ Member #5 did not find a prayer service available for him to join.

126. SCLJ Member #6 had attended morning prayer services at the Adas Torah synagogue and remained inside the building.

127. When the riot began, SCLJ Member #6 was attempting to study Torah but had trouble doing so because of the violent commotion outside the building, as rioters blocked access to and from the synagogue, as well as blocked the sidewalks.

128. SCLJ Member #7 was one of the worshippers who was prevented entirely by the mob from exercising his constitutionally and statutorily protected free-exercise rights to participate in an afternoon prayer service, the prayer service he regularly attends at Adas Torah.

129. SCLJ Member #7 was not a member of the aforementioned WhatsApp group containing some attendees of Adas Torah, so he was unaware of the secret entrance to Adas Torah.

130. Therefore, SCLJ Member #7 was unable to attend an afternoon prayer service at Adas Torah.

COMPLAINT
CASE NO.

1473889.4 - 00057.00002

131.   Though all three events continued at Adas Torah on July 23, 2024, upon information and belief, many regular members who either attend *minyan* or study Torah at Adas Torah in the afternoon were entirely unable to do so, much like SCLJ Member #7.

132.   Of those SCLJ Members who eventually were able to attend events at Adas Torah, their initial attempts to attend the events were obstructed by rioters.

133.   Furthermore, those SCLJ Members had to expose themselves to possible physical danger to attend their respective events.

134.   On information and belief, the reason why the members who were able to enter the synagogue were nonetheless unable to find an available prayer service is because the prayer services were interrupted and obstructed by the mob.

135.   The violence—and Defendant Organizations' interference with worshippers' attempts to exercise their rights to worship at Adas Torah—was reported in real time.

136.   *The Wall Street Journal* published an article titled: "Pro-Palestinian Protesters Block Access to Los Angeles Synagogue in Violent Clash."[31]

---

[31] Alyssa Lukpat, *Pro-Palestinian Protesters Block Access to Los Angeles Synagogue in Violent Clash*, WALL ST. J. (June 24, 2024, 5:48 PM), https://www.wsj.com/us-news/pro-palestinian-protesters-block-access-to-los-angeles-synagogue-in-violent-clash-7d48098f.

COMPLAINT
CASE NO.

GIPSON HOFFMAN & PANCIONE
A PROFESSIONAL CORPORATION

1473889.4 - 00057.00002

137. KTLA 5 news station also reported that "[a]ccording to video posted to the Citizen app, pro-Palestinian protesters blocked the entrance to a synagogue."[32]

138. The next day, *The Jerusalem Post* published an article, titled, "Anti-Israel protesters beat, bear mace Jews, journalists at LA synagogue."[33]

139. Meanwhile, Defendant Organizations crafted their own narrative surrounding the riot, denying that their rioters were violent and rejecting the notion that any congregants were blocked from accessing the synagogue.

140. On the day of the riot, CodePink's Southeast Los Angeles chapter posted on its Instagram account a video from the riot, confirming its presence outside the synagogue.[34]

141. The same day, CodePink's Southeast Los Angeles chapter, in collaboration with the CodePink's Los Angeles chapter and CodePink's national organization, posted more footage from the riot, including another slide featuring a giant inverted red triangle with the address of Adas Torah inside it.[35]

---

[32] Austin Turner & Josh DuBose, *Pro-Palestinian And Pro-Israeli Demonstrators Clash Outside Synagogue In Los Angeles*, KTLA 5, (June 23, 2024, 2:34 PM), https://ktla.com/news/local-news/protesters-allegedly-block-entrance-to-synagogue-in-los-angeles/.

[33] Michael Starr & Jerusalem Post Staff, *Anti-Israel protesters beat, bear mace Jews, journalists at LA synagogue*, JERUSALEM POST (June 24, 2024).

[34] CODEPINK Southeast Los Angeles Chapter (@codepinksela), INSTAGRAM, https://www.instagram.com/reel/C8khglxyMw4/?utm_source=ig_web_copy_link&igsh=MzRlO DBiNWFlZA== (last visited July 3, 2024).

[35] CODEPINK Southeast Los Angeles Chapter (@codepinksela) & CODEPINK Alert (@codepinkalert), INSTAGRAM, https://www.instagram.com/p/C8lLvLIJu9h/?utm_source=ig_web_copy_link&igsh=MzRlODBi

COMPLAINT
CASE NO.

