Mark L. Javitch (CA SBN 323729)
mark@javitchlawoffice.com
Javitch Law Office
3 East 3rd Ave. Ste. 200
San Mateo, CA 94401
Telephone: (650) 781-8000
Facsimile: (650) 648-0705

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| RONEN HELMANN, CAMERON HIGBY, and JUDIT MAULL, | Case No.:2:24-cv-05704-SVW-PVC |
| Plaintiffs, | **FIRST AMENDED COMPLAINT** |
| v. | **DEMAND FOR JURY TRIAL** |
| CODEPINK WOMEN FOR PEACE, a California entity, CODEPINK ACTION FUND, a California entity, HONOR THE EARTH, a Minnesota entity, COURTNEY LENNA SCHIRF, and REMO IBRAHIM, d/b/a PALESTINIAN YOUTH MOVEMENT, and JOHN AND JANE DOES 1-20, | |
| Defendants. | |

## INTRODUCTION

1.     Plaintiff RONEN HELMANN is a religious Jew who resides in the Pico-Robertson neighborhood of Los Angeles, CA. He is an active member of the Jewish community. On June 23, 2024, Helmann tried to enter the Adas Torah Synagogue but was blocked by a violent mob of anti-Israel activists. Plaintiff CAMERON HIGBY is resident of Sherman Oaks who came as a journalist to film video and take pictures, when a person with a keffiyeh covering most of his face sprayed him with bear spray. Plaintiff JUDIT MAULL also resides in Pico-Robertson. Her car was blocked from crossing the street outside the synagogue, so she parked, and was standing next to people defending the synagogue, when she and others were bear sprayed.

2.     CODEPINK WOMEN FOR PEACE, CODEPINK ACTION FUND, (together "Code Pink") COURTNEY LENNA SCHIRF ("Defendant" or "Ms. Schirf"), and REMO IBRAHIM, ("Defendant," or "Mr. Ibrahim") on behalf of HONOR THE EARTH d/b/a PALESTINIAN YOUTH MOVEMENT ("Defendant" or "PYM") (together, "Defendants") organized their Hamas supporters to target and converge on a single local Jewish place of worship, Adas Torah Synagogue on Pico Boulevard, in the heart of the Los Angeles Jewish community.

3.     Defendants incited and instigated the entire attack by creating a new blood libel – that an "international war crime" was about to occur at a Adas Torah.

4.      Defendants formed a mob that blocked the entrance, preventing Plaintiff Helmann and others from accessing the synagogue. They bear sprayed Jewish people and others present, including Plaintiff Cameron Higby and Plaintiff Judit Maull.

5.      The attack was organized, publicized, aided, and funded by Code Pink and PYM, two organizations that seek to destroy the Jewish state of Israel, and joined by Ms. Schirf, PYM's lead organizer, and Mr. Ibrahim, PYM's lead organizer for PYM's local chapter, JOHN AND JANE DOE 1-20 (together, "Defendants") in an unlawful effort to use violence, intimidation, and threats to prevent Jewish people from accessing the synagogue and exercising their religion.

6.      Defendants conspired together to violate Plaintiffs' civil rights recognized under the Freedom of Access to Clinic Entrances Act ("FACE" Act) and two provisions of the Ku Klux Klan Act.

7.      Defendants' conspiratorial acts directly resulted in violence and threats against Jews who sought to access a synagogue, and others who sought to freely assemble and film public events pursuant to their Constitutional rights.

## PARTIES

8.      Plaintiff Ronen Helmann is a resident of the Pico-Robertson neighborhood of Los Angeles, California.

9.      Plaintiff Judit Maull is a resident of the Pico-Robertson neighborhood of Los Angeles, California.

10.     Plaintiff Cameron Higby was at all relevant times a resident of Los Angeles, California. He currently resides in Seattle, Washington.

11.     Defendant CodePink Women for Peace is a registered California entity and 501(c)(3) non-profit organization that supports the terrorist organization Hamas and opposes the state of Israel. Code Pink used social media and/or other means to incite followers to converge in front of a synagogue in Los Angeles on June 23, 2024, and to use fear and intimidation tactics to prevent Jewish people from entering the synagogue. Code Pink's headquarters are located in Marina Del Rey, California.

12.     Defendant CodePink Action Fund is a registered California entity and 501(c)(4) non-profit organization that is an alter ego of Codepink Women for Peace with the same headquarters and leadership.

