Mark Kleiman (SBN 115919)
mark@krlaw.us
KLEIMAN / RAJARAM
12121 Wilshire Blvd., Ste. 810
Los Angeles, CA 90025
Tel: 310-392-5455 / Fax: 310-306-8491

Collin Poirot (NY 5673405)
*(pro hac vice)*
cpoirot.law@gmail.com
2603 Oak Lawn, Suite 300
Dallas TX 75219
214-392-2281

Attorneys for Defendants
CODEPINK WOMEN FOR PEACE
CODEPINK ACTION FUND

## UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

## WESTERN DIVISION

| | |
|---|---|
| RONEN HELMANN, CAMERON HIGBY, and JUDIT MAULL,<br><br>Plaintiffs,<br><br>v.<br><br>CODEPINK WOMEN FOR PEACE, a California entity, CODEPINK ACTION FUND, a California entity, HONOR THE EARTH, a Minnesota entity, COURTNEY LENNA SCHIRF, and REMO IBRAHIM, d/b/a PALESTINIAN YOUTH MOVEMENT, and JOHN AND JANE DOES 1-20,<br><br>Defendants. | Case No. 2:24-cv-05704-SVW-PVC<br><br>DEFENDANTS' CODEPINK WOMEN FOR PEACE AND CODEPINK ACTION FUND, NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' COMPLAINT<br><br>Judge: Hon Stephen V. Wilson<br>Hearing Date: November 25, 2024<br>Time: 1:30 p.m.<br>Courtroom: 10A |

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE THAT on November 25, 2024, at 1:30 p.m. or as soon thereafter as this matter may be heard in Courtroom 10A of the above-entitled Court located at First Street Courthouse, 350 W. 1st Street, Courtroom 10A, 10th Floor, Los Angeles, CA 90012, Defendants CODEPINK WOMEN FOR PEACE and CODEPINK ACTION FUND, will and hereby do move the Court to dismiss Plaintiffs Complaint pursuant to Fed.R.Civ.Proc. §§ 12(b)(1) and 12(b)(6).

This motion is based upon this Notice of Motion, the attached Memorandum of Points & Authorities, the Declaration in Support thereof, the files and records in the case, and any evidence or argument that may be presented at a hearing on this matter.

Respectfully submitted,

Dated: October 24, 2024                    KLEIMAN / RAJARAM

By:_____
Mark Kleiman

Attorneys for Defendants
CODEPINK WOMEN FOR PEACE
CODEPINK ACTION FUND

DEFENDANTS' CODEPINK WOMEN FOR PEACE AND CODEPINK ACTION FUND, NOTICE OF MOTION
AND MOTION TO DISMISS PLAINTIFFS' COMPLAINT

# **TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES .................................................................5

MEMORANDUM OF POINTS AND AUTHORITIES ............................9

I.    INTRODUCTION ...................................................................9

II.   FACTS ALLEGED ................................................................9

      A. Plaintiffs Fail to Tie CodePink to Any Alleged Harms ...............9

III.  STANDARDS OF REVIEW ....................................................10

      A. Fed.R.Civ.Proc. 12(b)(1) and the Attendant Standing
         Requirements..................................................................10

      B. Fed.R.Civ.Proc. 12(b)(6) Requires Facts Sufficient to
         Make a Claim Plausible .....................................................11

IV.   ELEMENTS OF THE ALLEGED OFFENSES .............................12

      A. FACE Act (18 U.S.C. §248) and California FACE Act
         (Cal. Pen. Code §423.2(b) et seq............................................12

      B. Ku Klux Klan Act (42 U.S.C. §1985(3)) ..................................13

      C. Ku Klux Klan Act (42 U.S.C. §1986).......................................14

V.    ARGUMENT .......................................................................15

      A.  Plaintiffs Cameron Higby and Judit Maull Lack Standing
          to Bring this Action and Must be Dismissed .............................15

          1.  Plaintiffs Higby and Maull Lack Standing Under the FACE
              Act and the California FACE Act.....................................15

          2.  Plaintiffs Higby and Maull Lack Standing Under
              42 U.S.C. § 1985(3) ...................................................16

3

DEFENDANTS' CODEPINK WOMEN FOR PEACE AND CODEPINK ACTION FUND, NOTICE OF MOTION
AND MOTION TO DISMISS PLAINTIFFS' COMPLAINT

3. All the Plaintiffs' Claims Under the Federal FACE Act and the California FACE Act Fail Under Rule 12(b)(6) ............................ 17

   a. Plaintiffs Fail to Allege Facts that Plausibly Show CodePink Used Force, Threats of Force, or Physical Obstruction to Interfere with Their Freedom of Religion .......... 17

   b. No facts alleged plausibly show that Defendant CodePink intended to injure, interfere with, or intimidate Plaintiffs while Plaintiffs exercised their freedom of religion ................. 20

   c. Plaintiffs Have Alleged No Facts Allowing Them to Plausibly Claim That CodePink is Responsible for any Harmful Acts ................................................................................ 21

4. CodePink's Alleged Activities Constitute Protected First Amendment Speech and Advocacy .................................................. 23

5. Plaintiffs' Claims Under 42 U.S.C. § 1985(3) and § 1986 Fail Under Rule 12(b)(6) .................................................................. 24

   a. Plaintiffs Fail to Allege that Any Conspirator was a State Actor, or that the Conspiracy was Aimed at State Action .............................................................................................. 24

   b. Plaintiffs Do Not Plausibly Allege A Racial Or Class-Based Animus .......................................................................... 24

   c. Plaintiffs Do Not Plausibly Allege That Their Harms Are Fairly Traceable To Defendants CodePink ........................ 25

6. Plaintiffs' Claims Under 42 U.S.C. § 1986 Must Also Be Dismissed ........................................................................... 27

VI.   CONCLUSION ............................................................. 27

DEFENDANTS' CODEPINK WOMEN FOR PEACE AND CODEPINK ACTION FUND, NOTICE OF MOTION
AND MOTION TO DISMISS PLAINTIFFS' COMPLAINT

1

## **TABLE OF AUTHORITIES**

2

**Page**

3

*Alaska Right to Life Political Action Comm. v. Feldman,*
    504 F.3d 840 (9th Cir. 2007)................................................................25

4

5

*Allen v. Wright,*
    468 U.S. 737 (1984) ....................................................................11

