Mark L. Javitch (CA SBN 323729)
Javitch Law Office
3 East 3rd Ave. Ste. 200
San Mateo, CA 94401
Telephone: 650-781-8000
Facsimile: 650-648-0705
mark@javitchlawoffice.com

*Attorney for Plaintiff*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| RONEN HELMANN,<br><br>　　　　　Plaintiff,<br><br>v.<br><br>CODEPINK WOMEN FOR PEACE, a California entity, CODEPINK ACTION FUND, a California entity, HONOR THE EARTH, a Minnesota entity, COURTNEY LENNA SCHIRF, and REMO IBRAHIM, d/b/a PALESTINIAN YOUTH MOVEMENT, PALESTINIAN YOUTH MOVEMENT, and JOHN AND JANE DOES 1-20,<br><br>　　　　　Defendants. | Case No.: 2:24-cv-05704-SVW-PVC<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S OPPOSITION TO HONOR THE EARTH'S MOTION TO STRIKE AND MOTION TO DISMISS** |

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

This case stems from an antisemitic riot that occurred outside Adas Torah Synagogue (the "Synagogue") on June 23, 2024. See Second Amended Complaint ("SAC") ¶¶ 1-8. Plaintiff RONEN HELMANN is one of many members of the Los Angeles Jewish community who were forcefully prevented from exercising their First Amendment right of religious freedom at a place of religious worship due to the riot. See SAC ¶¶ 9-17.

The antisemitic riot was orchestrated by Defendants CodePink ("CodePink"), and Palestinian Youth Movement ("PYM"). Honor the Earth, a Section 501(c)(3) organization, is the fiscal sponsor of PYM, an unincorporated association without a formal principal place of business or public leadership structure. See SAC ¶¶ 39-41. As PYM's fiscal sponsor, Honor the Earth collects and disburses donations on PYM's behalf due to PYM's lack of tax-exempt status. See SAC ¶¶ 128-144.

According to PYM's website, Defendant WESPAC was the fiscal sponsor to PYM until recently, but Defendant Honor the Earth was designated as fiscal sponsor just prior to the time of the riot. *See* Dkt. 70-1, 70-2, Exhibits 1, 2 to the SAC. Neither PYM nor WESPAC has made documentation regarding their fiscal sponsorship of PYM available to Plaintiff. Thus, the facts at this stage indicate that WESPAC and PYM may have both been fiscal sponsors at the time of the violent riot at Adas Torah. The IRS requires fiscal sponsors to retain "control and discretion as to the use of funds and maintain[ ] records establishing that the funds were used for section 501(c)(3) purposes." 1968 IRB LEXIS 179, *1 (I.R.S. July 1, 1968); *see also Nat'l Foundation v. United States*, 13 Cl. Ct. 486, 87-2 USTC para. 9602 (1987). Accordingly, as PYM's fiscal sponsor, Honor the Earth is responsible for how PYM uses its funds. PYM's actions can be imputed to Honor the Earth at the pleadings stage.

Honor the Earth, however, has now filed a motion to dismiss the claims in the Second Amended Complaint, arguing that (1) Plaintiff's characterizations of

Defendants' conduct should be stricken under Rule 12(f), (2) there is no basis to exercise personal jurisdiction over Honor the Earth, (3) Plaintiff's class action claims should be dismissed, and (4) Plaintiff fails to state a claim upon which relief can be granted. The basis for these arguments is that Honor the Earth's fiscal sponsorship of PYM does not expose Honor the Earth to liability for PYM's conduct. This claim—and thus Honor the Earth's motion to dismiss and strike—fail as a matter of law because Honor the Earth's admitted fiscal sponsorship of PYM is indeed sufficient to state a claim against Honor the Earth and exercise personal jurisdiction over it. Further, it is premature to strike Plaintiff's characterizations or the class allegations at the pleading stage.

## II.  STATEMENT OF FACTS AND PROCEDURAL HISTORY

As detailed in the Second Amended Complaint, on June 23, 2024, over two-hundred rioters (some who were armed) entered the predominantly orthodox Jewish neighborhood of Pico Robertson in Los Angeles's Westside and blocked access to the Synagogue. See SAC ¶¶ 217-238. Motivated by the lie that the Synagogue was hosting an event that encouraged Jewish community members to "steal" Palestinian land, the rioters surrounded the Synagogue, attacked congregants and other Jewish allies, and chanted "Intifada" and other phrases calling for violence against Jewish people. See SAC ¶¶ 197-216.

