Mark L. Javitch (CA SBN 323729)
Javitch Law Office
3 East 3rd Ave. Ste. 200
San Mateo, CA 94401
Telephone: 650-781-8000
Facsimile: 650-648-0705
mark@javitchlawoffice.com

*Attorney for Plaintiff*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

RONEN HELMANN, individually, and on behalf of all others similarly situated,

Plaintiff,

v.

CODEPINK WOMEN FOR PEACE, a California entity, CODEPINK ACTION FUND, a California entity, HONOR THE EARTH, a Minnesota entity, COURTNEY LENNA SCHIRF, and REMO IBRAHIM, d/b/a PALESTINIAN YOUTH MOVEMENT, PALESTINIAN YOUTH MOVEMENT, and JOHN AND JANE DOES 1-20,

Defendants.

Case No.: 2:24-cv-05704-SVW-PVC

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S OPPOSITION TO THE MOTION TO DISMISS AND STRIKE FILED BY PALESTINIAIN YOUTH MOVEMENT, REMO IBRAHIM, AND COURTNEY LENNA SHIRF**

TABLE OF CONTENTS

TABLE OF CONTENTS....................ii
TABLE OF AUTHORITIES....................iii
I. INTRODUCTION....................1
II. ARGUMENT....................1
A. PYM, Schirf, and Ibrahim's Motion to Strike Is Frivolous....................1
B. The Court Has Personal Jurisdiction over PYM and Schirf....................3
C. Defendants' Class-Certification Arguments Are Meritless....................6
D. The Second Amended Complaint far Surpasses the Standard for Surviving a Rule 12(b)(6) Motion to Dismiss....................7
1. Plaintiffs have plausibly alleged that PYM, Schirf, and Ibrahim violated the FACE Act....................7
2. Plaintiffs have plausibly alleged that PYM, Schirf, and Ibrahim violated 42 U.S.C. § 1985....................12
a. A conspiracy plainly existed....................12
b. The "State Action" argument is misplaced....................13
c. PYM, Schirf, and Ibrahim were driven by antisemitic animus....13
d. The alleged harms are directly attributable to defendants'conduct....................14
III. CONCLUSION....................15
CERTIFICATE OF COMPLIANCE....................16
CERTIFICATE OF SERVICE....................17

## TABLE OF AUTHORITIES

**Cases Page(s)**

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .................................... 10

*Bancroft & Masters, Inc. v. Augusta Nat'l, Inc.*,
223 F.3d 1082 (9th Cir. 2000) .................................... 4

*Blakemore v. Super. Ct.*,
129 Cal. App. 4th 36 (2005) .................................... 6

*Bray v. Alexandria Women's Health Clinic*,
506 U.S. 263 (1993) .................................... 13

*Davis v. Cranfield Aero. Sols., Ltd.*,
71 F.4th 1154 (9th Cir. 2023) .................................... 3

*Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*,
592 U.S. 351 (2021) ....................................3, 5

*Gillibeau v. City of Richmond*,
417 F.2d 426 (9th Cir. 1969) .................................... 6

*Griffin v. Breckenridge*,
403 U.S. 88 (1971) .................................... 13

*iSpot.tv Inc. v. Teyfukova*,
2023 WL 1967958 (C.D. Cal. Jan. 25, 2023) ....................................11

*Jews for Jesus, Inc. v. Jewish Cmty. Relations Council, Inc.*,
968 F.2d 286 (2d Cir. 1992) .................................... 13

*Luehring v. Metro. State Hosp.*,
2024 U.S. Dist. LEXIS 235458 (C.D. Cal. Dec. 16, 2024) .................................... 2

*Martin v. Masters*,
2025 U.S. Dist. LEXIS 4742 (N.D. Cal. Jan. 7, 2025) .................................... 5

*Mavrix Photo, Inc. v. Brand Techs., Inc.*,

647 F.3d 1218 (9th Cir. 2011) .......... 5, 6

*Preciado v. Freightliner Custom Chassis Corp.*,
87 Cal. App. 5th 964 (Cal.App.4th 2023) .......... 4

*Prince v. CLS Transp., Inc.*,
118 Cal. App. 4th 1320 (2004) .......... 6

*Ranza v. Nike, Inc.*,
793 F.3d 1059 (9th Cir. 2015) .......... 4

*RDF Media Ltd. v. Fox Broad. Co.*,
372 F. Supp. 2d 556 (C.D. Cal. 2005) .......... 2