GIPSON HOFFMAN & PANCIONE
A PROFESSIONAL CORPORATION

1473889.4 - 00057.00002

142.     The photograph was captioned, in part: "Our comrades witnessed nothing out of the ordinary: madness, chaos, agitation, provoking and the use of physical force by the zi0nist [*sic*] community and LAPD."[36]

143.     In a public statement issued on June 24, 2024, CodePink acknowledged that its organizers and members attended the riot that blocked the entrance to the synagogue: "While our comrades were physically assaulted, pepper/bear sprayed, and attacked as they walked back to their cars, LAPD did nothing to keep us safe but rather pushed and used their combat toys to add to injury."[37]

144.     The statement continued: "[S]hame on LA for allowing the hosting of these types of events that promote illegal sales of Palestinian territory and homes!"[38]

145.     Indeed, CodePink's website states: "CODEPINK recognizes Palestinians as the rightful owners and caretakers of Palestine, their indigenous homeland," and "[w]e support Palestinians' right to resist the violent Israeli occupation of Palestine."[39]

---

NWFlZA%3D%3D&img_index=2 (last visited July 3, 2024).

[36] *Id.*

[37] CODEPINK Los Angeles Chapter (@codepinkla) & CODEPINK Southeast Los Angeles Chapter (@codepinksela), INSTAGRAM, https://www.instagram.com/p/C8nHwetSMQR/?utm_source=ig_web_copy_link&igsh=MzRlO DBiNWFlZA%3D%3D&img_index=1 (last visited July 3, 2024).

[38] *Id.*

[39] CODEPINK- JUSTICE FOR PALESTINE, https://www.codepink.org/palestine (last visited

COMPLAINT
CASE NO.

26

1473889.4 - 00057.00002

146. CodePink's website further emphasizes that "[w]e must express our outrage."[40]

147. On Monday, June 24, 2024, CodePink's national organization, in collaboration with CodePink's Southeast Los Angeles chapter, posted on its Instagram a slide stating that "there was a peaceful protest against the illegal sale of stolen land in Palestine in a synagogue. Zionists attacked peaceful protestors, stole their phones, and LAPD watched on and helped."[41]

148. Beneath the slide was a longer caption stating that "[n]o religious services were scheduled at the time of the real estate sale . . . . Contrary to what the media is falsely reporting, the entrance was never blocked by anyone."[42]

149. Both statements by CodePink are false: there were religious services scheduled at Adas Torah the time of the riot instigated by CodePink, the *Aliyah Event* itself was also religious in nature, and the rioters organized by Defendant Organizations did block the entrance to Adas Torah.

---

July 3, 2024).

[40] *Id.*

[41] CODEPINK Alert (@codepinkalert) & CODEPINK Southeast Los Angeles Chapter (@codepinksela), INSTAGRAM, https://www.instagram.com/p/C8nDkh3y06J/?utm_source=ig_web_copy_link&igsh=MzRlOD BiNWFlZA== (last visited July 3, 2024).

[42] *Id.*

27

COMPLAINT
CASE NO.

GIPSON HOFFMAN & PANCIONE
A PROFESSIONAL CORPORATION

150.     Despite their demonstrable falsity, similar statements were posted on the Instagram accounts of CodePink's Los Angeles and Southeast Los Angeles chapters.[43]

151.     On Tuesday, June 25, 2024, CodePink's Southeast Los Angeles chapter posted a video of a press conference with multiple speakers.

152.     The first speaker—whose name is not provided—stated that the "Adas Torah synagogue is complicit in war crimes through its hosting of this event."[44]

153.     She added: "The attendees of this illegal sale event and the LAPD unleashed violence on protesters for daring to challenge the illegal sale of Palestinian land."[45]

154.     She finishes by assuring that: "[w]e will continue to challenge the sale of stolen Palestinian land in North American cities, no matter where these events take place."[46]

155.     The next day, CodePink's Southeast Los Angeles chapter posted a single slide stating: "FUCK ISRAEL."[47]

---

[43] CODEPINK Southeast Los Angeles Chapter (@codepinksela), INSTAGRAM, https://www.instagram.com/p/C8nHwetSMQR/?igsh=OWRmNXN3NW80Yzli, (last visited July 5, 2024).