13.     Defendant Honor the Earth d/b/a Palestinian Youth Movement ("PYM") is a Minnesota registered 501(c)(3) that supports Hamas and opposes the state of Israel and used social media and/or other means to incite followers to converge in front of a synagogue in Los Angeles on June 23, 2024, and to use fear and intimidation tactics to prevent Jewish people from entering the synagogue. PYM is not registered to do business in any jurisdiction, but it coordinates fundraising through Honor the Earth. PYM was previously a fiscally sponsored project of the Westchester People's Action Coalition (WESPAC), based out of Westchester, New York. Honor the Earth's primary address is currently 607 Main Ave. Callaway, MN, 56521. Honor the Earth's registered agent is

Northwest Registered Agent LLC, 202 N. Cedar Ave. Ste. 1, Owatonna, MN 55060–2306.

14.     Defendant Courtney Lenna Schirf d/b/a PYM is the lead organizer for PYM. Ms. Schirf is a citizen of Austin, Texas. Ms. Schirf has control over PYM's social media profiles. Ms. Schirf organized and instigated the attack on Torah Adas by posting on PYM's Instagram and other social media profiles.

15.     Defendant Remo Ibrahim d/b/a PYM is the head of the local chapter of the Palestinian Youth Movement for Los Angeles, Orange County, and the Inland Empire. Mr. Ibrahim is a citizen of Los Angeles, California. Mr. Ibrahim has control over the local chapter of PYM's social media profiles. Mr. Ibrahim organized and instigated the attack on Torah Adas by posting on PYM's Instagram and other social media profiles. After the attack, he gave an interview taking credit for "confronting Zionism and white supremacy."

16.     Defendants John and Jane Does 1-20 are unknown individuals who assaulted and threatened Plaintiff or joined in the conspiracies alleged in this Complaint through their planning, support, encouragement, and/or funding.

## JURISDICTION AND VENUE

17.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343 because Plaintiff's federal claims arise under the laws of the United States.

18.     Venue is proper in this Court pursuant to 28 U.S.C.§ 1391(b)(2) because substantial conduct giving rise to Plaintiffs' claims occurred in the Central District of California.

19.     This Court has personal jurisdiction over all Defendants pursuant to Fed. R. Civ. P. 4(k)(1)(A) because Defendants and their agents caused injuries to Plaintiffs by acts and omissions inside, or having an effect in this district and in the State of California.

**DEFENDANTS INFORM THEIR SUPPORTERS THAT A "WAR CRIME" IS ABOUT TO OCCUR AT ADAS TORAH SYNAGOGUE**

20.     Defendants rallied their Hamas supporters to attack people and block Jewish people from going to an Israel related event at Adas Torah.

21.     Defendants' strategy is to blame their grievances with Israel on one unlucky local synagogue – by telling their supporters that the local synagogue is part of an "international war crime" that is about to occur.

22.     Adas Torah was hosting an Israel related event that day. The event included religious education, information, and opportunities for members of the Los Angeles Jewish community to make *Aliyah*, or to fulfil their Biblical obligation to live in the land of Israel.

23.     Defendants targeted these Jewish practices to incite their supporters to cause chaos, violence, and block the entrance to the synagogue, all because of their hatred of Zionism, the Jewish connection to the land of Israel.

24.     On June 20, 2024, Defendant Code Pink targeted the synagogue in the Pico-Robertson neighborhood of Los Angeles on social media by telling their supporters that "A Mega Zionist Real Estate Event Is in LA this week."

25.     Code Pink incited its followers to "Bring flags, posters and megaphones. No Peace on Stolen Land."

26.     PYM also called on its followers to target the event as well.[1] Defendant Schirf controls PYM's social media generally and Defendant Ibrahim controls PYM's social media for the Los Angeles local chapter.

27.     Schirf and Ibrahim promoted the attack under the name of PYM on their Instagram profiles.

28.     Protest fliers posted on social media said, "Our Land Is Not For Sale," and condemned "land theft," according to a PYM Instagram post from the local chapter of the Palestinian Youth Movement.[2]

29.     "Racist settler expansionists are not welcome in Los Angeles!" said PYM LA. "This blatant example of land theft is operating in our own backyard. The *Nakba* [the

---

[1] *See* Starr, Michael. "LA Synagogue Riots Show US Not Taking Anti-Israel Threats Seriously." *The Jerusalem Post*, 25 June 2024, www.pressreader.com/israel/jerusalem-post/20240625/281732684668553 (last accessed 3 July, 2024).