6

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009) .............................................................11,27

7

8

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 868 (2009) ..........................11,27

9

*Boquist v. Courtney,*
    32 F.4th 764 (9th Cir. 2022) ..............................................................25

10

11

*Bray v. Alexandria Women's Health Clinic,*
    506 U.S. 263, 113 S.Ct. 753 (1993) ......................................................14

12

*Carbon Fuel Co. v. UMW,*
    444 U.S. 212 (1979) ......................................................................28

13

14

*Clapper v. Amnesty Int'l.*
    *USA*, 568 U.S. 398, (2013) ..............................................................26

15

*Collins v. Jordan,*
    110 F.3d 1363 (9th Cir. 1996)............................................................23

16

17

*Comm. to Protect our Agric. Water v. Occidental Oil & Gas Cor*p.,
    235 F. Supp. 3d 1132 (E.D. Cal. 2017).................................................13,14

18

19

*Conservation Force v. Salazar,*
    646 F.3d 1240 (9th Cir. 2011)............................................................12

20

*Coronado Coal Co. v. Mine Workers,*
    268 U.S. 295 (1925) ......................................................................22

21

22

*Counterman v. Colorado,*
    600 U.S. 66 (2023) .......................................................................19

23

*Cousins v. Lockyer,*
    568 F.3d 1063 (9th Cir. 2009)............................................................11

24

25

*Dahlia v. Rodriguez,*
    735 F.3d 1060 (9th Cir. 2013)............................................................11

26

27

*Fabricant v. Elavon, Inc,*
    2:20-cv-02960-SVW-MAA at 13-14 .....................................................21,22

28

*Gaxiola v. City of Los Angeles*,
   No. CV 10-6632 AHM (FMO), 2011 WL 13152832, at *9
   (C.D. Cal. Aug. 30, 2011) .......................................................... 14

*Harmston v. City & County of San Francisco*,
   627 F.3d 1273 (9th Cir. 2010) ...................................................... 25

*Kindschy v. Aish*,
   412 Wis.2d 319 (Sup. Ct. Wis. 2024) ........................................ 19

*Kokkonen v. Guardian Life Ins. Co. of America*,
   511 U.S. 375, 114 S.Ct. 1673, 128 L.Ed. 2d 391 (1994) .............. 10

*Kristensen v. Credit Payment Servs. Inc.*,
   879 F.3d 1010 (9th Cir. 2018) ...................................................... 22

*Laughon v. Int'l Alliance of Theatrical Stage Emples.*,
   248 F.3d 931 (9th Cir. 2001) .................................................... 22,23

*Lotierzo v. A Woman's World Med. Ctr.*,
   278 F.3d 1180 (11th Cir. 2002) .................................................... 13

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
   134 S. Ct. 1377 (2014) ................................................................ 11

*Lujan v. Defenders of Wildlife*,
   504 U.S. 555, 112 S.Ct. 2130, 119 L.Ed. 2d 351 (1992) ..............10,11,26

*Manistee Town Center v. City of Glendale*,
   227 F.3d 1090 (9th Cir. 2000) ...................................................... 14

*McCalden v. California Library Ass'n*,
   955 F.2d 1214 (9th Cir. 1990) ...................................................... 25

*NAACP v. Clairborne Hardware Co.*,
   458 U.S. 886 (1982) ...................................................................... 18

*Native Village of Kivalina v. Exxon Mobil Corp.*,
   696 F.3d 849 (9th Cir. 2012) ........................................................ 11

*New Beginnings Ministries v. George*,
   2018 WL 11378829, *15 (S.D.O.H. 2018) .................................. 13

*Pasadena Republican Club v. W. Just. Ctr.*,
   985 F.3d 1161 (9th Cir. 2021) .................................................. 13,24

*Planned Parenthood of Columbia/Willamette, Inc. v.
   Am. Coal. of Life Activists*, 290 F.3d 1058, (9th Cir. 2002)........... 18

*RK Ventures, Inc. v. City of Seattle*,
   307 F.3d 1045 (9th Cir. 2002).................................................... 14

6

*Scott v. Kuhlmann,*
     746 F.2d 1377 (9th Cir. 1984) ........................................................25

*Security Farms v. International Broth. of Teamsters, Chauffeurs,*
     124 F.3d 999 (9th Cir. 1997) ..........................................................23

*Sever v. Alaska Pulp Corp.,*
     978 F.2d 1529 (9th Cir. 1992) ....................................................14,24

*Simo v. Union of Needletrades, Indus. & Textile Emps.,*
     *Sw. Dist. Counci*l, 322 F.3d 602 (9th Cir. 2003)............................22

*Sprewell v. Golden State Warriors,*
     266 F.3d 979 (9th Cir. 2001) ..........................................................12

*Trerice v. Pedersen,*
     769 F.2d 1398 (9th Cir. 1985) ....................................................15,27

*United Bhd. of Carpenters & Joiners, Local 610 v. Scott,*
     463 U.S. 825 103 S.Ct. 3352, 77 L.Ed.2d 1049 (1983) ...............14,24,25

*Wagar v. Hasenkrug,*
     486 F. Supp. 47 (D. Mont. 1980) ................................................15,27

*Williams v. Yamaha Motor Co.,*
     851 F.3d 1015 (9th Cir. 2017) ........................................................21

## STATUTES

18 U.S.C. § 248 ...................................................................................12,13

18 U.S.C. § 248(a)(2) ....................................................................12,17,20

18 U.S.C. § 248(c)(1)(A) ...................................................................12,16

18 U.S.C. § 248(d)(1) ............................................................................23

18 U.S.C. § 248(e) .................................................................................21

18 U.S.C. § 248(e)(4) .........................................................................19,20

42 U.S.C. § 1985(3) ........................................................................*passim*

42 USC § 1986 ...............................................................................*passim*

Cal. Pen. Code § 423.1 .........................................................................20

Cal. Pen. Code § 423.1(a) .....................................................................13

Cal Pen. Code § 423.2 ......................................................................16,20

DEFENDANTS' CODEPINK WOMEN FOR PEACE AND CODEPINK ACTION FUND, NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' COMPLAINT

Cal. Pen. Code § 423.2(b) ..............................................................................12,13,17

Cal. Pen. Code § 423.4(a) .........................................................................................16

Cal. Pen. Code § 423.4(c) .........................................................................................16