The rioters' violent outburst—which was widely covered in the news and condemned by numerous leaders, including Los Angeles Mayor Karen Bass, California Governor Gavin Newsom, and President Joe Biden—was far from spontaneous. On the contrary, organizations like CodePink and PYM on several occasions posted the date and address of the event at the Synagogue on social media, calling on fellow anti-Israel protesters to show up at "12 PM SHARP" and "STAND AGAINST SETTLER EXPANSION." See SAC ¶¶ 210-212. PYM's posts were particularly inflammatory referring to the synagogue as "THE BELLY OF THE BEAST" and declaring that there would be "NO JUSTICE, NO PEACE." See SAC ¶¶ 213-214.

Critically, Honor the Earth remains responsible for the way that PYM spends its money. As PYM's fiscal sponsor, Honor the Earth is responsible for funding PYM's activities. Indeed, as the images of PYM's website make clear, individuals could donate to PYM by sending a check to Honor the Earth and indicating "PYM" in the memo line. *See* Dkt. 70-2, Exhibit 2.

## III. LEGAL ARGUMENT

Plaintiffs in federal court are required to give "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). While the Federal Rules allow a court to dismiss a cause of action for "failure to state a claim upon which relief can be granted," they also require all pleadings to be "construed so as to do justice." Fed. R. Civ. P. 12(b)(6), 8(e). The purpose of Rule 8(a)(2) is to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citation omitted) "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

Here, the allegations are well-pleaded and the Court should deny the motions to dismiss and strike. Additionally, the court may exercise personal jurisdiction over defendant when the plaintiff shows that (1) "the defendant has 'purposefully directed' his activities at residents of the forum" state, and (2) "the litigation results from alleged injuries that 'arise out of or relate to' those activities." *Preciado v. Freightliner Custom Chassis Corp.*, 87 Cal. App. 5th 964 (Cal.App.4th 2023) (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472-473 (1985)). Here, Plaintiff made these required showings and the motion to dismiss should similarly be denied on this ground.

//
//
//

**A.  PLAINTIFF HELMANN HAS ADEQUETLY STATED CLAIMS AGAINST HONOR THE EARTH BECAUSE HONOR THE EARTH IS RESPONSIBLE FOR THE WAY THAT PYM SPENDS ITS MONEY.**

Honor the Earth alleges that none of Plaintiff's allegations in connection with the riot state a claim against Honor the Earth. In making this argument, Honor the Earth posits that its undisputed status as PYM's fiscal sponsor does not expose Honor the Earth to liability for PYM's conduct, and that Honor the Earth's assertions to the contrary are merely "conclusory allegations of law" that this Court need not accept as true This, however, is not the case. Far from "merely conclusory, unwarranted deductions of fact, or unreasonable inferences," *Sprewell v. Golden State Warriors*, Nos. 99-15602, 99-17186, 2001 U.S. App. LEXIS 20434, at *12 (9th Cir. Dec. 28, 2001), Plaintiff's claim that Honor the Earth's fiscal sponsorship of PYM makes it liable for PYM's unlawful conduct is well-supported by fact and law.

As noted above, the IRS requires fiscal sponsors to retain "control and discretion as to the use of funds and maintain[ ] records establishing that the funds were used for section 501(c)(3) purposes." 1968 IRB LEXIS 179, *1 (I.R.S. July 1, 1968). While there are many reasons for this requirement, it is largely because "there is a 'trap for the unwary' among fiscal sponsorship arrangements . . . . If the control mechanisms are not administered properly," the IRS will "disregard the role of the sponsor and declare that the funding source has, in effect, made a payment directly to a nonsection 501(c)(3) project." When this occurs, "[t]he sponsor may lose its tax-exempt status for failure to exercise sufficient control over its funds," and for "permitting those funds to be used in a noncharitable manner." Tax ramifications aside, a critical component of this requirement is that it creates an agency relationship between the Section 501(c)(3) sponsor and the non-exempt organization. In this agency relationship, "the charity must be in the controlling position, and the nonexempt project must act so as to further the charity's exempt purposes."