*Retail Prop. Trust v. United Bhd. of Carpenters & Joiners of Am.*,
768 F.3d 938 (9th Cir. 2014) .......... 10

*Rieves v. Town of Smyrna*,
67 F.4th 856 (6th Cir. 2023) .......... 14

*Russello v. United States*,
464 U.S. 16 (1983) .......... 9

*Safe Air for Everyone v. Meyer*,
373 F.3d 1035 (9th Cir. 2004) .......... 11

*Sánchez v. Foley*,
972 F.3d 1 (1st Cir. 2020) .......... 14

*Schwarzenegger v. Fred Martin Motor Co.*,
374 F.3d 797 (9th Cir. 2004) .......... 4, 5

*United States v. Gregg*,
226 F.3d 253 (3d Cir. 2000) .......... 9

*United States v. Navarrette-Aguilar*,
813 F.3d 785 (9th Cir. 2015) .......... 12

*White v. Lee*,
227 F.3d 1214 (9th Cir. 2000) .......... 11

Statutes

18 U.S.C. § 248 ....................6-8
42 U.S.C. § 1983 ....................14
42 U.S.C. § 1985 ....................12-14

Other

Fed. R. Civ. P. 12 ....................passim
Fed. R. Civ. 23 .................... 6
U.S. Const. amend. I ....................7-9, 11

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

On June 23, 2024, a violent mob descended upon the heart of Los Angeles's Jewish community. See Second Amended. Compl. ("SAC") ¶¶ 1-7, 234. Armed with bear spray and other weapons, donning the attire of Hamas terrorists, and yelling "Hitler didn't finish the job!", "Intifada!", and "Leave the neighborhood, we are coming!", the rioters used force and threats of force to prevent Jewish congregants from safely entering their house of worship, the Adas Torah Synagogue (the "Synagogue"). SAC. ¶¶ 1, 250-260. The over two-hundred rioters who stood shoulder-to-shoulder in front of the main entrances to the Synagogue—which they called "THE BELLY OF THE BEAST"—intended to obstruct wouldbe worshippers from practicing their religion. SAC. ¶¶ 213, 246-260. They succeeded in this goal: through their violent attacks and intimidating threats, the rioters rendered passage to and from the Synagogue too difficult and hazardous for many congregants to attempt. SAC. ¶¶ 271-307.

Plaintiff Ronen Helmann is a resident of Los Angeles whose ability to enter the Synagogue on June 23, 2024 was made unreasonably difficult or hazardous by virtue of Defendants' actions. SAC. ¶¶ 29, 217-311. Plaintiff brings this action on behalf of himself and all those similarly situated against the entities and individuals who organized, facilitated, and participated in the riot, including Defendants Palestinian Youth Movement ("PYM"), Courtney Lenna Schirf ("Schirf"), and Remo Ibrahim ("Ibrahim")

## II. ARGUMENT

### A. PYM, Schirf, and Ibrahim's Motion to Strike Is Frivolous.

PYM, Schirf, and Ibrahim move to strike various matter from the operative complaint. Under Rule 12(f), "[t]he court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). That said, "[m]otions to strike are generally disfavored . . . because" they are "usually used as a delaying tactic." *RDF Media Ltd. v. Fox Broad*. Co., 372 F. Supp. 2d

556, 561 (C.D. Cal. 2005). Courts throughout this State have, for more than thirty years, consistently rejected motions to strike "unless it is clear that the matter to be stricken could have no possible bearing on the subject matter of the litigation." *Luehring v. Metro. State Hosp*., 2024 U.S. Dist. LEXIS 235458, at *2 (C.D. Cal. Dec. 16, 2024) (quoting *LeDuc v. Ky. Cent. Life Ins*. Co., 814 F. Supp. 820, 830 (N.D. Cal. 1992)).

At bottom, Plaintiffs have alleged that Schirf, Ibrahim, and PYM, an organization with a demonstrated history of antisemitic conduct, (1) caused a riot that prevented orthodox Jews from worshiping at a synagogue after (2) agreeing with other antisemitic organizations and individuals to work side-by-side in depriving the proposed class of their constitutionally guaranteed civil rights. It is hard to imagine a fact with more bearing on Plaintiffs' claims than PYM, Ibrahim, and Schirf's relentless, demonstrable, and very public hostility to the Jewish community. On those grounds alone, Defendants' motion to strike should be summarily rejected.