[44] CODEPINK Southeast Los Angeles Chapter (@codepinksela), INSTAGRAM, https://www.instagram.com/reel/C8p9LjVSX72/?igsh=ZjRlZHhmY2N2eTI4 (last visited July 5, 2024).

[45] *Id.*

[46] *Id.*

[47] CODEPINK Southeast Los Angeles Chapter (@codepinksela), INSTAGRAM, https://www.instagram.com/p/C8sWnHZy_R9/?utm_source=ig_web_copy_link&igsh=MzRlO

COMPLAINT
CASE NO.

GIPSON HOFFMAN & PANCIONE
A PROFESSIONAL CORPORATION

1473889.4 - 00057.00002

## Defendant Organizations' Riot is Universally Censured.

156.   The riot outside of Adas Torah synagogue has been roundly condemned across the political spectrum.

157.   Los Angeles Mayor Karen Bass released a statement on the day of the riot: "Today's violence in the Pico-Robertson neighborhood was abhorrent, and blocking access to a place of worship is unacceptable . . . . I want to be clear that Los Angeles will not be a harbor for antisemitism and violence. Those responsible for either will be found and held accountable."[48]

158.   Similarly, President Joe Biden denounced the violent rioters the day-of: "I'm appalled by the scenes outside of Adas Torah synagogue in Los Angeles. Intimidating Jewish congregants is dangerous, unconscionable, antisemitic, and un-American. Americans have a right to peaceful protest. But blocking access to a house of worship—and engaging in violence—is never acceptable."[49]

159.   And California Governor Gavin Newsom stated that "[t]he violent clashes outside Adas Torah in Los Angeles are appalling. There is no excuse for targeting a house of worship. Such antisemitic hatred has no place in California."[50]

---

DBiNWFlZA== (last visited July 3, 2024).

[48] @MayorOfLA, X (June 24, 2024, 1:27 AM), https://x.com/MayorOfLA/status/1805110392806642141.

[49] @POTUS, X (June 24, 2024, 10:56 AM), https://x.com/POTUS/status/1805253626551497103?ref_src=twsrc%5Etfw.

[50] @CAgovernor, X (June 24, 2024, 1:16 AM), https://x.com/CAgovernor/status/1805107636368810029.

29

COMPLAINT
CASE NO.

GIPSON HOFFMAN & PANCIONE
A PROFESSIONAL CORPORATION

# **FIRST CAUSE OF ACTION**

## **Threatening and Intimidating Persons in Violation of 18 U.S.C. § 248(a)(2)**

## **(SCLJ v. Defendant Organizations)**

## **(Interference with Daily *Minyanim* and Torah Study Sessions)**

160.    Plaintiff repeats, realleges, and incorporates by reference the allegations set forth in paragraphs 1 through 159 of this Complaint.

161.    The FACE Act imposes civil and criminal penalties on any person who "by force or threat of force or by physical obstruction, intentionally injures, intimidates or interferes with or attempts to injure, intimidate or interfere with any person lawfully exercising or seeking to exercise the First Amendment right of religious freedom at a place of religious worship." 18 U.S.C. § 248(a)(2).

162.    The FACE Act permits an action to be brought "by [any] person lawfully exercising or seeking to exercise the First Amendment right of religious freedom at a place of religious worship or by the entity that owns or operates such place of religious worship." *Id* § 248(c)(1)(A).

163.    Adas Torah is a place of religious worship for purposes of the FACE Act. *Id*. § 248(a)(2).

164.    The daily *minyanim* and Torah study sessions described above indisputably involve the "exercise [of] the First Amendment right of religious freedom at a place of religious worship." *Id*.

165.    On June 23, 2024, members of SCLJ were "seeking to exercise the First Amendment right of religious freedom at a place of religious worship,"

30

namely Adas Torah, but members of Defendant Organizations either forcefully prevented them from doing so or attempted to forcefully prevent them from doing so. *See id.*

166. Defendant Organizations, "[b]y force," "threat of force, or physical obstruction," "intentionally injure[d], intimidate[d], interfere[d] with," and "attempt[ed] to injure, intimidate, [and] interfere with" the worship services being held at Adas Torah on June 23, 2024.