[2] *See* Solis, Nathan, et al. "Protest Violence Outside L.A. Synagogue Spurs Widespread Condemnation. Bass Vows Quick Action." Los Angeles Times, 23 June 2024, https://www.yahoo.com/news/pro-palestinian-activists-israel-supporters-020157335.html (last accessed 31 July, 2024).

catastrophe that was the founding of the state of Israel] is ongoing and must be confronted!"[3]

## DEFENDANTS ATTACK ADAS TORAH SYNAGOGUE

30.    On Sunday, June 23, 2024, about two hundred anti-Israel protestors gathered to block access to the synagogue.

31.    Participants blocked traffic, and video shows multiple altercations broke out in the middle of the street and on sidewalks.[4]

32.    Videos taken at the scene show police pushing pro-Palestinian protesters away from the entrance of the Orthodox synagogue.[5]

33.    Chants of "Free, free Palestine - from the river to the sea," and "long live intifada," could be heard from among the pro-Palestinian protesters.

34.    Police arrested JOHN DOE 1, who was carrying a spiked post, for possessing a prohibited item.[6]

---

[3] *See* Starr, Michael. "Anti-Israel Protesters Beat, Bear Mace Jews, Journalists at LA Synagogue." *The Jerusalem Post*, 24 June 2024, https://www.jpost.com/breaking-news/article-807411 (last accessed 31 July, 2024).

[4] *Id*.

[5] *See* Von Quednow, Cindy, and Eric Levenson. "Pro-Palestinian Protest Outside LA Synagogue Criticized as 'Antisemitic' after Street Fights with Pro-Israel Protesters." CNN, Cable News Network, 24 June 2024, (www.cnn.com/2024/06/24/us/los-angeles-synagogue-palestinian-israeli-protest-violence/index.html) last accessed 31 July, 2024.

[6] *See* "Person with spiked post arrested in clash outside Los Angeles synagogue." *NBC Los Angeles*, 24 June 2024, https://www.nbclosangeles.com/news/local/arrest-la-synagogue-protest-israel-palestine/3443019/ (last accessed 7 July, 2024).

35.     There were several violent attacks on synagogue supporters.[7]

36.     Defendants and their supporters were armed with and used bear spray – strong enough to repel bears – and not meant for humans.

37.     Pico-Robertson resident Talia Regev, 42, tried to attend the synagogue event, but was bear-sprayed.[8]

38.     Naftoli Sherman, 25, suffered a broken nose and a black eye after being attacked by rioters that day.[9]

**FACTS SPECIFIC TO PLAINTIFF RONEN HELMANN**

39.     Plaintiff Ronen Helmann was walking in the Pico Robertson neighborhood where he resides and where Adas Torah is located. Helmann frequently congregates and prays at Adas Torah.

40.     Helmann noticed JANE DOES 1-3, women who were wearing headscarves and masks covering their faces, walking from house to house.

41.     Helmann saw JANE DOES 1-3 were checking the doors of the houses for Mezuzahs (typically seen on doorposts of Jewish homes). They appeared to be taking pictures of houses with Mezuzahs.

---

[7] *See* "L.A.'s Adas Torah Violently Attacked by Pro-Palestinian Protestors at Real Estate Event." *The Jewish Link*, 27 June 2024, jewishlink.news/l-a-s-adas-torah-violently-attacked-by-pro-palestinian-protestors-at-real-estate-event/ (last accessed 3 July, 2024).

[8] *Id*.

[9] *See* Bandler, Aaron. "Jewish Community Members Attacked by Anti-Israel Protesters in Front of Adas Torah Speak Out." *Jewish Journal*, 27 June 2024, jewishjournal.com/news/372674/jewish-community-members-attacked-by-anti-israel-protesters-in-front-of-adas-torah-speak-out/ (last accessed 7 July, 2024).

42.     Helmann also noticed JANE DOES 1-3 were marking the cars that they suspected were associated with houses with Mezuzahs. They were communicating on cell phones.

43.     Plaintiff became frightened, so he began walking towards Adas Torah to congregate with other community members and pray for the safety of the synagogue.

44.     As he got closer to the synagogue, Plaintiff saw a mob of anti-Israel protesters (JOHN DOES 2-11) standing in the way of the entrance to the synagogue.

45.     Helmann saw JOHN DOES 2-11 had backpacks and bear spray. They were wearing masks. He was afraid they may have other weapons.

46.     As Helmann walked towards Adas Torah, JOHN DOES 2-11 approached Plaintiff with cameras and came right up to his face and took pictures of him.