Cal. Pen. Code § 423.6(a) .........................................................................................23

Fed.R.Civ.Proc. 12(b)(1) .................................................................................*passim*

Fed.R.Civ.Proc. 12(b)(6) ..........................................................................................16

## **MISCELLANEOUS**

29 U.S.C.S. § 185, the Taft-Hartley Act, §  301(b) .................................................22

139 Cong. Rec. S15660, 1993 WL 470962 (Nov. 3, 1993) .....................................18

H.R. Conf. Rep No. 103-488, 9 (1994) ....................................................................19

Norris–LaGuardia Act § 6, 29 U.S.C. § 106 ............................................................22

S. Rep. 117, 103d Cong. 1st Sess. 31 (1993) ...........................................................19

Art. III, U.S. Const. ...................................................................................................10

DEFENDANTS' CODEPINK WOMEN FOR PEACE AND CODEPINK ACTION FUND, NOTICE OF MOTION
AND MOTION TO DISMISS PLAINTIFFS' COMPLAINT

## MEMORANDUM OF POINTS AND AUTHORITIES

**I.     INTRODUCTION**

This motion calls on the Court to decide the following questions:

1)  Can a video blogger who had no religious interest in entering a place of worship sue because there is a crowd in front of that place of worship?

2)  Can a curious driver park, approach a crowd to see what is going on, and then sue, claiming that a her path to a temple she had no intention of entering has been blocked?

3)   Can an organization that called on people to bring banners and megaphones to protest the sale of land in militarily occupied territories be blamed when strangers to that organization allegedly do more than wave signs and chant?

4)  Does an organization that only calls for a protest be sued when there are no facts showing it encouraged the use of force and no facts showing an intent to injure anyone?

5)  In a time when a Jewish United States Senator demands that all arms shipments to Israel be halted, does a protest of illegal land sales identified as possible war crimes by the International Court of Justice constitute class-based animus, or does it remain constitutionally protected free speech?

6)  Where many organizations call for a demonstration, and there are no factual allegations supporting the claim that one of those groups directed its members to blockade an entrance or threaten violence, and no allegations supporting a claim that such conduct was ratified, can that group be held liable for the conduct of those who are strangers to it?

**II.    FACTS ALLEGED**

**A.    Plaintiffs Fail to Tie CodePink to Any Alleged Harms**

Plaintiffs allege that CodePink "organized, publicized, aided, and funded" the demonstration (FAC ¶5); "used social media and/or other means to incite followers

to converge in front of a synagogue… and to use fear and intimidation tactics to prevent Jewish people from entering the synagogue" (FAC ¶¶2, 11); told their supporters that "A Mega Zionist Real Estate Event is in LA This Week" (FAC ¶24); "incited its followers to 'bring flags, posters, and megaphones. No Peace on Stolen Land" (FAC ¶25); the demonstration occurred on a Sunday (FAC ¶ 30) and CodePink later "justified the attack on the synagogue on the basis that 'no religious services were scheduled'" (FAC ¶70). Plaintiffs further allege that unidentified people sprayed them with "bear spray" (FAC ¶37, 53), and that "members of CodePink… upon receiving encouragement from Defendants, participated in the violence" (FAC ¶96).

Once relieved of legally conclusory language and restatements of the alleged offenses' elements, the facts asserted against CodePink boil down to First Amendment protected speech activity. None of the pled facts can support Plaintiffs' claims under the invoked statutes, and in fact, the First Amended Complaint includes facts that make it impossible for Plaintiffs to plead these causes of action. For these reasons, the complaint should be dismissed with prejudice.

## III.    STANDARDS OF REVIEW

### A. Fed.R.Civ.Proc. 12(b)(1) and the Attendant Standing Requirements

Federal courts have limited jurisdiction *see*, Art. III, U.S. Const. and Plaintiffs must prove their case lies within a court's jurisdiction. Kokkonen v. Guardian Life Ins. Co. of America, 511 U.S. 375, 377-78, 114 S.Ct. 1673, 128 L.Ed. 2d 391 (1994). Plaintiff must establish they have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision. Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-561, 112 S.Ct. 2130, 119 L.Ed. 2d 351 (1992). Plaintiff "bears the burden of establishing these elements" and "at the pleading stage, [he] must clearly allege facts demonstrating each element." Id. (citation omitted). It is black letter law

that the injury pled must "be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court." Lujan, 504 U.S. at 560-61 (citation omitted). Further, "the line of causation between the [alleged] illegal conduct and injury" must not be "too attenuated." Allen v. Wright, 468 U.S. 737, 752 (1984) (concluding that a weak demonstration of causation precludes Article III standing), *overruled on other grounds by* Lexmark Int'l, Inc. v. Static Control Components, Inc., 134 S. Ct. 1377, 1388 (2014). Since the line of causation must be more than attenuated, "where the causal chain 'involves third parties whose numerous independent decisions collectively have a significant effect on plaintiffs' injuries . . . the causal chain [is] too weak to support standing at the pleading stage.'" (citations and internal quotation marks omitted). Native Village of Kivalina v. Exxon Mobil Corp., 696 F.3d 849, 867 (9th Cir. 2012).

## B. Fed.R.Civ.Proc. 12(b)(6) Requires Facts Sufficient to Make a Claim Plausible

Although "a complaint need not contain detailed factual allegations . . . it must plead enough facts to state a claim to relief that is plausible on its face." Cousins v. Lockyer, 568 F.3d 1063, 1067-68 (9th Cir. 2009) (internal quotation marks and citations omitted). A claim is facially plausible only when it "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678, (2009) (internal quotation marks omitted). "[C]onclusory allegations of law and unwarranted inferences are insufficient to avoid . . . dismissal" under this standard. Cousins, 568 F.3d at 1067 (internal quotation marks omitted). A court may reject as implausible allegations that are too speculative to warrant further factual development. Dahlia v. Rodriguez, 735 F.3d 1060, 1076 (9th Cir. 2013). The allegations must be enough to raise a right to relief above the speculative level. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 548,

127 S.Ct. 1955, 167 L.Ed.2d 868 (2009). The court need not accept allegations that are merely conclusory, are unwarranted deductions, or unreasonable inferences. Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001).