Accordingly, as PYM's Section 501(c)(3) sponsor, Honor the Earth is in the controlling position of an agency relationship with PYM. The effect of this relationship is that Honor the Earth may be held liable for PYM's conduct under common-law agency principles. Indeed, as Plaintiff alleges—and Honor the Earth does not dispute in its motion to dismiss—that Honor the Earth "collects and disburses donations on PYM's behalf." See SAC ¶ 134; Exhibit 2.

For the same reason, Honor the Earth also argues that Plaintiff fails to state a claim under 18 U.S.C. § 248 or 42 U.S.C. § 1985(3) because Honor the Earth did not personally perform any of the violence or obstruction. However, Honor the Earth's argument neglects that Plaintiff's claim is based on its fiscal sponsorship and agency relationship with PYM.

As such, Plaintiff's claim that Honor the Earth may be liable for PYM's conduct at and around the riot is hardly a conclusory legal allegation. Instead, it is based on facts regarding Honor the Earth's fiscal sponsorship of PYM and relevant caselaw and legal principles, such that this Court may "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

### B. THIS COURT MAY PROPERLY EXERCISE PERSONAL JURISDICTION OVER DEFENDANT HONOR THE EARTH DUE TO ITS FISCAL SPONSORSHIP OF PYM.

Honor the Earth also argues that this action should be dismissed for lack of personal jurisdiction. According to Honor the Earth, it does not have the minimum contacts with California that are required for this Court to exercise personal jurisdiction. *See Int'l Shoe Co. v. Washington*, 326 U.S. 310 (1945).

This, however, is not the case. While Honor the Earth does indeed have its principal place of business outside of California, Honor the Earth's contacts with California through its fiscal sponsorship of PYM are sufficient to establish specific personal jurisdiction in this Court. *See, e.g., Preciado*, 87 Cal. App. 5th at 977. "In order for a court to exercise specific jurisdiction over a claim, there must be an

'affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State.'" *Bristol-Myers Squibb Co. v. Superior Ct.*, 582 U.S. 255, 264 (2017). "Federal courts ordinarily follow state law in determining the bounds of their jurisdiction," *Daimler AG v. Bauman*, 571 U.S. 117 (2014) (citing Fed. R. Civ. P. 4(k)(1)(A)), and a California court in *Preciado* recently articulated a test for specific personal jurisdiction that applies here. *See* 87 Cal. App. 5th at 977.

Under that test, for a state to have specific jurisdiction, the defendant "must take some act by which [it] purposefully avails itself of the privilege of conducting activities within the forum State." *Id*. (internal citations omitted). "The contacts must be the defendant's own choice and not 'random, isolated, or fortuitous,'" and "[t]hey must show that the defendant deliberately 'reached out beyond' its home"—by, for example— "entering a contractual relationship centered there." *Id*. (internal citations omitted).

Additionally, the plaintiff's claims must "arise out of or re relate to the defendant's contacts" with the forum state. *Id*. (internal citations omitted). In short, this Court may exercise specific personal jurisdiction over a defendant if the plaintiff makes a "two-part showing": "[(1)] the defendant has 'purposefully directed' his activities at residents of the forum, . . . and [(2)] the litigation results from alleged injuries that 'arise out of or relate to' those activities." *Id*. (citing *Rudzewicz*, 471 U.S. at 472-473) (alterations in original).

Despite Honor the Earth's claims to the contrary, Plaintiff has met this test here. As for the first prong, Plaintiff has demonstrated that Honor the Earth purposefully directed its activities at California by funding the operations of PYM, which organizes and participates in California-based events like the riot. *See* SAC ¶¶ 35, 43-47; Exhibits 1, 2. Further the actions of PYM may be imputed to Honor the Earth because of their agency relationship. As for the second prong, this litigation is a direct result of Honor the Earth's relationship with PYM, as its fiscal sponsorship of PYM enabled the group to secure the funding it needed to publicize and organize the Adas Torah riot that targeted

California residents for antisemitic violence. *See* SAC ¶¶ 86-144; Exhibits 1, 2. As such, Honor the Earth's fiscal sponsorship of PYM—deliberately opaque as it maybe—is sufficient to allow this Court to exercise personal jurisdiction over Honor the Earth.