Importantly, the paragraphs Defendants consider "scandalous" and "defamatory" sit at the heart of the allegations that Plaintiffs have brought against it. Indeed, the Motion proves the point: it simultaneously argues that (1) PYM's long, unbroken history of anti-Jewish animus is "irrelevant to the causes of action" and (2) Plaintiffs "cannot point to a single statement or action establishing a plausible factual basis for racial or class-based animus."

Simply put, Plaintiffs allege that PYM, Schirf, and Ibrahim "terrorized" Jews by orchestrating a riot outside of a synagogue that involved violence and threats of violence. Plaintiffs have further alleged that PYM, Schirf, and Ibrahim terrorized Jews because they are Jews. For that reason, PYM, Schirf, and Ibrahim's history of terrorizing Jews is plainly relevant, especially insofar as it shows that the Adas Torah riot did not occur in a vacuum. SAC. at ¶¶ 45–85. The allegations at issue are true, and therefore cannot be defamatory. Further, they establish Defendants' anti-Jewish animus, and put the lie to any claim that PYM, Schirf, and Irahim's actions leading up to June

23, 2024 were motivated by anything but antisemitic hatred. They should not be stricken

**B. The Court Has Personal Jurisdiction over PYM and Schirf.**

PYM and Schirf move this Court to dismiss Plaintiffs' claims for lack of personal jurisdiction under Rule 12(b)(2). The Supreme Court has held that "a tribunal's authority depends on the defendant's having such 'contacts' with the forum State that 'the maintenance of the suit' is 'reasonable, in the context of our federal system of government,' and 'does not offend traditional notions of fair play and substantial justice.'" *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 592 U.S. 351, 358 (2021) (quoting *International Shoe Co. v. Washington*, 326 U.S. 310, 316-17 (1945)). "In giving content to that formulation, the Court has long focused on the nature and extent of 'the defendant's relationship to the forum State.'" *Id.* (quoting *Bristol-Myers Squibb Co. v. Superior Ct.*, 582 U.S. 255, 262 (2017)). As a result of that "focus," the Court recognizes two forms of personal jurisdiction: "general (sometimes called all-purpose) jurisdiction and specific (sometimes called case-linked) jurisdiction." *Id.* (citing *Goodyear Dunlop Tires Operations, S. A. v. Brown*, 564 U.S. 915, 919 (2011)). While general jurisdiction "comes into play when a defendant is 'essentially at home' in the forum state," "[s]pecific jurisdiction, on the other hand, permits jurisdiction over a defendant 'less intimately connected' with a forum state." *Davis v. Cranfield Aero. Sols., Ltd.*, 71 F.4th 1154, 1161 (9th Cir. 2023) (quoting *Ford*, 592 U.S. at 372 (Alito, J., concurring)). As its alternative name suggests, specific jurisdiction is linked to the facts of the case at hand, being appropriate when the plaintiff's claims "arise out of or relate to" the defendant's deliberate efforts to "reach[] out beyond" its home state and "conduct[] activities within the forum State." *Ford*, 592 U.S. at 359.

The Ninth Circuit employs a three-part test to determine whether specific jurisdiction exists. It is the plaintiff's burden to establish the first two prongs of the test, which are: (1) whether the defendant "purposefully direct[ed] his activities or consummate[d] some transaction with the forum or resident thereof," and (2) whether

the plaintiff's claim "arises out of or relates to" those "forum-related activities." *Schwarzenegger v. Fred Martin Motor Co*., 374 F.3d 797, 802 (9th Cir. 2004) (quoting *Lake v. Lake*, 817 F.2d 1416, 1421 (9th Cir. 1987)). Once the plaintiff satisfies these two prongs, "the burden then shifts to the defendant to 'present a compelling case' that the exercise of jurisdiction would not be reasonable." *Id*. (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476-78 (1985)); see also *Preciado v. Freightliner Custom Chassis Corp*., 87 Cal. App. 5th 964, 977 (Cal.App.4th 2023). If the defendant cannot satisfy this burden, the third prong is met and the court may properly exercise specific jurisdiction over the defendant.