167. Each of Defendant Organizations helped plan, organize, advertise, and fund the violent mob that threatened and intimidated the individuals lawfully exercising or seeking to exercise their First Amendment right of religious freedom at Adas Torah.

168. The mob organized by Defendant Organizations—at a minimum, through their social media blitz—also employed nonviolent tactics to prevent members of SCLJ from exercising their First Amendment right of religious freedom at Adas Torah synagogue.

169. Members of Defendant Organizations participated in the violence that prevented congregants from accessing Adas Torah.

170. Other rioters were encouraged by Defendant Organizations to take part in the violence that prevented congregants from accessing Adas Torah.

171. Defendant Organizations' actions violated the FACE Act.

172. Defendant Organizations' actions harmed members of SCLJ.

31

COMPLAINT
CASE NO.

173. On behalf of its members who attempted to attend the *minyanim* and Torah study sessions, SCLJ seeks from Defendant Organizations, jointly and severally, $5,000 per violation committed by Defendant Organizations' members or actual damages, whichever is greater.

174. As a result, SCLJ estimates statutory damages on behalf of these members under the FACE ACT total at least $1,000,000.

175. SCLJ also seeks temporary, preliminary, and permanent injunctive relief; punitive damages; and the costs of this suit and reasonable fees for attorneys and expert witnesses.

## **SECOND CAUSE OF ACTION**

**Threatening and Intimidating Persons in Violation of Cal. Pen. Code § 423.2**
**(SCLJ v. Defendant Organizations)**
**(Interference with Daily *Minyanim* and Daily Torah Study Sessions)**

176. Plaintiff repeats, realleges, and incorporates by reference the allegations set forth in paragraphs 1 through 159 of this Complaint.

177. The California FACE Act, Cal. Pen. Code § 423.2, provides that "[e]very person who . . . [b]y force, threat of force, or physical obstruction that is a crime of violence, intentionally injures, intimidates, interferes with, or attempts to injure, intimidate, or interfere with a person lawfully exercising or seeking to exercise the First Amendment right of religious freedom at a place of religious worship," can be held civilly liable. Cal. Pen. Code § 423.2(b).

COMPLAINT
CASE NO.

GIPSON HOFFMAN & PANCIONE
A PROFESSIONAL CORPORATION

1473889.4 - 00057.00002

178.   Section 423.4 provides that "[a] person aggrieved by a violation of" the California FACE Act "may bring a civil action to enjoin the violation, for compensatory and punitive damages, and for the costs of suit and reasonable fees for attorneys and expert witnesses," so long as the plaintiff is either a person "lawfully exercising or seeking to exercise the First Amendment right of religious freedom in a place of religious worship, or the entity that owns or operates a place of religious worship." *Id*. § 423.4(a).

179.   And "[w]ith respect to compensatory damages, the plaintiff may elect, at any time prior to the rendering of a final judgment, to recover, in lieu of actual damages, an award of statutory damages in the amount of one thousand dollars ($1,000) per exclusively nonviolent violation, and five thousand dollars ($5,000) per any other violation, for each violation committed." *Id*.

180.   Finally, "[e]very person who . . . [i]ntentionally damages or destroys the property of a place of religious worship," can be held civilly liable. *Id*. § 423.2(f).

181.   Adas Torah is a place of religious worship for purposes of the California FACE Act. *Id*. § 423.2(b).

182.   The daily *minyanim* and Torah study sessions described above indisputably involve the "exercise [of] the First Amendment right of religious freedom at a place of religious worship." *Id*.

33

COMPLAINT
CASE NO.

183.   On June 23, 2024, members of SCLJ were "seeking to exercise the First Amendment right of religious freedom at a place of religious worship," namely Adas Torah, but members of Defendant Organizations either forcefully prevented them from doing so or attempted to forcefully prevent them from doing so. *See id.*

184.   Defendant Organizations, "[b]y force, threat of force, or physical obstruction," "intentional[ly] injure[d], intimidate[d], interfere[d] with," and "attempt[ed] to injure, intimidate, or interfere with" the worship services being held at Adas Torah on June 23, 2024. *See id.* § 423.2(b).