47.     JOHN DOES 2-10 came very close to Helmann's face and started yelling at him.

48.     JOHN DOE 2 yelled at Helmann calling him a "nazi." JOHN DOE 3 yelled, "Hitler didn't finish the job." JOHN DOE 4 yelled, "baby murderer." JOHN DOE 5 yelled "colonizers." JOHN DOE 6 said, "to which God are you praying?" JOHN DOE 7 yelled, "leave the neighborhood, we are coming!" JOHN DOE 8 yelled *itbach el yehud* ("slaughter the Jews" in Arabic). JOHN DOES 9-11 yelled other racial and ethnic slurs about Jews.

49.     Because of the intimidating and threating presence and conduct of the Defendants, Plaintiff decided it was not safe to enter the synagogue to pray, so Plaintiff instead returned to his home.

### FACTS SPECIFIC TO PLAINTIFF CAMERON HIGBY

50.     Plaintiff Cameron Higby is a journalist and videographer. He commonly covers protests, and he recently covered university encampments at UCLA.

51.     Mr. Higby attended the event as a journalist to take videos and post updates to the public and his followers on social media. At all times during the incident, he was wearing his press credentials.

52.     For a couple of hours, Higby was filming in front of the synagogue. Then, he stepped out onto the street and continued filming in front of the synagogue.

53.     After about two minutes, Plaintiff Higby noticed JOHN DOE 12 wearing a keffiyeh covering his entire face spraying someone with bear spray. Mr. Higby turned his camera to film the person spraying.



54.     Higby thought he would be spared because of his press credentials, but as he saw JOHN DOE 12 briefly look down at his press credentials, JOHN DOE 12 extended his arm out towards Higby, and bear sprayed him in the face.



55.     The bear spray dripped down Mr. Higby's face and chin, and he felt like his whole body was on fire.

56.     Mr. Higby was in excruciating pain from the bear spray. He could not see, and his breathing was impaired. It took an hour and a half for him to regain his eyesight.

### FACTS SPECIFIC TO PLAINTIFF JUDIT MAULL

57.     Plaintiff Judit Maull is a film producer who was driving home eastbound on Pico from an appointment in Brentwood. A large crowd was forming in the area around the synagogue and the streets were blocked off. She parked her car to find out what was going on in her neighborhood.

58.     As she walked towards the synagogue, she saw people wearing keffiyehs and masks. She observed someone wearing a mask putting rocks in a sock he was holding. She was concerned that it was going to be used as a weapon. She also watched a man brandish what looked like a spear and thrust it towards Jewish people in a threatening manner.

59.     As she was walking back to her car, she heard someone telling a neighborhood resident "I know where you live."

60.     As the crowd around the synagogue grew, Ms. Maull stood next to people singing songs to drown out the noise.

61.     Then, someone bear sprayed her and the people she was standing next to.

62.     After she was sprayed, her lungs felt like they were burning.

63.     To this day, Ms. Maull has continuing symptoms. Her lungs continue to feel irritated. She is unable to take deep breaths, and it is difficult for her to catch her breath.

64.     Due to her symptoms, Ms. Maull is forced to use an inhaler and seek continued medical treatment from a lung specialist.

**PUBLIC OFFICIALS CONDEMN THE ANTISEMITIC ATTACKS**

65.     Rabbi Dovid Revah of Adas Torah told KABC that people were "scared to come in" to the synagogue, and that these types of protests are "a violation of holy space."

66.     Many public officials responded by condemning the antisemitic attacks.

67.     "[Sunday's] violence was abhorrent, and blocking access to a place of worship is unacceptable," said Los Angeles Mayor Karen Bass. "I want to be clear that Los Angeles will not be a harbor for antisemitism and violence. Those responsible for either will be found and held accountable."

68.     President Biden wrote on X that he was "appalled" by the scene outside Adas Torah. "Intimidating Jewish congregants is dangerous, unconscionable, antisemitic and un-American."

**DEFENDANTS TAKE CREDIT AND JUSTIFY THE ATTACK
AS RESISTANCE AGAINST "ZIONISM AND WHITE SUPREMACY"**

69.     After the incident, Defendants took credit for the attack and attempted to defend their conduct on social media.

70.     Defendants disputed President Biden's and Karen Bass' comments that the attack on Adas Torah was antisemitic. Code Pink justified the attack on the synagogue on the basis that "no religious services were scheduled."[10]

71.     Defendant Ibrahim gave an interview after the attack, where he proudly stated: "This real estate event was advertised for weeks, the LA community was outraged, and we showed up, because we show up to confront Zionism and white supremacy wherever it manifests, that's the bottom line."[11]

---

[10] See "Biden Lies." *CODEPINK,* https://www.codepink.org/bidenlies (last accessed 7 July, 2024).