When the guesses, conclusory language, and innuendo are stripped away, what remains of Plaintiffs' allegations that are grounded in specific facts is this: (1) CodePink was one of several organizations which called for a demonstration to oppose a real estate event offering land sales in the occupied West Bank; (2) CodePink "organized, aided, and funded" the demonstration, and invited its supporters to bring banners and megaphones; (3) persons unknown acted threateningly and said frightening things, (4) some unknown persons used "bear spray"; and (4) CodePink later stated that it had no idea that a temple would be holding religious services on a Sunday. From these crumbs, Plaintiffs build a mountain of surmise to insist that CodePink must have directed these activities. These are not facts sufficient to make a cognizable legal theory plausible. Conservation Force v. Salazar, 646 F.3d 1240, 1241-42 (9th Cir. 2011).

## IV.    ELEMENTS OF THE ALLEGED OFFENSES

### A. FACE Act (18 U.S.C. §248) and California FACE Act (Cal. Pen. Code §423.2(b) et seq.

The Freedom of Access to Clinic Entrances Act (FACE Act) was passed in 1994 when women's health clinics were being bombed and doctors who worked their were being murdered. A far lesser-known provision in the bill protects places of worship. The law's "place of worship" cause of action has so seldom been invoked that caselaw interpreting the civil suit provision in 18 U.S.C. § 248(c)(1)(A) is scarce. Defendants could find no cases from the Ninth Circuit where such a suit has been brought. Other circuits, however, have identified four elements required to plead a violation of 18 U.S.C. § 248(a)(2): "Plaintiffs must demonstrate that Defendants used or attempted to use (1) force, threat of force, or physical

obstruction; (2) with the intent to; (3) injure, intimidate, or interfere with a person; (4) because that person is exercising or is seeking to exercise his or her right of religious freedom at a place of religious worship." <u>New Beginnings Ministries v. George</u>, 2018 WL 11378829, *15 (S.D.O.H. 2018) (citing <u>Lotierzo v. A Woman's World Med. Ctr.</u>, 278 F.3d 1180, 1182 (11th Cir. 2002) (citations omitted)).

The California FACE Act has nearly identical language to the federal FACE Act, except that it adds a requirement that where a claim is based on an alleged physical obstruction, that physical obstruction must also be a crime of violence. Cal. Pen. Code § 423.2(b). The statute interprets "crime of violence" to mean "an offense that has as an element the use, attempted use, or threatened use of physical force." Cal. Pen. Code § 423.1(a). As such, to state a claim under the California FACE Act, the Plaintiffs must show that the elements of 18 U.S.C. § 248 are met, and that any alleged physical obstruction was also a crime of violence. Defendants are not aware of any civil suit that has been brought under Cal. Pen. Code § 423.2(b).

**B.  <u>Ku Klux Klan Act (42 U.S.C. §1985(3))</u>**

To state a claim under 42 U.S.C. § 1985(3), "plaintiffs must allege and prove four elements: (i) a conspiracy; (ii) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (iii) an act in furtherance of this conspiracy; (iv) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States." <u>Comm. to Protect our Agric. Water v. Occidental Oil & Gas Corp.</u>, 235 F. Supp. 3d 1132, 1185 (E.D. Cal. 2017).

The cause of action under 42 U.S.C. § 1985(3) "requires at least one of the wrongdoers in the alleged conspiracy to be a state actor. Indeed, the Supreme Court has held that 'an alleged conspiracy to infringe First Amendment rights is not a violation of § 1985(3) unless it is proved that the State is involved in the

conspiracy'" or that the aim of the conspiracy is to influence state actors. <u>Pasadena Republican Club v. W. Just. Ctr.</u>, 985 F.3d 1161, 1171 (9th Cir. 2021) (citing <u>United Bhd. of Carpenters & Joiners, Local 610 v. Scott</u>, 463 U.S. 825, 830, 103 S.Ct. 3352, 77 L.Ed.2d 1049 (1983).

To plead a claim under 42 U.S.C. § 1985(3), a plaintiff must also plausibly allege that the intended deprivation was "'motivated by some racial, or ... other[ ] class-based' animus." <u>Comm. to Protect our Agric. Water v. Occidental Oil & Gas Corp.</u>, 235 F. Supp. 3d 1132, 1185 (E.D. Cal. 2017) (citing <u>Sever v. Alaska Pulp Corp.</u>, 978 F.2d 1529, 1536 (9th Cir. 1992); *see also* <u>Manistee Town Center v. City of Glendale,</u> 227 F.3d 1090 (9th Cir. 2000); <u>Gaxiola v. City of Los Angeles,</u> No. CV 10-6632 AHM (FMO), 2011 WL 13152832, at *9 (C.D. Cal. Aug. 30, 2011) ("To avoid interpreting § 1985(3) as a general federal tort law, the Supreme Court has emphasized that, as under § 1981, the plaintiff must prove as an element of the cause of action 'some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action'" (citing <u>Bray v. Alexandria Women's Health Clinic</u>, 506 U.S. 263, 268, 113 S.Ct. 753, 758 (1993)); <u>RK Ventures, Inc. v. City of Seattle</u>, 307 F.3d 1045, 1056 (9th Cir. 2002) (To bring a cause of action successfully under § 1985(3), a plaintiff must demonstrate a deprivation of a right motivated by "some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action"). 42 U.S.C. § 1985(3) does not extend to "conspiracies motivated by bias towards others on account of their economic views, status, or activities." <u>United Bhd. of Carpenters and Joiners of Am, Local 610, AFL-CIO v. Scott</u>, 463 U.S. 825, 837 (1983).

## C.  <u>Ku Klux Klan Act (42 U.S.C. §1986)</u>

In order to state a claim under 42 USC § 1986, Plaintiffs must plausibly allege (1) that Defendants knew of a conspiracy to interfere with civil rights under 42 USC § 1985(3); (2) that the intended deprivation of equal protection of the laws under 42

USC § 1985(3) occurred; (3) that Defendants knew that the deprivation was about to occur; (4) that Defendants had the power to prevent or aid in preventing the deprivation; and (5) that Defendants neglected or refused to prevent or aid in preventing the deprivation. 42 USC § 1986. Plaintiffs fail to plausibly allege a conspiracy under 42 U.S.C. § 1985(3) as they are unable to meet the requirements for a claim under 42 U.S.C. § 1986. Trerice v. Pedersen 769 F.2d 1398 (9th Cir. 1985); *see also* Wagar v. Hasenkrug, 486 F. Supp. 47 (D. Mont. 1980) (holding that the dismissal of a claim under 42 U.S.C. § 1985(3) requires dismissal of any companion claim under 42 U.S.C. § 1986 for failure to prevent the alleged conspiracy).