### C. HONOR THE EARTH'S MOTION TO STRIKE SHOULD BE DENIED

Honor the Earth also moves to strike certain language under Rule 12(f). A court may "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." See Fed. R. Civ. P. 12(f). The purpose of a motion to strike is "to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial." *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993). Motions to strike are generally disfavored and "should not be granted unless the matter to be stricken clearly could have no possible bearing on the subject of the litigation. If there is any doubt whether the portion to be stricken might bear on an issue in the litigation, the court should deny the motion." *Platte Anchor Bolt, Inc. v. IHI, Inc.*, 352 F.Supp.2d 1048, 1057 (N.D. Cal. 2004) (internal citations omitted).

However, the motion to strike ignores that Plaintiff has the right to present his characterizations of facts at the pleadings stage, and such characterizations should not be stricken unless they fall within the specific categories outlined in Rule 12(f). *See Bogazici Hava Tasimaciligi A.S. v. McDonnell Douglas Corp.*, 932 F.2d 972, 974 (9th Cir. 1991). ("Motions to strike are generally disfavored by courts."). The Court cannot resolve factual determinations at the pleadings stage. For instance, the Ninth Circuit held that courts may not resolve disputed and substantial factual or legal issues in deciding a motion to strike. *Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 974 (9th Cir. 2010). Accordingly, the Motion to Strike should be denied.

//

//

### D. HONOR THE EARTH'S MOTION TO DISMISS PLAINTIFF'S CLASS ACTION ALLEGATIONS SHOULD BE DENIED

Honor the Earth moves to dismiss Plaintiff's class action allegations, but courts generally do not consider whether a case should be certified as a class action until the motion for class certification stage. Honor the Earth only refers to cases where a motion for class certification has been denied. Honor the Earth does not present any authority that determines Plaintiff's class claims should be dismissed at the pleadings stage.

Indeed, Plaintiff seeks to represent "All persons who intended to, planned to, attempted to, or did in fact enter the Adas Torah Synagogue in Los Angeles, California, on June 23, 2024…" SAC ¶ 338. This is a limited universe of individuals who were all subject to Defendants' uniform conduct of organizing a riot that would interfere with those rights. Defendants subjected them all to the same attack on their synagogue in a common manner such that a class action is a superior method of adjudication, as individuals are unlikely to file their own individual claims. Defendant's cases may illustrate the difficulty of certifying classes, but they do not suggest that the Court should address this issue at the pleading stage.

## IV. CONCLUSION

For the reasons explained herein, Plaintiff respectfully requests the Court deny Honor the Earth's motions to strike and dismiss. If the Court does grant the motion to dismiss, Plaintiff requests leave to amend.

Dated: January 27, 2025         Respectfully submitted

By: /s/ Mark L. Javitch
Mark L. Javitch (SBN 323729)
JAVITCH LAW OFFICE
3 East 3rd Ave. Ste. 200
San Mateo CA 94401
Tel: (650) 781-8000
Fax: (650) 648-0705

*Attorney for Plaintiff*
RONEN HELMANN

## CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Plaintiff, certifies that this brief contains 2,861 words, which:

   <u> X </u>  complies with the word limit of L.R. 11-6.1.

   <u>   </u>  complies with the word limit set by court order dated <u>      </u>

Dated: January 27, 2025          <u>*/s/ Mark L. Javitch*</u>
                                                 Mark L. Javitch

## PROOF OF SERVICE

STATE OF CALIFORNIA, COUNTY OF SAN MATEO

At the time of service, I was over 18 years of age. I am employed in County of San Mateo, State of California. My business address is Javitch Law Office, 3 East 3rd Ave, Ste. 200, San Mateo, California, 94401.

I declare that I served a copy of this document via the Court's Electronic Filing System to all counsel of record.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: January 27, 2025          <u>*/s/ Mark L. Javitch*</u>
                                                 Mark L. Javitch