Importantly, when evaluating a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction "based on written materials rather than an evidentiary hearing," the court may "only inquire into whether [the plaintiff's] pleadings and affidavits make a prima facie showing of personal jurisdiction." *Schwarzenegger*, 374 F.3d at 800. At this stage, "uncontroverted allegations in the complaint must be taken as true," and conflicts regarding affidavits (to the extent they exist) "must be resolved in the plaintiff's favor." Id. (citing *AT&T v. Compagnie Bruxelles Lambert*, 94 F.3d 586, 588 (9th Cir. 1996)); see also *Bancroft & Masters, Inc. v. Augusta Nat'l, Inc*., 223 F.3d 1082, 1087 (9th Cir. 2000) ("Because the prima facie jurisdictional analysis requires us to accept the plaintiff's allegations as true, we must adopt [the plaintiff's] version of events for purposes of this appeal."); *Ranza v. Nike, Inc*., 793 F.3d 1059, 1068 (9th Cir. 2015) (same).

Here, Plaintiffs have made the required showing for specific jurisdiction over both PYM and Schirf. First, PYM purposefully directed its activities at California by organizing, promoting, and participating in the June 23 riot at a Los Angeles synagogue. SAC. ¶¶ 8, 39-51, 59, 72-85. PYM's social media posts specifically targeted California residents, calling for them to participate in the demonstration. SAC. ¶¶ 197-216. These were not "random" or "fortuitous" contacts with California: instead, they represent PYM's intentional targeting of California venues and residents for its

activities. *See Ford*, 592 U.S. at 361. Similarly, Schirf's role in PYM's social media strategy demonstrates purposeful direction toward California. SAC. ¶¶ 8, 91-92, 197-216. While PYM argues that social media posts alone cannot establish jurisdiction, courts have recognized that virtual contacts targeting forum residents can satisfy the minimum contacts test. *See, e.g., Mavrix Photo, Inc. v. Brand Techs., Inc*., 647 F.3d 1218, 1230-32 (9th Cir. 2011) (finding specific jurisdiction when a national website included material targeting California residents). Schirf's deliberate use of social media to organize California-based activities thus satisfies the purposeful direction prong for both herself and PYM.

Second, the claims in this lawsuit directly arise from these California-focused activities. The entire case stems from the June 23 riot that PYM helped organize and promote. The relationship between PYM's California-directed conduct and Plaintiffs' claims could not be closer. SAC. ¶¶ 197-216. Because the allegations in the Second Amended Complaint—which must be taken as true at this stage—establish the first two prongs of the Ninth Circuit's test for specific jurisdiction, the burden of presenting a "compelling case" as to why specific jurisdiction is not reasonable shifts to PYM and Schirf. *Schwarzenegger*, 374 F.3d at 802. Neither PYM nor Schirf can satisfy this burden. In fact, they misstate the governing legal standard for this prong, claiming that it is Plaintiffs' burden "to satisfy the third specific jurisdiction element." Regardless, their suggestion that specific jurisdiction would be unreasonable because PYM and Schirf do not reside in California and are "not alleged to have sent any funds to California" is insufficient given modern jurisprudence recognizing that virtual contacts alone can indeed support specific jurisdiction. *Mavrix Photo,* 647 F.3d at 1230-32. Accordingly, because (1) PYM and Schirf purposefully directed conduct at California, (2) such conduct directly relates to this litigation, and (3) PYM and Schirf cannot present a compelling case that jurisdiction would be unreasonable, this Court has a sufficient basis to exercise specific personal jurisdiction over PYM and Schirf.

**C. Defendants' Class Certification Arguments are Meritless.**

PYM, Schirf, and Ibrahim's next line of attack fares no better. Relying on two California state court cases discussing state court standards for class certification in the context of state court demurrers and motions to strike, PYM argues that Plaintiffs' class claims fail. Neither of the cases cited by PYM supports its argument. *Blakemore v. Super. Ct.*, 129 Cal. App. 4th 36 (2005) held that a trial court erred in striking class certification allegations from the complaint at issue. *In Prince v. CLS Transp., Inc.*, 118 Cal. App. 4th 1320, 1325 (2004), the Court of Appeal held that the trial court erred in granting a demurrer to class claims in a complaint, noting that "it is only in mass tort actions (or other actions equally unsuited to class action treatment) that class suitability can and should be determined at the pleading stage." Even if this were a state court case, PYM has cited no law supporting the proposition that Plaintiffs' class claims should be dismissed. Of course, this isn't a state court case. And for more than 50 years, the governing law in the Ninth Circuit has been that "compliance with Rule 23 is not to be tested by a motion to dismiss for failure to state a claim." *Gillibeau v. City of Richmond*, 417 F.2d 426, 432 (9th Cir. 1969). District courts throughout the Circuit have consistently applied this principle ever since.