185.   Each of Defendant Organizations helped plan, organize, advertise, and fund the violent mob that threatened and intimidated the individuals lawfully exercising or seeking to exercise their First Amendment right of religious freedom at Adas Torah.

186.   The mob organized by Defendant Organizations also employed nonviolent tactics—at a minimum, through their social media blitz—to prevent members of SCLJ from exercising their First Amendment right of religious freedom at Adas Torah.

187.   Members of each of Defendant Organizations, upon receiving encouragement from Defendant Organizations, participated in the violence that prevented congregants from accessing Adas Torah.

188.   Defendant Organizations' actions violated the California FACE Act.

COMPLAINT
CASE NO.

1473889.4 - 00057.00002

GIPSON HOFFMAN & PANCIONE
A PROFESSIONAL CORPORATION

189.   Defendant Organizations' actions harmed members of SCLJ.

190.   On behalf of its members who attempted to attend the *minyanim* and Torah study sessions, SCLJ seeks from Defendant Organizations, jointly and severally, $5,000 per violation committed by Defendant Organizations' members and $1,000 per nonviolent violation committed by Defendant Organizations' members or actual damages, whichever is greater.

191.   As a result, SCLJ estimates statutory damages on behalf of these members under the California FACE Act total at least $1,000,000.

192.   SCLJ also seeks temporary, preliminary, or permanent injunctive relief; punitive damages; and the costs of this suit and reasonable fees for attorneys and expert witnesses.

### THIRD CAUSE OF ACTION
### Threatening and Intimidating Persons in Violation of 18 U.S.C. § 248(a)(2)
### (SCLJ v. Defendant Organizations)
### (Interference with *Aliyah* Event)

193.   Plaintiff repeats, realleges, and incorporates by reference the allegations set forth in paragraphs 1 through 159 of this Complaint.

194.   The FACE Act subjects to civil and criminal penalties any person who "by force or threat of force or by physical obstruction, intentionally injures, intimidates or interferes with or attempts to injure, intimidate or interfere with any person lawfully exercising or seeking to exercise the First Amendment right of religious freedom at a place of religious worship." 18 U.S.C. § 248(a)(2).

COMPLAINT
CASE NO.

1473889.4 - 00057.00002

195.    The FACE Act permits an action to be brought under Section 248(a)(2) "by a person lawfully exercising or seeking to exercise the First Amendment right of religious freedom at a place of religious worship or by the entity that owns or operates such place of religious worship." *Id* § 248(c)(1)(A).

196.    Adas Torah is an entity that "owns or operates" a place of worship for purposes of the FACE Act. *Id*. § 248(c)(1)(A).

197.    Many in the Jewish community, including members of SCLJ, believe that their faith includes a *mitzvah* to buy land in Israel and dwell there.[51]

198.    The *Aliyah* Event was scheduled to provide an opportunity for the Adas Torah congregants to satisfy this *mitzvah*.

199.    The *Aliyah* Event was an inherently religious activity for many Jewish people, including, for example, members of SCLJ.

200.    For these reasons, attendance at the *Aliyah* Event constitutes the "exercise [of] the First Amendment right of religious freedom at a place of religious worship." *Id*.

201.    Therefore, on June 23, 2024, members of SCLJ were "seeking to exercise the First Amendment right of religious freedom at a place of religious worship," namely Adas Torah, but members of Defendant Organizations either

---

[51] *See supra* note 14; *see also supra* ¶¶ 66-74.

36

COMPLAINT
CASE NO.

GIPSON HOFFMAN & PANCIONE
A PROFESSIONAL CORPORATION

1473889.4 - 00057.00002

forcefully prevented them from doing so or attempted to forcefully prevent them from doing so. *See id*.

202.    Defendant Organizations, "[b]y force," "threat of force, or physical obstruction," "intentionally injure[d], intimidate[d], interfere[d] with," and "attempt[ed] to injure, intimidate, or interfere with" the worship services being held at Adas Torah on June 23, 2024. *See* 18 U.S.C. § 248(a)(2).

203.    Each of Defendant Organizations helped plan, organize, advertise, and fund the violent mob that threatened and intimidated the individuals lawfully exercising or seeking to exercise the First Amendment right of religious freedom at Adas Torah.