[11] See Halper, Katie. "Israel Supporters & Cops ASSAULT Protestors Outside Israeli Real Estate Sale In LA." *The Katie Halper Show*, 27 June 2024, www.youtube.com/watch?v=HronOS_qElU (last accessed 15 Aug. 2024).

72.     Ibrahim said that the comments condemning antisemitism by President Biden, Governor Newsom, and Mayor Bass amounted to "targeting the protesters of genocide" and "endorsing this war crime that took place within their own borders. They are endorsing this crime under the Geneva convention."[12]

73.     Plaintiff Helmann fears that Defendants could target his neighborhood and synagogue with similar tactics soon, or worse. Plaintiff Maull also fears Defendants will target her neighborhood again.

## CLAIMS FOR RELIEF

### COUNT I
### FACE Act (18 U.S.C. § 248(a)(2))
### Freedom of Access to Clinic Entrances
### (Against All Defendants)

74.     Plaintiffs incorporate herein by reference all the allegations contained in the preceding paragraphs.

75.     The Freedom of Access to Clinic Entrances Act of 1994 ("FACE Act") prohibits a person from intentionally injuring, intimidating, or interfering with another who is exercising her religion "at a place of religious worship." 18 U.S.C. § 248(a)(2).

76.     Defendants willfully, knowingly, and intentionally combined, conspired, and agreed with one another, and with other persons and entities known and unknown, to use force, the threat of force, and physical obstruction to injure, oppress, threaten, and

---

[12] *Id.*

intimate Jewish people (including Plaintiff) seeking to exercise and enjoy his right of religious freedom at a place of religious worship, secured by the First Amendment.

77.     As described herein, Plaintiff Hellman desired and intended to pray at his synagogue, Adas Torah, on June 23, 2024, and was blocked from entering the synagogue by Defendants.

**COUNT II**
**Ku Klux Klan Act (42 U.S.C. § 1985(3))**
**Conspiracy to Interfere with Civil Rights**
**(Against All Defendants)**

78.     Plaintiffs incorporate herein by reference all the allegations contained in the preceding paragraphs.

79.     United States Code Title 42 Section 1985(3) states that if two or more persons in any state "conspire to go in disguise on the highway or on the premises of another, for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws … if one or more persons engaged therein do, or cause to be done, any act in furtherance of the objects of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators."

80.     Defendants conspired together to disguise in masks for the purpose of depriving Jewish people, including Plaintiff Ronen Helmann, of the equal protection of

the laws and equal privileges and immunities under the laws, and Plaintiff was injured due to the actions of Defendants.

81.     Defendants conspired together to disguise in masks for the purpose of depriving people, including Plaintiff Cameron Higby and Plaintiff Judit Maull, of the equal protection of the First Amendment right to assembly, and Plaintiffs were injured due to the actions of Defendants.

**COUNT III**
**Ku Klux Klan Act (42 § U.S.C. 1986)**
**Failure to Prevent Conspiracy to Interfere with Civil Rights**
**(Against All Defendants)**

82.     Plaintiffs incorporate herein by reference the allegations contained in all preceding paragraphs.

83.     Section 6 of the Ku Klux Klan Act (42 U.S.C. § 1986) makes liable any person who knows that the wrongs conspired to be done and mentioned in section 1985 are about to be committed, has the power to prevent or aid in preventing those wrongs, and yet neglects or refuses to help prevent them.

84.     Each Defendant had knowledge that the wrongs conspired to be done, as set out in Count II, were about to be committed and neglected or refused to prevent or aid in preventing those wrongs.

85.     Each Defendant was in a position and had the power to prevent, or aid in the preventing, the wrongs conspired to be done as asserted in Count II.