## V.    ARGUMENT

### A.    Plaintiffs Cameron Higby and Judit Maull Lack Standing to Bring this Action and Must be Dismissed[1]

Plaintiffs Higby and Maull never claim to have had any intention of worshipping at the synagogue nor engaging in any other activity protected by the Constitution. Their only concrete injury is that they were bear-sprayed by an unidentified third party. As such, they have no standing to bring this suit under the Civil Rights Act, and are explicitly prohibited from bringing this claim under the federal and California FACE Act statutes. They have no standing to sue CodePink on any of the plead theories and must be dismissed with prejudice.

#### 1.    Plaintiffs Higby and Maull Lack Standing Under the FACE Act and the California FACE Act

There can be no debate. Plaintiffs Higby and Maull have no standing to sue under either the federal or California FACE Acts. The federal FACE Act explicitly

---

[1] Since Plaintiffs knowingly filed a defective "Notice of Voluntary Dismissal" CodePink must assume that Higby and Maull remain in the action and that we must move for an order dismissing them. We are sorry the Court must therefor read through an argument that should have been mooted by the filing of an amended complaint – but we have no choice but to treat them as parties.

DEFENDANTS' CODEPINK WOMEN FOR PEACE AND CODEPINK ACTION FUND, NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' COMPLAINT

states that a civil action under the statute "may be brought under subsection (a)(2) only by a person lawfully exercising or seeking to exercise the First Amendment right of religious freedom at a place of religious worship or by the entity that owns or operates such place." 18 USC § 248(c)(1)(A). The California FACE Act contains the same standing limitation. Cal. Pen. Code § 423.4(a).

Plaintiffs' First Amended Complaint fails to allege any facts that plausibly show that Higby or Maull were exercising or seeking to exercise the First Amendment right of religious freedom at the time in question. Higby is "a journalist and videographer" who "commonly covers protests" (FAC ¶10). In this case, Higby alleges no intention of attending or accessing Adas Torah, but only that he attended the protest in order "to take videos and post updates to the public and his followers." Id.  Maull saw a crowd and parked her car to see what was going on. (FAC ¶57.)  As the crowd grew, Maull stood next to people who were singing songs to drown out the noise. (FAC ¶60.) Maull's only claimed intention was to "find out what was going on." (FAC ¶11). Neither Higby nor Maull ever claim they were exercising or seeking to exercise their freedom of religion, and thus have no standing.

Finally, Plaintiffs cannot seek to impose liability under both the federal and state FACE Acts at the same time. Cal. Penal Code §423.4(c) ("No person shall be found liable under this section for conduct in violation of Section 423.2 done on a particular occasion where the identical conduct on that occasion was the basis for a finding of liability by that person under the federal Freedom of Access to Clinic Engrances Act of 1994.")

### 2. Plaintiffs Higby and Maull Lack Standing Under 42 U.S.C. §1985(3) and §1986.

Plaintiffs cannot meet the standing requirements as they have not and cannot show a causal connection between their concrete injuries and CodePink's culpable conduct. Higby and Maull cannot plausibly claim their rights to freedom of religion

or of assembly were violated  because they have admitted that neither was even attempting to engage in those protected activities at the time of the protest. The only concrete injury Higby and Maull can claim is that they were sprayed with bear spray by an unidentified person in the midst of a chaotic physical confrontation. This claimed injury depends entirely on the actions of third parties, and is not fairly traceable to the complained-of conduct by CodePink nor to any conspiracy under 42 U.S.C. § 1985(3). Not a single fact in the Amended Complaint that can plausibly show that CodePink ordered, authorized, or ratified the actions of the unidentified individuals who caused the Plaintiffs' only concrete injuries. Absent a direct causal relationship between the allegedly culpable conduct and the claimed injury, Plaintiffs have no standing to bring this suit against CodePink.

### 3. All the Plaintiffs' Claims Under the Federal FACE Act and the California FACE Act Fail Under Rule 12(b)(6)

The "place of worship" subsections of the FACE Act and the California FACE Act have not been addressed by this Court in any published decision. The two statutes have nearly identical wording; the only substantive distinction is that the California statute requires Plaintiffs to show that any alleged physical obstruction was also a "crime of violence." Plaintiffs fail to allege facts that can plausibly show a violation of either statute.

### a. Plaintiffs Fail to Allege Facts that Plausibly Show CodePink Used Force, Threats of Force, or Physical Obstruction to Interfere with Their Freedom of Religion.

Plaintiffs do not plausibly allege that Defendants used force, threats of force, or physical obstruction against them as required under 18 U.S.C. § 248(a)(2) or Cal. Pen. Code § 423.2(b). In its legislative history, 18 USC § 248(a)(2)'s sponsor stated the proposal would "do no more than give religious liberty the same protection that

DEFENDANTS' CODEPINK WOMEN FOR PEACE AND CODEPINK ACTION FUND, NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' COMPLAINT

[the FACE Act] would give abortion," and would address recent violence, including a protest where activists entered a facility during prayer and threw things at the congregants, and a series of arson attacks against churches. 139 Cong. Rec. S15660, 1993 WL 470962 (Nov. 3, 1993).

A large outspoken demonstration (and a viciously brutal counterprotest) bear little resemblance to the violent acts contemplated by the statute. Plaintiffs have not pled a single fact that could plausibly show that CodePink defendants used physical force against them—the only alleged physical force was used by unidentified people. Furthermore, Plaintiffs' own allegations show that any force or threats of force that may have occurred were not at the direction of CodePink, but resulted from clashes provoked by the pro-Israel counter-protesters. According to sources cited in the First Amended Complaint, "clashes started when pro-Israeli protesters arrived... things turned violent," and the only person arrested for violence during the protest was a pro-Israel counter-protestor (FAC fn. 2). These facts do not plausibly show that CodePink intended or used force or violence, and in fact suggest that the CodePink demonstration was nonviolent up until the counter-protesters— over whom CodePink has no power whatsoever—arrived with weapons.