Even on PYM, Schirf, and Ibrahim's (mistaken) terms, their argument fails. The FACE Act provides a claim for any class member who was attempting to enter the Adas Torah Synagogue but experienced "force," a "threat of force," or "physical obstruction" while doing so. 18 U.S.C. § 248(a)(2). It matters not whether one person encountered a spear-wielding PYM acolyte; another was assaulted with bear spray; another simply observed scores of individuals who, organized by PYM, Schirf, and Ibrahim, stood shoulder-to-shoulder and screeched antisemitic vitriol until that person declined to exercise her constitutionally protected freedom of worship out of fear for her physical safety; or another made it into the Synagogue after facing attempts to prevent him from doing so. The injury inflicted upon each— a FACE Act violation—is common (indeed,

identical), which makes the allegations brought against PYM, Schirf, Ibrahim, and their co-conspirators uniquely amendable to class-wide adjudication.

**D. The Second Amended Complaint far Surpasses the Standard for Surviving a Rule 12(b)(6) Motion to Dismiss**

**1. Plaintiffs have plausibly alleged that PYM, Schirf and Ibrahim violated the FACE Act.**

At the outset, a fundamental misunderstanding that permeates PYM, Schirf, and Ibrahim's Motion to Dismiss needs correcting. According to PYM, Schirf, and Ibrahim, no FACE Act violation could have arisen because neither it, nor the mob that it stirred to action, knew that the congregants they terrorized were attempting to exercise their constitutional right to religious exercise—which means they could not have specifically intended to prevent anyone from worshiping at Adas Torah. Even assuming that PYM, Schirf, and Ibrahim or the rioters were too oblivious to realize that Orthodox Jews use synagogues for prayer and other religious activities, PYM, Schirf, and Ibrahim's head-in-the-sand intentionality argument fails as a matter of statutory interpretation.

In full, the provision of the FACE Act that PYM, Schirf and Ibrahim violated states:

> Whoever . . . .
>
> [a] by force or threat of force or by physical obstruction,
>
> [b] intentionally injures, intimidates or interferes with or attempts to
>
> [c] injure, intimidate or interfere with
>
> any person lawfully exercising or seeking to exercise the First Amendment right of religious freedom at a place of religious worship . . . shall be subject to . . . penalties.
>
> 18 U.S.C. § 248(a)(2) (emphasis added).

Here, the word "intentionally" only modifies the phrase "injures, intimidates or interferes with or attempts to injure, intimidate or interfere with." *Id*. It does not extend past that clause.

In other words, the "intentionality" mens rea requirement means that the FACE Act violator must have meant to injure, intimidate, or create an interference; accidentally or negligently creating an impediment is not enough. But, "intentionally" does not, as PYM, Schirf and Ibrahim would have it, mean Plaintiffs must show that the PYM, Schirf and Ibrahim organized rioters had the subjective awareness that the victims of their intentional conduct were trying to enter the synagogue to worship. Were it otherwise, the FACE Act would have to read as follows:

Whoever . . . .

[a] by force or threat of force or by physical obstruction,

[b] intentionally injures, intimidates or interferes with or attempts to

[c] injure, intimidate or interfere with

any person **[because that person is or has been]** lawfully exercising or seeking to exercise the First Amendment right of religious freedom at a place of religious worship . . . shall be subject to . . . penalties.

That, however, is not the statute that Congress enacted. Critically, when Congress does want to create this type of scienter requirement, it knows how to do so. The Court need look no further than the abortion-clinic provision of the FACE Act to see an example. That provision, enumerated at 18 U.S.C. § 248(1), provides that:

Whoever . . . .

[a] by force or threat of force or by physical obstruction,

[b] intentionally injures, intimidates or interferes with or attempts to

[c] injure, intimidate or interfere with any person because that person is or has been, or in order to intimidate such person or any other person or any class of persons from, obtaining or providing reproductive health services shall be subject to . . . penalties. Id. (emphasis added). The inclusion of the phrase "because that person" in Section 248(1) is proof positive that the exclusion of a similar modifier in Section 248(2) was an intentional decision by the Congress that

enacted the FACE Act. The Supreme Court has recognized this canon of statutory construction for decades:

"[Where] Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." *Russello v. United States*, 464 U.S. 16, 23 (1983) (quoting *United States v. Wong Kim Bo*, 472 F.2d 720, 722 (5th Cir. 1972) (alteration in original)).