204.    The mob organized by Defendant Organizations also employed nonviolent tactics—at a minimum, through their social media blitz—to prevent members of SCLJ from exercising their First Amendment right of religious freedom at Adas Torah.

205.    Members of each of Defendant Organizations, upon receiving encouragement from Defendant Organizations, participated in the violence that prevented congregants from accessing Adas Torah.

206.    Defendant Organizations' actions violated the FACE Act.

207.    Defendant Organizations' actions harmed members of SCLJ.

208.    On behalf of its members who attempted to attend the housing event, SCLJ seeks from Defendant Organizations, jointly and severally, $5,000 per

37

COMPLAINT
CASE NO.

GIPSON HOFFMAN & PANCIONE
A PROFESSIONAL CORPORATION

violation committed by Defendant Organizations' members or actual damages, whichever is greater.

209. As a result, SCLJ estimates statutory damages on behalf of these SCLJ members under the FACE ACT total at least $1,000,000.

210. SCLJ also seeks temporary, preliminary, or permanent injunctive relief; punitive damages; and the costs of this suit and reasonable fees for attorneys and expert witnesses.

## FOURTH CAUSE OF ACTION

**Threatening and Intimidating Persons in Violation of 18 U.S.C. § 248(a)(2)**
**(SCLJ v. Defendant Organizations)**
**(Interference with *Aliyah* Event)**

211. Plaintiff repeats, realleges, and incorporates by reference the allegations set forth in paragraphs 1 through 159 of this Complaint.

212. The California FACE Act, Cal. Pen. Code § 423.2, provides that "[e]very person who . . . [b]y force, threat of force, or physical obstruction that is a crime of violence, intentionally injures, intimidates, interferes with, or attempts to injure, intimidate, or interfere with a person lawfully exercising or seeking to exercise the First Amendment right of religious freedom at a place of religious worship," can be held civilly liable. Cal. Pen. Code § 423.2(b).

213. Section 423.4 provides that "[a] person aggrieved by a violation of" the California FACE Act "may bring a civil action to enjoin the violation, for compensatory and punitive damages, and for the costs of suit and reasonable fees

38

GIPSON HOFFMAN & PANCIONE
A PROFESSIONAL CORPORATION

1473889.4 - 00057.00002

for attorneys and expert witnesses," so long as the plaintiff is either a person "lawfully exercising or seeking to exercise the First Amendment right of religious freedom in a place of religious worship, or the entity that owns or operates a place of religious worship." *Id*. § 423.4(a).

214. And "[w]ith respect to compensatory damages, the plaintiff may elect, at any time prior to the rendering of a final judgment, to recover, in lieu of actual damages, an award of statutory damages in the amount of one thousand dollars ($1,000) per exclusively nonviolent violation, and five thousand dollars ($5,000) per any other violation, for each violation committed." *Id*.

215. Finally, "[e]very person who . . . [i]ntentionally damages or destroys the property of a place of religious worship," can be held civilly liable. *Id*. § 423.2(f).

216. Adas Torah is a place of religious worship for purposes of the California FACE Act. *Id*. § 423.2(b).

217. Many in the Jewish community, including members of SCLJ, believe that their faith includes a *mitzvah* to buy land in Israel and dwell there.[52]

218. The *Aliyah* Event was scheduled to provide an opportunity for the Adas Torah congregants to satisfy this *mitzvah*.

---

[52] *Id*.

COMPLAINT
CASE NO.

GIPSON HOFFMAN & PANCIONE
A PROFESSIONAL CORPORATION

1473889.4 - 00057.00002

219. The *Aliyah* Event was an inherently religious activity for many Jewish people, including, for example, members of SCLJ.

220. For these reasons, attendance at the *Aliyah* Event constitutes the "exercise [of] the First Amendment right of religious freedom at a place of religious worship." *Id.*

221. Therefore, on June 23, 2024, members of SCLJ were "seeking to exercise the First Amendment right of religious freedom at a place of religious worship," namely Adas Torah, but rioters either forcefully prevented them from doing so or attempted to forcefully prevent them from doing so. *See id.*

222. Defendant Organizations, "[b]y force, threat of force, or physical obstruction," "intentional[ly] injure[d], intimidate[d], interfere[d] with," and "attempt[ed] to injure, intimidate, or interfere with" the worship services being held at Adas Torah synagogue on June 23, 2024. *See id.* § 423.2(b).