//

//

### COUNT IV
### Cal. Penal Code § 423.2
### Threatening and Intimidating Persons
### (Against All Defendants)

86.     Plaintiffs incorporate herein by reference the allegations contained in all preceding paragraphs.

87.     The California FACE Act, Cal. Pen. Code § 423.2, provides that "[e]very person who . . . [b]y force, threat of force, or physical obstruction that is a crime of violence, intentionally injures, intimidates, interferes with, or attempts to injure, intimidate, or interfere with a person lawfully exercising or seeking to exercise the First Amendment right of religious freedom at a place of religious worship," can be held civilly liable. Cal. Pen. Code § 423.2(b). Section 423.4 provides that "[a] person aggrieved by a violation of" the California FACE Act "may bring a civil action to enjoin the violation, for compensatory and punitive damages, and for the costs of suit and reasonable fees for attorneys and expert witnesses," so long as the plaintiff is either a person "lawfully exercising or seeking to exercise the First Amendment right of religious freedom in a place of religious worship, or the entity that owns or operates a place of religious worship." *Id*. § 423.4(a).

88.     And "[w]ith respect to compensatory damages, the plaintiff may elect, at any time prior to the rendering of a final judgment, to recover, in lieu of actual damages, an award of statutory damages in the amount of one thousand dollars ($1,000) per exclusively nonviolent violation, and five thousand dollars ($5,000) per any other violation, for each violation committed." *Id*.

89.     Finally, "[e]very person who . . . [i]ntentionally damages or destroys the property of a place of religious worship," can be held civilly liable. *Id*. § 423.2(f).

90.     Adas Torah is a place of religious worship for purposes of the California FACE Act. *Id*. § 423.2(b).

91.     Plaintiff Helmann seeking to congregate and pray at Adas Torah involves the "exercise [of] the First Amendment right of religious freedom at a place of religious worship." *Id*.

92.     On June 23, 2024, Plaintiff Helmann was "seeking to exercise the First Amendment right of religious freedom at a place of religious worship," namely Adas Torah, Defendants and their supporters either forcefully prevented them from doing so or attempted to forcefully prevent them from doing so. *See id*.

93.     Defendants and their supporters, "[b]y force, threat of force, or physical obstruction," "intentional[ly] injure[d], intimidate[d], interfere[d] with," and "attempt[ed] to injure, intimidate, or interfere with" the worship services being held at Adas Torah on June 23, 2024. *See id*. § 423.2(b).

94.     Each of Defendants helped plan, organize, advertise, and fund the violent mob that threatened and intimidated the individuals lawfully exercising or seeking to exercise their First Amendment right of religious freedom at Adas Torah or their First Amendment right of free assembly in the neighborhood around Adas Torah.

95.     The mob organized by Defendants prevented Plaintiff Helmann from exercising his First Amendment right of religious freedom at Adas Torah, and Plaintiffs

Higby and Maull from exercising their First Amendment rights to assemble in the nearby neighborhood.

96.     Defendants and the Members of Code Pink and Palestinian Youth Movement, upon receiving encouragement from Defendants, participated in the violence that prevented Plaintiffs from .

97.     Defendants' actions violated the California FACE Act which harmed Plaintiffs.

98.     Plaintiffs seek $5,000 per violation committed by Defendants, and $1,000 per nonviolent violation committed by Defendant Organizations' members or actual damages, whichever is greater, jointly and severally.

99.     Plaintiffs seek the maximum statutory damages under the California FACE Act, as well as temporary, preliminary, or permanent injunctive relief; punitive damages; and the costs of this suit and reasonable attorneys' fees.

**PRAYER FOR RELIEF**

Wherefore, Plaintiffs respectfully request an award of the following relief:

A.     Enter judgment against each Defendant, jointly and severally, under 18 U.S.C. § 248, 42 U.S.C. §§ 1985, 1986, and Cal. Penal Code § 423.2, in the amount of the following: $5,000 for each violation of the FACE ACT; $5,000 for each violent violation of the California FACE Act; and $1,000 for each nonviolent of the California FACE Act by each member of Defendant, or actual damages, whichever is greater;

B.      Appropriate injunctive relief;

C.      Compensatory damages in an amount to be determined by the jury at trial;

D.      Punitive damages in an amount to be determined by the jury at trial;

E.      An award of reasonable attorneys' fees and costs pursuant to 18 U.S.C. § 248, 42 U.S.C. § 1988, Cal. Penal Code § 423.2;

F.      Such other relief as the Court deems necessary and just.

## JURY DEMAND

Plaintiffs demand a jury trial on all issues triable.


Dated: August 16, 2024           Respectfully submitted,


By:  /s/ Mark L. Javitch
     Mark L. Javitch (California SBN 323729)
     mark@javitchlawoffice.com
     Javitch Law Office
     3 East 3rd Ave. Ste. 200
     San Mateo CA 94401
     Telephone: (650) 781-8000
     Facsimile: (650) 648-0705

     *Attorneys for Plaintiffs*