Plaintiffs have also failed to plausibly allege that CodePink used a *threat* of force against them. The First Amendment protects "offensive and coercive speech," including "the use of speeches, marches, and threats of social ostracism." Planned Parenthood of Columbia/Willamette, Inc. v. Am. Coal. of Life Activists, 290 F.3d 1058, 1070 (9th Cir. 2002), *as amended* (July 10, 2002) (citing NAACP v. Clairborne Hardware Co., 458 U.S. 886, 933 (1982)). Where Plaintiffs rely on a "threat of force" to plead a violation of the FACE Act, they must show that the threat was a "true threat." 290 F.3d 1073 (providing that "FACE on its face requires that 'threat of force' be defined and applied consistent with the First Amendment").

Under the Supreme Court's true threat doctrine, Defendant's speech was not a "threat" as speech only qualifies as a "true threat" where "in the entire context and under all the circumstances, a reasonable person would foresee [it] would be interpreted by those to whom the statement is communicated as a serious expression of intent to inflict bodily harm upon that person." Id. at 1077. The Supreme Court recently recognized a recklessness *scienter* requirement for culpable true threats, such that the Defendant must have "consciously disregarded a substantial risk that his communications would be viewed as threatening violence." Counterman v. Colorado, 600 U.S. 66, 69 (2023). Although Counterman arose in the context of a criminal charge, the *scienter* requirement that it recognized has also been applied to civil causes of action based on threats. *Id.*, at 80-81. *Also see, e.g.* Kindschy v. Aish, 412 Wis.2d 319, 333 (Sup. Ct. Wis. 2024) (directly applying Counterman's *scienter* rule to a civil dispute.

In this case, Plaintiffs do not plausibly allege that CodePink's statements are true threats such that they are unprotected by the First Amendment. Plaintiffs do not allege that CodePink's statements could be interpreted as a serious expression of intent to inflict bodily harm upon them, nor that CodePink was aware of any substantial risk of their communications being viewed as a threat of violence. As such, Plaintiffs fail to plausibly allege CodePink used a threat of force against them.

Plaintiffs also fail to plausibly allege that CodePink engaged in physical obstruction. To plead violation based on physical obstruction, Plaintiffs must specifically show that the alleged obstruction rendered ingress and egress to the facility impossible or unreasonably difficult or hazardous. 18 U.S.C. § 248(e)(4); *see also* S. Rep. 117, 103d Cong. 1st Sess. 31 (1993) (explaining that "physical obstruction" would include blockades, "chaining people and cars to entrances with bicycle locks," strewing nails on public roads leading to clinics, and "blocking entrances with immobilized cars"); H.R. Conf. Rep No. 103-488, 9 (1994)

DEFENDANTS' CODEPINK WOMEN FOR PEACE AND CODEPINK ACTION FUND, NOTICE OF MOTION
AND MOTION TO DISMISS PLAINTIFFS' COMPLAINT

(clarifying that physical obstruction would include, for example "physically blocking access to a church or pouring glue in the locks of a synagogue").

Finally, Plaintiffs fail to plausibly allege that CodePink physically made ingress or egress unreasonably hazardous; only that they called for a political demonstration outside of the facility, and that there were eventually clashes between some unidentified individuals in the crowd. This could not be further from the church burnings and intentional, coordinated physical violence against parishioners that the FACE Act was intended to prevent. Where Plaintiffs fail to allege CodePink engaged in physical obstruction of any kind, they cannot meet the additional "crime of violence" requirement under the California FACE Act.

Plaintiffs have therefore failed to allege any facts that can plausibly show CodePink used force, threats of force, or physical obstruction to interfere with their freedom of religion under the federal FACE Act or the California FACE Act, and the claim must be dismissed under Rule 12(b)(6). Cal. Pen. Code § 423.1.

**b.    <u>No facts alleged plausibly show that Defendant CodePink intended to injure, interfere with, or intimidate Plaintiffs because of Plaintiffs' exercise of their freedom of religion.</u>**

Plaintiff's conclusory specific facts pled against CodePink are only that the organization announced a "Mega Zionist Real Estate Event," and encouraged supporters to "Bring flags, posters and megaphones. No Peace on Stolen Land" (FAC ¶24-5, 70). To state a claim for relief under 18 USC § 248(a)(2) or Cal. Pen. Code § 423.2, Plaintiffs must allege facts that plausibly show Defendants intended to injure, intimidate, or interfere with them because of their exercise of freedom of religion. Both statutes define "intimidate" as placing one in "reasonable apprehension of bodily harm," and "interfere with" as restricting a person's freedom of movement. 18 USC § 248(e); Cal. Pen. Code § 423.1. Plaintiffs fail to allege any

facts that plausibly show CodePink had an intent to injure them, restrict their freedom of movement, or place them in apprehension of bodily harm because of their exercise of freedom of religion.

Strikingly absent from Plaintiff's allegations are any facts that could plausibly show CodePink intended to injure Plaintiffs, restrict their freedom of movement, or threaten bodily harm, much less that they intended to do so *because* of Plaintiffs' exercise of freedom of religion. Plaintiffs do not allege any mention by CodePink of prayer, worship, Jewish people, or Judaism, nor any call for violence, physical force, or intimidation. There are also no facts pled that could plausibly show CodePink intended to injure, restrict the bodily movement of, or threaten violence against people coming to pray at the synagogue. In fact, the First Amended Complaint shows that Defendants were *unaware*, and believed that "no religious services were scheduled" at the time (FAC ¶70). At most, Plaintiffs' alleged facts could show CodePink intended to make the Real Estate event attendees less comfortable, discourage people from attending the event, and speak out against an ongoing genocide, all from a position outside of the building.

The facts pled therefore make it impossible for Plaintiffs to plausibly allege that CodePink intended to injure, intimidate, or interfere with them because of their exercise of freedom of religion.

### c. <u>Plaintiffs Have Alleged No Facts Allowing Them to Plausibly Claim That CodePink is Responsible for any Harmful Acts.</u>

Plaintiffs implicitly rely on an imputed agency relationship to hold CodePink liable for the acts of the unidentified individuals. Yet Plaintiffs fail to allege facts making it plausible that CodePink had "the right to substantially control [these alleged agent's] activities," <u>Williams v. Yamaha Motor Co.</u>, 851 F.3d 1015, 1024 (9th Cir. 2017), or how CodePink did these things or knew these things. <u>Fabricant v.</u>

Elavon, Inc, 2:20-cv-02960-SVW-MAA, 12-13 (C.D.C.A. 2020). Even where the principal ratifies an act without knowledge of material facts of the agent's acts, the principal must still choose to ratify the act while aware that they lack such knowledge in order to be liable for the act. Fabricant, 2:20-cv-02960-SVW-MAA at 13-14, quoting Kristensen v. Credit Payment Servs. Inc., 879 F.3d 1010, 1014 (9th Cir. 2018).