And this makes sense; similar to the eggshell-skull theory of tort liability, if PYM, Schirf and Ibrahim decide to stir up a riot to assault and batter Jews who are trying to enter a synagogue, they should assume the risk that those Jews are entering the synagogue to "exercise[e] or seek[] to exercise the First Amendment right of religious freedom at a place of religious worship." Id. For that reason, even if the Court credits PYM, Schirf and Ibrahim's argument that it had no idea, and could not have had any idea, that the Orthodox Jews who its rioters were intentionally attacking and intimidating were trying to enter their house of worship so that they could worship there, PYM, Schirf and Ibrahim are still liable under the FACE Act for the violence they incited.

Lastly, Plaintiffs are not required to plead or prove that PYM, Schirf and Ibrahim, or any single Defendant for that matter, was the sole cause of the Adas Torah riot—only that they played a part—for liability under the FACE Act is joint and several. *See, e.g., United States v. Gregg*, 226 F.3d 253, 258-60 (3d Cir. 2000) (finding that liability under the FACE Act is joint and several among defendants).

Next, PYM, Schirf and Ibrahim argue that Plaintiffs have not alleged facts to plausibly demonstrate that it was responsible for the riot that it caused. To be certain, PYM, Schirf and Ibrahim never deny that violence ensued or that the Adas Torah congregation was intimidated and/or prevented from entering the synagogue en masse. It just disclaims responsibility for causing the riot, and insists that its members were not among the rioters. At this stage, the Court "must accept as true all factual allegations in

the complaint and draw all reasonable inferences in favor of the non-moving party." *Retail Prop. Trust v. United Bhd. of Carpenters & Joiners of Am*., 768 F.3d 938, 945 (9th Cir. 2014) (citation omitted). So long as the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face,'" the case must proceed. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, (2007)).

Plaintiffs have far exceeded the Twombly/Iqbal "plausibility" standard. As an initial matter, PYM, Schirf and Ibrahim are wrong that their members did not participate in the riot; its own publicly available videos depict PYM members at the scene while the riot was in progress. But more fundamentally, it remains blackletter law that the organizer of a riot can (and should) be held liable for the damage caused by the ensuing riot. This is true not only as a matter of common sense; it is also a principle established well enough to be memorialized in the Restatement (Second) of Torts, which provides that "[f]or harm resulting to a third person from the tortious conduct of another, one is subject to liability if he . . . knows that the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other so to conduct himself." Restatement (Second) of Torts § 876. Under any conceivable interpretation of the FACE Act, so long as the FACE Act violations were a reasonably foreseeable outcome of PYM, Schirf and Ibrahim's incitement, PYM, Schirf and Ibrahim are liable for the FACE Act violations that it caused.

Plaintiff's Second Amendment Complaint makes it profoundly "plausible" that PYM, Schirf and Ibrahim did in fact violate the FACE Act, injuring scores of proposed class and StandWithUs members along the way. When it advertised its "protest," PYM, Schirf and Ibrahim placed the name of Adas Torah inside an inverted red triangle, which is a symbol Hamas frequently uses to indicate its next target. SAC. ¶¶ 207-209. This, when combined with PYM's long history of using physical obstruction (and not just expression) in response to pro-Israel events, makes it quite "plausible" that PYM, Schirf and Ibrahim intended for the riot to proceed exactly as it did on June 23, 2024.

This is more than enough for the Court to reject their Rule 12(b)(6) argument and allow this case to proceed to discovery.3

Finally, as a last-ditch effort, PYM, Schirf and Ibrahim insist that their actions are all protected by the First Amendment. But, even though PYM, Schirf and Ibrahim have the right to express antisemitic hatred, they have no First Amendment right to incite violence or criminal activity. *White v. Lee*, 227 F.3d 1214, 1227 (9th Cir. 2000) (citing *Brandenburg v. Ohio*, 395 U.S. 444, 447 (1969)). When PYM, Schirf and Ibrahim shifted from speech to the organization, assistance, incitement, and funding of a riot that prevented an entire proposed class of Orthodox Jews from worshipping at their chosen synagogue, it shed whatever shield the First Amendment may have provided it.