223. Each of Defendant Organizations helped plan, organize, advertise, and fund the violent mob that threatened and intimidated the individuals lawfully exercising or seeking to exercise their First Amendment right of religious freedom at Adas Torah.

224. The mob organized by Defendant Organizations also employed nonviolent tactics—at a minimum, through their social media blitz—to prevent members of SCLJ from exercising their First Amendment right of religious freedom at Adas Torah.

40

COMPLAINT
CASE NO.

1473889.4 - 00057.00002

225.   Members of each of Defendant Organizations, upon receiving encouragement from Defendant Organizations, participated in the violence that prevented congregants from accessing Adas Torah.

226.   Defendant Organizations' actions violated the California FACE Act.

227.   Defendant Organizations' actions harmed SCLJ.

228.   On behalf of its members who attempted to attend the housing event, SCLJ seeks from Defendant Organizations, jointly and severally, $5,000 per violation committed by Defendant Organizations' members and $1,000 per nonviolent violation committed by Defendant Organizations' members or actual damages, whichever is greater.

229.   As a result, SCLJ estimates statutory damages on behalf of these members under the California FACE Act total at least $1,000,000.

230.   SCLJ also seeks temporary, preliminary, or permanent injunctive relief; punitive damages; and the costs of suit and reasonable fees for attorneys and expert witnesses.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in its favor and against Defendant Organizations, as follows:

1.   Enter judgment against Defendant Organizations, jointly and severally, in the amount of the following: $5,000 for each violation of the FACE ACT; $5,000 for each violent violation of the California FACE Act; and $1,000 for

41

COMPLAINT
CASE NO.

1473889.4 - 00057.00002

each nonviolent of the California FACE Act by each member of Defendant Organizations or actual damages, whichever is greater;

      2.     Award SCLJ an appropriate punitive-damages award;

      3.     Award SCLJ its reasonable costs and expenses, including attorney fees, incurred in this action as authorized by 18 U.S.C. § 248(c)(1)(B) and Cal Pen Code § 423.2;

      4.     Enjoin Defendant Organizations and their members from going within one-hundred feet of Adas Torah; and

      5.     Award such other relief as the Court deems equitable and just.

## **DEMAND FOR JURY TRIAL**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff respectfully demands a trial by jury of all issues triable by jury.

GIPSON HOFFMAN & PANCIONE
A PROFESSIONAL CORPORATION

42

COMPLAINT
CASE NO.

1473889.4 - 00057.00002

Respectfully submitted this 24th day of July, 2024.

GIPSON HOFFMAN PANCIONE
A Professional Corporation

_____

DANIEL R. PALUCH
Attorneys for Plaintiff SCLJ


Mark Goldfeder*
mark@jewishadvocacycenter.org
Ben Schlager*
ben@jewishadvocacycenter.org
NATIONAL JEWISH ADVOCACY
CENTER, INC.
INTERNATIONAL LEGAL FORUM
1718 General George Patton Drive
Brentwood, TN 37027
(800) 269-9895 (telephone)
(800) 758-5232 (facsimile)


John Cycon*
jcycon@holtzmanvogel.com
HOLTZMAN VOGEL BARAN
TORCHINSKY & JOSEFIAK, PLLC
15405 John Marshall Highway
Haymarket, VA 20169
(540) 341-8808 (telephone)
(540) 341-8809 (facsimile)

Jason B. Torchinsky*
jtorchinsky@holtzmanvogel.com
Edward M. Wenger*
emwenger@holtzmanvogel.com
Erielle Davidson*
edavidson@holtzmanvogel.com
HOLTZMAN VOGEL BARAN
TORCHINSKY & JOSEFIAK, PLLC
2300 N Street NW
Suite 643
Washington, DC 20037
(202) 737-8808 (telephone)
(540) 341-8809 (facsimile)

*Attorneys for Plaintiff SCLJ*
*Pro Hac Vice Forthcoming*

GIPSON HOFFMAN & PANCIONE
A PROFESSIONAL CORPORATION

43

COMPLAINT
CASE NO.

1473889.4 - 00057.00002