Even if the unidentified Does *were* CodePink members (which is nowhere alleged) CodePink can only be responsible under some respondeat superior theory. Other national organizations (for example, labor unions) are only responsible for members' actions if common law respondeat superior doctrines apply. To hold a union responsible for an agent's acts, under the common law "'it must be clearly shown . . . that what was done was done by their agents in accordance with their fundamental agreement of association.'" Carbon Fuel Co. v. UMW, 444 U.S. 212, 217 (1979), quoting Coronado Coal Co. v. Mine Workers, 268 U.S. 295, 304 (1925). Statutes governing labor-management relations imported common law *respondeat superior* doctrine, *see generally* 29 U.S.C.S. § 185, the Taft-Hartley Act, § 301(b), Norris–LaGuardia Act § 6, 29 U.S.C. § 106, making a union liable for its members' acts only where there is "clear proof" of participation, authorization, or ratification. Simo v. Union of Needletrades, Indus. & Textile Emps., Sw. Dist. Council, 322 F.3d 602, 620 (9th Cir. 2003). Thus, even courts invoking these statutes rely upon traditional agency law. Liability turns on the nature and extent of the actual control an international union exercises over a local union and the local's degree of autonomy. Laughon v. Int'l Alliance of Theatrical Stage Emples., 248 F.3d 931, 935 (9th Cir. 2001). Without evidence a union has instigated, supported, encouraged, or ratified acts by its subdivision union, there is no proof of an agency relationship, and thus a union cannot be held liable for the subdivision union's acts. Carbon Fuel Co, 444 U.S. at 218; *see also* Simo, 322 F.3d at 620. Even where an

DEFENDANTS' CODEPINK WOMEN FOR PEACE AND CODEPINK ACTION FUND, NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' COMPLAINT

individual serves a double role as both the local and international union official, looking to the organization being served at the time of the conduct, courts "do not impute the conduct, or knowledge of the conduct, to the international solely by virtue of the individual's double role." <u>Laughon</u>, 248 F.3d at 937. Even participating in negotiations and reporting to the international's representative on the local's progress fails to demonstrate the international controlled the local in order to impute liability. <u>Security Farms v. International Broth. of Teamsters, Chauffeurs</u>, 124 F.3d 999, 1012-1013 (9th Cir. 1997).

Plaintiffs' allegations are broad and sweeping.  They are also devoid of any facts showing how CodePink did the things it is accused of or how it knew of these things it is charged with knowing. There are no facts to support that CodePink controlled any individuals present at the event, nor any facts supporting that CodePink instigated, authorized, ratified or even encouraged any of the acts named in the complaint. With no facts to support its broad sweeping allegations, Plaintiffs have failed to sufficiently plead CodePink's liability via vicarious liability in a principal-agent relationship.

### 4. CodePink's Alleged Activities Constitute Protected First Amendment Speech and Advocacy

Demonstrations, marches, and picketing are undeniably protected First Amendment activities. <u>Collins v. Jordan</u> 110 F.3d 1363, 1371 (9th Cir. 1996). Even where protected First Amendment speech becomes intertwined with someone's later possibly illegal conduct is to punish the conduct, not the speech. *Id*. Both the federal and California FACE Acts explicitly forbid construing their language to capture "expressive conduct (including peaceful picketing or other peaceful demonstration) protected from legal prohibition by the First Amendment to the Constitution[.]" 18 U.S.C. § 248(d)(1); see also Cal. Pen. Code § 423.6(a). Plaintiffs therefore cannot plausibly allege a violation of either statute based on CodePink's protected speech.

5. **Plaintiffs' Claims Under 42 U.S.C. § 1985(3) and § 1986 Fail Under Rule 12(b)(6)**

a. **Plaintiffs Fail to Allege that Any Conspirator was a State Actor, or that the Conspiracy was Aimed at State Action**

Plaintiffs fail to allege a state actor as part of any conspiracy, or that CodePink was intending to influence state action. To state a claim under 42 U.S.C. § 1985(3), Plaintiffs must plausibly allege that one or more of the conspirators is a state actor, or that the conspiracy was intended to influence state action. Pasadena Republican Club v. Western Justice Center, 985 F.3d 1161, 1171 (9th Cir. 2021) (citing United Bhd. Of Carpenters & Joiners, Local 610 v. Scott, 463 U.S. 825, 830, 103 (1983). The First Amended Complaint contains none of this.

b. **Plaintiffs Do Not Plausibly Allege A Racial Or Class-Based Animus**

Plaintiffs do not plausibly allege a racial or class-based animus as required under 42 USC § 1985(3). Sever v. Alaska Pulp Corp., 978 F.2d 1529, 1536 (9th Cir. 1992). Plaintiffs only allege that CodePink told its supporters "that 'A Mega Zionist Real Estate Event is in LA This Week,'" and that "an 'international war crime' was about to occur"—specifically, the sale of illegally occupied land (FAC ¶21, 24). CodePink further clarified that, as far as it was aware, "no religious services were scheduled" at the time of the protest (FAC ¶70). These pled facts cannot plausibly show a racial or class-based animus on the part of CodePink when it called for supporters to attend the protest.

Sources cited in the First Amended Complaint actually show that CodePink was motivated by a desire to oppose "the illegal activities being promoted and executed at the land theft sale" and the ongoing genocide in Palestine that the sale was aiding and abetting (FAC fn. 10). CodePink specifically and clearly denounced the allegation that their activities were motivated by any anti-Semitic animus

whatsoever, and labelled the accusation a lie (FAC fn. 10). Even if CodePink had animus towards people who sought to attend the specific real estate event in order to purchase a house in Israel or Palestine, that would amount to an economic animus, which is specifically *not* a basis for a claim under 42 U.S.C. § 1985(3). <u>United Bhd. of Carpenters and Joiners of Am, Local 610, AFL-CIO v. Scott,</u> 463 U.S. at 837 (42 U.S.C. § 1985(3) does not extend to "conspiracies motivated by bias towards others on account of their economic views, status, or activities").