Even granting PYM, Schirf and Ibrahim every benefit of the doubt, its First Amendment argument still fails. According to Defendants, "where protected First Amendment speech becomes intertwined with someone's later illegal conduct, the solution is to punish the conduct, not the speech." That, in turn, is precisely what Plaintiff is asking the Court to do here: punish PYM, Schirf and Ibrahim not for their expression but instead for their role in preventing and intimidating proposed class members from entering their house of worship. For that reason, PYM, Schirf and Ibrahim's argument fails, and along with it, their Rule 12(b)(6) motion to dismiss Plaintiff's FACE Act claim.[1]

---

[1] Defendants reference the legal standard for a Rule 12(b)(1) motion to dismiss for lack of Article III standing, but do not elaborate on their arguments in this regard beyond incorporating them into their Rule 12(b)(6) arguments. That said, because (1) such a motion would be a "facial attack" wherein the Court presumes the truthfulness of Plaintiffs' factual allegations, and (2) Defendants only challenge the traceability requirement of Article III standing (at most), a Rule 12(b)(1) motion would be rightfully denied regarding both of Plaintiffs' claims for the same reasons described above. *See Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004); *iSpot.tv, Inc. v. Teyfukova*, No. 2:21-CV-06815, 2023 WL 1967958, at *4 (C.D. Cal. Jan. 25, 2023) ("When the motion attacks the complaint on its face, the court considers the complaint's allegations to be true, and draws all reasonable inferences in the plaintiff's favor." (citing *Doe v. Holy See*, 557 F.3d 1066, 1073 (9th Cir. 2009)).

**2. Plaintiffs have plausibly alleged that PYM, Schirf and Ibrahim violated 42 U.S.C. § 1985.**

To succeed on their Section 1985 claim, Plaintiffs must show that (1) "two or more persons . . . [(2)] conspire[d] . . . for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws," and (3) "one or more persons engaged therein d[id], or cause[d] to be done, any act in furtherance of the object of such conspiracy, [(4)] whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States" 42 U.S.C. § 1985(3). Here, Plaintiffs have plausibly alleged that (1) PYM, Schirf and Ibrahim and others (2) conspired to violate the privileges and immunities of Plaintiffs and the proposed class members, (3) members of the conspiracy took actions in furtherance of their agreement, and (4) Plaintiffs and proposed class members did in fact experience a deprivation of their rights and privileges as a result of these actions. PYM, Schirf and Ibrahim's contrary arguments have no merit.

**a. A Conspiracy Plainly Existed**

PYM, Schirf and Ibrahim's first argument—that Plaintiffs failed to plead the existence of a conspiracy—ignores that it does not take much for a conspiracy to exist. Indeed, any agreement between two or more individuals or entities will do; there need be no formal agreement or even an explicit intention to operate in concert. In this Circuit, a conspiracy can be established through circumstantial evidence, coordinated actions, communications, and shared objectives. *See United States v. Navarrette-Aguilar*, 813 F.3d 785, 794 (9th Cir. 2015). And throughout the Second Amended Complaint, Plaintiffs have plausibly established that PYM, Schirf and Ibrahim coordinated their actions and communications with others to animate a shared objective: ensuring that a crowd would show up in front of the Adas Torah synagogue and interfere with the congregation's plans to worship there. *See, e.g.*, SAC ¶¶ 197-216.

And, plainly, the Second Amended Complaint is replete with steps taken in furtherance of that agreement. Nothing else is required to establish this first element. *Id*.

**b. The "State Action" argument is misplaced.**

Next, PYM, Schirf and Ibrahim argue that, without state action, no Section 1985 liability can arise. This is incorrect. Where, as here, the conspiracy aims to deprive individuals of their right to associate, practice religion, or be free from discrimination, a purely private conspiracy may proceed. This has been the case formore than fifty years, when the U.S. Supreme Court held that purely private conspiracies are actionable when discriminatory animus is present. *See Griffin v. Breckenridge*, 403 U.S. 88, 101-102 (1971); *see also Martin v. Masters*, 2025 U.S. Dist. LEXIS 4742, at *3 (N.D. Cal. Jan. 7, 2025). And since the early 1990s, the Court has recognized that religious discrimination constitutes the sort of class-based animus necessary for a state-actor-free claim under Section 1985. *See Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 267-68 (1993). The conspiracy through which PYM, Schirf and Ibrahim transgressed Plaintiffs' rights is of the kind that does not require a state actor. PYM, Schirf and Ibrahim joined with others to target a class of Jews who were attempting to exercise their constitutional and statutory right to worship as they choose without interference, intimidation, or impediment. Decades of Supreme Court precedent establishes that private conspiracies of this sort are actionable under Section 1985.