Plaintiffs have not set forth – and can not point to a single statement or action by CodePink that establishes a plausible factual basis for finding a racial or class-based animus, and in fact have provided the court with specific reasons to find such a motivation *im*plausible.

Where, as here, the facts alleged in the complaint include clear, consistent statements by the Defendants regarding their motivation, the Court may not ignore these facts and should treat them as true under Rule 12(b)(6). Ordinarily affirmative defenses may not be raised by motion to dismiss . . . ." <u>Scott v. Kuhlmann,</u> 746 F.2d 1377, 1378 (9th Cir. 1984) (per curiam). But a complaint may be dismissed when the allegations of the complaint give rise to an affirmative defense that clearly appears on the face of the pleading. <u>McCalden v. California Library Ass'n,</u> 955 F.2d 1214, 1219 (9th Cir. 1990), *superseded by rule on other grounds as stated in* <u>Harmston v. City & County of San Francisco,</u> 627 F.3d 1273 (9th Cir. 2010). <u>Boquist v. Courtney,</u> 32 F.4th 764, 774 (9th Cir. 2022)

### c.  **Plaintiffs Do Not Plausibly Allege That Their Harms Are Fairly Traceable To Defendants CodePink**

None of Plaintiffs' pled injuries are traceable to any of CodePink's alleged conduct. Standing under Article III requires Plaintiffs to demonstrate a concrete injury that is fairly-traceable to the complained-of conduct. <u>Alaska Right to Life Political Action Comm. v. Feldman,</u> 504 F.3d 840, 848 (9th Cir. 2007) (quoting

DEFENDANTS' CODEPINK WOMEN FOR PEACE AND CODEPINK ACTION FUND, NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' COMPLAINT

Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-561 (1992)). Courts are reluctant to endorse standing theories that rest on speculation about the decisions of an independent actor. Clapper v. Amnesty Int'l. USA, 568 U.S. 398, 414 (2013).

Plaintiffs Higby and Maull plead no concrete injuries fairly traceable to the alleged conspiracy by CodePink. Plaintiff Helmann's pled injuries are that he was yelled at and insulted by John Does 2-11, and was prevented from exercising his freedom of religion at a place of worship (FAC ¶47-9). None of these injuries are fairly-traceable to any alleged conduct by CodePink. There are no facts plead that can plausibly show that CodePink controlled or directed, or even encouraged, John Does 2-11, nor the rest of "the mob" that scared Plaintiff Helmann, only that CodePink encouraged supporters to attend the anti-genocide demonstration and to bring signs, noisemakers, and flags. Helmann also admits that he ultimately decided not to enter the synagogue of his own volition because he felt threatened by the presence of the large demonstration (FAC ¶49).

Plaintiff's injuries are therefore not fairly-traceable to the alleged conduct of CodePink, but rather depend on the acts of unidentified third parties, including the individual who alleged bear sprayed Maull and Higby, the individuals who allegedly took photographs of houses and cars, the counter-protesters who—according to the sources in the First Amended Complaint—started the violent clash, and the police and private security who failed to sufficiently control the crowd. Video footage cited in the First Amended Complaint clearly shows that the anti-genocide protesters were the smaller of the various groups involved, were attacked by the pro-Israel counter-protesters, and were surrounded and kettled by security (FAC fn. 11, embedded video at 12:42-14:09). CodePink had no control over any of these actors, and Plaintiffs fail to offer a single fact that can plausibly suggest otherwise.

As such, because Plaintiffs' injuries depend upon the acts of independent third parties, and because they are not attributable to the alleged actions of

CodePink, Plaintiffs have no standing to bring this suit under 42 U.S.C. § 1985(3), and the claims must be dismissed.

### 6. Plaintiffs' Claims Under 42 U.S.C § 1986 Must Also Be Dismissed

Plaintiffs fail to allege that CodePink engaged in a conspiracy, and thus fail to plausibly allege CodePink failed to prevent such injury. Where Plaintiffs fail to plausibly allege a conspiracy under 42 U.S.C. § 1985(3), they are also unable to meet the requirements for a claim under 42 U.S.C. § 1986. Trerice v. Pedersen 769 F.2d 1398 (9th Cir. 1985); see also Wagar v. Hasenkrug, 486 F. Supp. 47 (D. Mont. 1980) (holding that the dismissal of a claim under 42 U.S.C. § 1985(3) requires dismissal of any companion claim under 42 U.S.C. § 1986 for failure to prevent the alleged conspiracy). Plaintiffs fail to plausibly allege a conspiracy to deprive them of their rights under 42 U.S.C. § 1985(3), and their claim under 42 U.S.C. § 1986 must therefore be dismissed.

## VI. CONCLUSION

The Court has a gate-keeping function, even at the pleading stage. That function is perhaps most needed when political actors dress as litigants and demand that judges turn their courtrooms into stages for ideological or even theological disputes. That is why *Iqbal* and *Twombly* demand that that rhetoric must be tethered to facts, and that grand theories be supported by enough of those facts to at least make the theories plausible.

Those guardrails have been entirely breached here. Several groups called for a demonstration.  CodePink asked its supporters to bring banners and megaphones, and it had no idea that by protesting a real estate sale it would be interfering with religious services on a Sunday, a day not notable for Jewish religious gatherings. Yet in this hyperbolic atmosphere a constitutionally protected call for legal protest is recast as a campaign of terror.

The law requires more of a plaintiff than hyperbole. There must be at least a nod to the reality-based community – a latticework of facts and inferences that are plausible.  The plaintiffs have utterly failed at even this most basic requirement. There are no facts showing CodePink intended to obstruct religious services, no facts showing it called on anyone to do so, no facts showing state actors were involved, and no facts showing even the faintest link between a call for banners and megaphones and the chaotic scene when two very opposite groups were kept in close proximity to one another for hours.

When all of this was pointed out to the plaintiffs, they first promised to – and then refused to recast their complaint. The Plaintiffs' refusal to amend is an admission that they cannot save their rhetoric by grounding it in facts. Because there are none.

This complaint should be dismissed with prejudice.

Respectfully submitted,

Dated:  October 24, 2024                    KLEIMAN / RAJARAM


By:_____
                Mark Kleiman

Attorneys for Defendants
CODEPINK WOMEN FOR PEACE
CODEPINK ACTION FUND