**c. PYM, Schirf and Ibrahim were driven by antisemitic animus.**

In an attempt to buttress its no-state-actor argument, PYM, Schirf and Ibrahim argue that Plaintiffs failed to allege class-based discriminatory animus. This argument runs counter to page after page of Plaintiffs' allegations, all of which plausibly establish that antisemitism motivated the actions of PYM, Schirf and Ibrahim and its co-conspirators. SAC ¶¶ 8, 197-216.

Religious groups, including Jews, are recognized as protected classes under Section 1985. *Jews for Jesus, Inc. v. Jewish Cmty. Relations Council, Inc.*, 968 F.2d

286, 291 (2d Cir. 1992). Given that anti-Zionism has been recognized by—among other courts—this Court as synonymous with antisemitism, especially when directed towards Jewish individuals, PYM, Schirf and Ibrahim's express targeting of a "A MEGA ZIONIST REAL ESTATE EVENT" is all that Plaintiffs need to show that religious animus motivated every step that PYM, Schirf and Ibrahim took vis-à-vis the Adas Torah riot. SAC ¶¶ 197-216. To be certain, PYM, Schirf and Ibrahim, with its co-conspirators, intentionally targeted Jewish congregants at a Jewish house of worship, with the goal of instilling so much fear and terror that those Jewish attendees would cease engaging in their religious activities.

It defies reason to suggest that those who showed up at a Synagogue, clad in Hamas insignia, to chant antisemitic rhetoric while physically attacking obviously Orthodox Jews had no class-based animus. At a minimum, the existence of antisemitic animus is plainly "plausible" from the Second Amended Complaint's allegations. For that reason, PYM, Schirf and Ibrahim's argument fails.

**d. The alleged harms are directly attributable to defendants' conduct.**

Finally, PYM, Schirf and Ibrahim argue that the injuries alleged by Plaintiffs cannot be traced to it. *See* Dkt. 86 at 28. This argument, however, fundamentally misunderstands how conspiracy liability works. PYM, Schirf and Ibrahim helped to organize and direct an event involving its members, who then engaged in obstruction, intimidation, and assault, which in turn proximately caused harm to Jewish worshippers. SAC. ¶¶ 239-311. That is all that it takes to establish conspiracy liability. Causation under Section 1985(3) does not require each defendant to have personally committed acts of violence. To do so "would defeat the purpose of permitting a civil conspiracy claim." *Rieves v. Town of Smyrna*, 67 F.4th 856, 863 (6th Cir. 2023). Instead, Section 1983 "permits a jury to hold co-conspirators liable for the damages flowing from a constitutional deprivation that all of the co-conspirators may not have personally carried out." *Sánchez v. Foley*, 972 F.3d 1, 11 (1st Cir. 2020). Here, PYM,

Schirf and Ibrahim agreed to organize, promote, and facilitate a riot outside of an Orthodox Jewish synagogue, and it predictably resulted in violence targeting Jewish worshippers. For that reason, PYM, Schirf and Ibrahim's argument fails.

## III. CONCLUSION

For the foregoing reasons, PYM, Schirf and Ibrahim's motions to dismiss and strike should be denied.

Dated: February 10, 2025 Respectfully submitted

By: /s/ Mark L. Javitch

Mark L. Javitch (SBN 323729)
JAVITCH LAW OFFICE
3 East 3rd Ave. Ste. 200
San Mateo CA 94401
Tel: (650) 781-8000
Fax: (650) 648-0705

*Attorney for Plaintiff*
RONEN HELMANN

## CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Plaintiff, certifies that this brief contains 5,529 words, which:

_X_ complies with the word limit of L.R. 11-6.1.

___ complies with the word limit set by court order dated ______

Dated: February 10, 2025 ______*/s/ Mark L. Javitch*______
Mark L. Javitch

## CERTIFICATE OF SERVICE

STATE OF CALIFORNIA, COUNTY OF SAN MATEO

At the time of service, I was over 18 years of age. I am employed in County of San Mateo, State of California. My business address is Javitch Law Office, 3 East 3rd Ave, Ste. 200, San Mateo, California, 94401.

I declare that I served a copy of this document via the Court's Electronic Filing System to all counsel of record.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: February 10, 2025 ______*/s/ Mark L. Javitch*______
Mark L. Javitch