Mark L. Javitch (CA SBN 323729)
Javitch Law Office
3 East 3rd Ave. Ste. 200
San Mateo, CA 94401
Telephone: 650-781-8000
Facsimile: 650-648-0705
mark@javitchlawoffice.com

*Attorney for Plaintiff*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

RONEN HELMANN,

Plaintiff,

v.

CODEPINK WOMEN FOR PEACE, a California entity, CODEPINK ACTION FUND, a California entity, HONOR THE EARTH, a Minnesota entity, COURTNEY LENNA SCHIRF, and REMO IBRAHIM, d/b/a PALESTINIAN YOUTH MOVEMENT, PALESTINIAN YOUTH MOVEMENT, and JOHN AND JANE DOES 1-20,

Defendants.

Case No.: 2:24-cv-05704-SVW-PVC

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S OPPOSITION TO CODE PINK'S MOTION TO STRIKE AND MOTION TO DISMISS**

# TABLE OF CONTENTS


TABLE OF AUTHORITIES ........................................................................................ ii

I. INTRODUCTION........................................................................................1

II. ARGUMENT ............................................................................................2

A. CodePink's Motion to Strike Is Frivolous. ......................................................2

B. CodePink's Class-Certification Arguments Are Meritless. ..............................3

C. The First Amended Complaint far Surpasses the Standard for Surviving a Rule 12(b)(6) Motion to Dismiss. ................................................4

1. Plaintiffs have plausibly alleged that CodePink violated the FACE Act. ...........................................................................4

2. Plaintiffs have plausibly alleged that CodePink violated 42

3. U.S.C. § 1985. ..........................................................................9

a. A conspiracy plainly existed. ..........................................................9

b. The "State Action" argument is misplaced. ..........................................10

c. CodePink was driven by antisemitic animus…………………………10

d. The alleged harms are directly attributable to defendants' conduct…….11

D. CodePink's Wayward "War Crimes" Argument Lacks Any Conceivable Basis in Either Law or Logic. ...............................................................12

III. CONCLUSION .......................................................................................14

CERTIFICATE OF SERVICE… ....................................................................15

L.R. 11-6.2 CERTIFICATE OF COMPLIANCE ..................................................15

## TABLE OF AUTHORITIES

**Cases Page(s)**

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .......... 7

*Baker v. Carr*,
369 U.S. 186 (1962) .......... 13-14

*Blakemore v. Super. Ct.*,
129 Cal. App. 4th 36 (2005) .......... 3

*Bray v. Alexandria Women's Health Clinic*,
506 U.S. 263 (1993) .......... 10

*Butcher v. City of Marysville*,
398 F. Supp. 3d 715 (E.D. Cal. 2019) .......... 3

*Corrie v. Caterpillar*,
503 F.3d 974 (9th Cir. 2007) .......... 13

*Cruz v. Sky Chefs, Inc.*,
2013 U.S. Dist. LEXIS 65114 (N.D. Cal. May 6, 2013) .......... 3

*Gillibeau v. City of Richmond*,
417 F.2d 426 (9th Cir. 1969) .......... 3

*Griffin v. Breckenridge*,
403 U.S. 88 (1971) .......... 10

*iSpot.tv, Inc. v. Teyfukova*, No. 2:21-CV-06815,
2023 WL 1967958 (C.D. Cal. Jan. 25, 2023) .......... 8

*Jews for Jesus, Inc. v. Jewish Cmty. Relations Council, Inc.*,
968 F.2d 286 (2d Cir. 1992) .......... 10

*Luehring v. Metro. State Hosp.*,
2024 U.S. Dist. LEXIS 235458 (C.D. Cal. Dec. 16, 2024) .......... 2

*Martin v. Masters*,
2025 U.S. Dist. LEXIS 4742 (N.D. Cal. Jan. 7, 2025) ...................................... 10
*Meyer v. Nat'l Tenant Network, Inc.*,
10 F. Supp. 3d 1096 (N.D. Cal. 2014) ................................................................ 3
*Prince v. CLS Transp., Inc.*,
118 Cal. App. 4th 1320 (2004) ........................................................................... 3
*RDF Media Ltd. v. Fox Broad. Co.*,
372 F. Supp. 2d 556 (C.D. Cal. 2005) ................................................................ 1
*Retail Prop. Trust v. United Bhd. of Carpenters & Joiners of Am.*,
768 F.3d 938 (9th Cir. 2014) ...............................................................................7
*Rieves v. Town of Smyrna*,
67 F.4th 856 (6th Cir. 2023) ............................................................................ 11
*Russello v. United States*,
464 U.S. 16 (1983) ............................................................................................... 6
*Safe Air for Everyone v. Meyer*,
373 F.3d 1035 (9th Cir. 2004) ........................................................................... 8
*Sánchez v. Foley*,
972 F.3d 1 (1st Cir. 2020) ................................................................................ 11
*United States v. Gregg*,
226 F.3d 253 (3d Cir. 2000) ................................................................................ 6
*United States v. Navarrette-Aguilar*,
813 F.3d 785 (9th Cir. 2015) .............................................................................. 9
*White v. Lee*,
227 F.3d 1214 (9th Cir. 2000) ........................................................................... 8

Statutes

18 U.S.C. § 248 ...................................................................................................3-6
42 U.S.C. § 1983 ...................................................................................................11
42 U.S.C. § 1985 ................................................................................................9-10

Other

Fed. R. Civ. P. 12 ........ 1, 2, 4, 8
Fed. R. Civ. P. 23 ........ 3
U.S. Const. amend. I ........ 4-8

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

On June 23, 2024, a violent mob descended upon the heart of Los Angeles's Jewish community. *See* Second Amended Complaint ("SAC") ¶¶ 1-7, 234. Armed with bear spray and other weapons, donning the attire of Hamas terrorists, and yelling "Hitler didn't finish the job!", "Intifada!", and "Leave the neighborhood, we are coming!", the rioters used force and threats of force to prevent Jewish congregants from safely entering their house of worship, the Adas Torah Synagogue (the "Synagogue"). SAC ¶¶ 1, 250-260. The over two-hundred rioters who stood shoulder-to-shoulder in front of the main entrances to the Synagogue— which they called "THE BELLY OF THE BEAST"—intended to obstruct would be worshippers from practicing their religion. SAC. ¶¶ 197-238. They succeeded in this goal: through their violent attacks and intimidating threats, the rioters rendered passage to and from the Synagogue too difficult and hazardous for many congregants to attempt. SAC. ¶¶ 271-307.

Plaintiff Ronen Helmann is a resident of Los Angeles whose ability to enter the Synagogue on June 23, 2024 was made unreasonably difficult or hazardous by virtue of Defendants' actions. SAC ¶¶ 29, 217-311. Plaintiff brings this action on behalf of those similarly situated against the entities and individuals who organized, facilitated, and participated in the riot.

## II. ARGUMENT

### A. CodePink's Motion to Strike Is Frivolous.

CodePink moves to strike various matter from the operative complaint. Under Rule 12(f), "[t]he court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). That said, "[m]otions to strike are generally disfavored . . . because" they are "usually used as a delaying tactic." *RDF Media Ltd. v. Fox Broad. Co*., 372 F. Supp. 2d 556, 561 (C.D. Cal. 2005). Courts throughout this State have, for more than thirty years, consistently rejected motions to strike "unless it is clear that the matter to be stricken

could have no possible bearing on the subject matter of the litigation." *Luehring v. Metro. State Hosp*., 2024 U.S. Dist. LEXIS 235458, at *2 (C.D. Cal. Dec. 16, 2024) (quoting *LeDuc v. Ky. Cent. Life Ins. Co*., 814 F. Supp. 820, 830 (N.D. Cal. 1992)).

At bottom, Plaintiffs have alleged that CodePink, an organization with a demonstrated history of antisemitic conduct, (1) caused a riot that prevented Orthodox Jews from worshiping at a synagogue after (2) agreeing with other antisemitic organizations and individuals to work side-by-side in depriving the proposed class of their constitutionally guaranteed civil rights. It is hard to imagine a fact with more bearing on Plaintiffs' claims than CodePink's relentless, demonstrable, and very public hostility to the Jewish community. On those grounds alone, CodePink's motion to strike should be summarily rejected. But even if that weren't the case, the paragraphs that CodePink considers "scandalous" and "defamatory" sit at the heart of the allegations that Plaintiffs have brought against it. Indeed, CodePink's motion to dismiss proves the point: it simultaneously argues that (1) its long, unbroken history of anti-Jewish animus has "nothing to do with the causes of action's elements" and (2) Plaintiffs "cannot point to a single CodePink statement or action establishing a plausible factual basis for a racial or class-based animus." Doc. 88 at 16, 27.

Simply put, Plaintiffs allege that CodePink "terrorized" Jews by orchestrating a riot outside of a synagogue that involved violence and threats of violence. Plaintiffs have further alleged that CodePink terrorized Jews because they are Jews. For that reason, CodePink's history of terrorizing Jews is plainly relevant, especially insofar as it shows that the Adas Torah riot did not occur in a vacuum. SAC at ¶¶ 45–85. The allegations at issue are true, and therefore cannot be defamatory. Further, they establish CodePink's anti-Jewish animus, and put the lie to any claim that CodePink's actions leading up to June 23, 2024 were motivated by anything but antisemitic hatred. They should not be stricken.

**B. CodePink's Class-Certification Arguments Are Meritless.**

Relying on two California state court cases discussing state court standards

for class certification in the context of state court demurrers and motions to strike, CodePink incorrectly argues that Plaintiffs' class claims fail. *Blakemore v. Super. Ct.*, 129 Cal. App. 4th 36 (2005), held that a trial court erred in striking class certification allegations from the complaint at issue. In *Prince v. CLS Transp., Inc.*, 118 Cal. App. 4th 1320, 1325 (2004), the Court of Appeal held that the trial court erred in granting a demurrer to class claims in a complaint, noting that "it is only in mass tort actions (or other actions equally unsuited to class action treatment) that class suitability can and should be determined at the pleading stage."

Even if this were a state court case, CodePink has cited no law supporting the proposition that Plaintiffs' class claims should be dismissed. Of course, this isn't a state court case. And, for more than 50 years, the governing law in the Ninth Circuit has been that "compliance with Rule 23 is not to be tested by a motion to dismiss for failure to state a claim," *Gillibeau v. City of Richmond*, 417 F.2d 426, 432 (9th Cir. 1969). District courts throughout the Circuit have consistently applied this principle ever since.[1]

Even on CodePink's (mistaken) terms, its argument fails. The FACE Act provides a claim for any class member who was attempting to enter the Adas Torah Synagogue but experienced "force," a "threat of force" or "physical obstruction" while doing so. 18 U.S.C. § 248(a)(2). It matters not whether one person encountered a spear-wielding CodePink acolyte; another was assaulted with bear spray; another simply observed scores of individuals who, organized by CodePink, stood shoulder to shoulder and screeched antisemitic vitriol until that person declined to exercise her constitutionally protected freedom of worship out of fear for her physical safety; or another made it into the Synagogue after facing attempts to prevent him from doing so. The injury inflicted upon each—a FACE Act

---

[1] *See, e.g., Butcher v. City of Marysville*, 398 F. Supp. 3d 715, 728 (E.D. Cal. 2019); *Meyer v. Nat'l Tenant Network, Inc.*, 10 F. Supp. 3d 1096, 1104 (N.D. Cal. 2014); *Cruz v. Sky Chefs*

violation—is common (indeed, identical), which makes the allegations brought against CodePink and its coconspirators uniquely amendable to class-wide adjudication.

### C. The First Amended Complaint far Surpasses the Standard for Surviving a Rule 12(b)(6) Motion to Dismiss.

#### 1. Plaintiffs have plausibly alleged that CodePink violated the FACE Act.

At the outset, a fundamental misunderstanding that permeates CodePink's Motion to Dismiss needs correcting. According to CodePink, no FACE Act violation could have arisen because neither it, nor the mob that it stirred to action, knew that the congregants they terrorized were attempting to exercise their constitutional right to religious exercise—which means they could not have specifically intended to prevent anyone from worshiping at Adas Torah. Even assuming that either CodePink or the rioters were too oblivious to realize that Orthodox Jews use synagogues for prayer and other religious activities, CodePink's head-in-the-sand intentionality argument fails as a matter of statutory interpretation.

In full, the provision of the FACE Act that CodePink violated states:

> Whoever . . . .
>
> [a] by force or threat of force or by physical obstruction,
>
> [b] *intentionally* injures, intimidates or interferes with or attempts to
>
> [c] injure, intimidate or interfere with
>
> any person lawfully exercising or seeking to exercise the First Amendment right of religious freedom at a place of religious worship . . . shall be subject to . . . penalties.

18 U.S.C. § 248(a)(2) (emphasis added).

Here, the word "intentionally" only modifies the phrase "injures, intimidates or interferes with or attempts to injure, intimidate or interfere with." Id. It does not extend past that clause.

In other words, the "intentionality" mens rea requirement means that the FACE Act violator must have meant to injure, intimidate, or create an interference; accidentally or negligently creating an impediment is not enough. But, "intentionally" does not, as CodePink would have it, mean Plaintiffs must show that the CodePink-organized rioters had the subjective awareness that the victims of their intentional conduct were trying to enter the synagogue to worship. Were it otherwise, the FACE Act would have to read as follows:

> Whoever . . . .
> [a] by force or threat of force or by physical obstruction,
> [b] intentionally injures, intimidates or interferes with or attempts to
> [c] injure, intimidate or interfere with
> any person **[because that person is or has been]** lawfully exercising or seeking to exercise the First Amendment right of religious freedom at a place of religious worship . . . shall be subject to . . . penalties.

That, however, is not the statute that Congress enacted. Critically, when Congress does want to create this type of scienter requirement, it knows how to do so. The Court need look no further than the abortion-clinic provision of the FACE Act to see an example. That provision, enumerated at 18 U.S.C. § 248(1), provides that:

> Whoever . . . .
> [a] by force or threat of force or by physical obstruction,
> [b] intentionally injures, intimidates or interferes with or attempts to
> [c] injure, intimidate or interfere with any person because that person is or has been, or in order to intimidate such person or any other person or any class of persons from, obtaining or providing reproductive health services shall be subject to . . . penalties. *Id.* (emphasis added).

The inclusion of the phrase "because that person" in Section 248(1) is proof positive that the exclusion of a similar modifier in Section 248(2) was an intentional

decision by the Congress that enacted the FACE Act. The Supreme Court has recognized this canon of statutory construction for decades:

"[Where] Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." *Russello v. United States*, 464 U.S. 16, 23 (1983) (quoting *United States v. Wong Kim Bo*, 472 F.2d 720, 722 (5th Cir. 1972) (alteration in original)).

And this makes sense; similar to the eggshell-skull theory of tort liability, if CodePink decides to stir up a riot to assault and batter Jews who are trying to enter a synagogue, they should assume the risk that those Jews are entering the synagogue to "exercise[e] or seek[] to exercise the First Amendment right of religious freedom at a place of religious worship." *Id*. For that reason, even if the Court credits CodePink's argument that it had no idea, and could not have had any idea, that the Orthodox Jews who its rioters were intentionally attacking and intimidating were trying to enter their house of worship so that they could worship there, CodePink is still liable under the FACE Act for the violence it incited.

Lastly, Plaintiffs are not required to plead or prove that CodePink, or any single Defendant for that matter, was the sole cause of the Adas Torah riot—only that they played a part—for liability under the FACE Act is joint and several. *See, e.g., United States v. Gregg*, 226 F.3d 253, 258-60 (3d Cir. 2000) (finding that liability under the FACE Act is joint and several among defendants).

Next, CodePink argues that Plaintiffs have not alleged facts to plausibly demonstrate that it was responsible for the riot that it caused. To be certain, CodePink never denies that violence ensued or that the Adas Torah congregation was intimidated and/or prevented from entering the synagogue en masse. It just disclaims responsibility for causing the riot, and insists that its members were not among the rioters. At this stage, the Court "must accept as true all factual allegations in the complaint and draw all reasonable inferences in favor of the non-moving party." *Retail Prop. Trust v.*

*United Bhd. of Carpenters & Joiners of Am*., 768 F.3d 938, 945 (9th Cir. 2014) (citation omitted). So long as the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face,'" the case must proceed. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, (2007)).

Plaintiffs have far exceeded the Twombly/Iqbal "plausibility" standard. As an initial matter, CodePink is wrong that their members did not participate in the riot; its own publicly available videos depict CodePink members at the scene while the riot was in progress. But more fundamentally, it remains blackletter law that the organizer of a riot can (and should) be held liable for the damage caused by the ensuing riot. This is true not only as a matter of common sense; it is also a principle established well enough to be memorialized in the Restatement (Second) of Torts, which provides that "[f]or harm resulting to a third person from the tortious conduct of another, one is subject to liability if he . . . knows that the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other so to conduct himself." Restatement (Second) of Torts § 876. Under any conceivable interpretation of the FACE Act, so long as the FACE Act violations were a reasonably foreseeable outcome of CodePink's incitement, CodePink is liable for the FACE Act violations that it caused.

Plaintiffs' First Amendment Complaint makes it profoundly "plausible" that CodePink did in fact violate the FACE Act, injuring scores of proposed class and StandWithUs members along the way. When it advertised its "protest," CodePink placed the name of Adas Torah inside an inverted red triangle, which is a symbol Hamas frequently uses to indicate its next target. SAC. ¶¶ 207-209. This, when combined with CodePink's long history of using physical obstruction (and not just expression) in response to pro-Israel events, makes it quite "plausible" that CodePink intended for the riot to proceed exactly as it did on June 23, 2024. This is more than

enough for the Court to reject their Rule 12(b)(6) argument and allow this case to proceed to discovery.

Finally, as a last-ditch effort, CodePink insists that its actions are all protected by the First Amendment. But, even though CodePink has the right to express antisemitic hatred, it has no First Amendment right to incite violence or criminal activity. *White v. Lee*, 227 F.3d 1214, 1227 (9th Cir. 2000) (citing *Brandenburg v. Ohio*, 395 U.S. 444, 447 (1969)). When CodePink shifted from speech to the organization, assistance, incitement, and funding of a riot that prevented an entire proposed class of Orthodox Jews from worshipping at their chosen synagogue, it shed whatever shield the First Amendment may have provided it.

Even granting CodePink every benefit of the doubt, its First Amendment argument still fails. According to CodePink, "where protected First Amendment speech becomes intertwined with someone's later illegal conduct, the solution is to punish the conduct, not the speech." Doc. 88 at 22. That, in turn, is precisely what Plaintiffs are asking the Court to do here: punish CodePink not for its expression but instead for its role in preventing and intimidating proposed class members from entering their house of worship. For that reason, CodePink's argument fails, and along with it, their Rule 12(b)(6) motion to dismiss Plaintiffs' FACE Act claim.[2]

---

[2] Defendants reference the legal standard for a Rule 12(b)(1) motion to dismiss for lack of Article III standing, but do not elaborate on their arguments in this regard beyond incorporating them into their Rule 12(b)(6) arguments. That said, because (1) such a motion would be a "facial attack" wherein the Court presumes the truthfulness of Plaintiffs' factual allegations, and (2) Defendants only challenge the traceability requirement of Article III standing (at most), a Rule 12(b)(1) motion would be rightfully denied regarding both of Plaintiffs' claims for the same reasons described above. *See Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004); *iSpot.tv, Inc. v. Teyfukova*, No. 2:21-CV-06815, 2023 WL 1967958, at *4 (C.D. Cal. Jan. 25, 2023) ("When the motion attacks the complaint on its face, the court considers the complaint's allegations to be true, and draws all reasonable inferences in the plaintiff's favor." (citing *Doe v. Holy See*, 557 F.3d 1066, 1073 (9th Cir. 2009)).

### 2. Plaintiffs have plausibly alleged that CodePink violated 42 U.S.C. § 1985.

To succeed on their Section 1985 claim, Plaintiffs must show that (1) "two or more persons . . . [(2)] conspire[d] . . . for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws," and (3) "one or more persons engaged therein d[id], or cause[d] to be done, any act in furtherance of the object of such conspiracy, [(4)] whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States" 42 U.S.C. § 1985(3). Here, Plaintiffs have plausibly alleged that (1) CodePink and others (2) conspired to violate the privileges and immunities of Plaintiffs and the proposed class members, (3) members of the conspiracy took actions in furtherance of their agreement, and (4) Plaintiffs and proposed class members did in fact experience a deprivation of their rights and privileges as a result of these actions. CodePink's contrary arguments have no merit.

#### a. A Conspiracy Plainly Existed

CodePink's first argument—that Plaintiffs failed to plead the existence of a conspiracy—ignores that it does not take much for a conspiracy to exist. Indeed, any agreement between two or more individuals or entities will do; there need be no formal agreement or even an explicit intention to operate in concert. In this Circuit, a conspiracy can be established through circumstantial evidence, coordinated actions, communications, and shared objectives. *See United States v. Navarrette-Aguilar*, 813 F.3d 785, 794 (9th Cir. 2015). And throughout the First Amended Complaint, Plaintiffs have plausibly established that CodePink coordinated its actions and communications with others (including PYM) to animate a shared objective: ensuring that a crowd would show up in front of the Adas Torah synagogue and interfere with the congregation's plans to worship there. *See, e.g.*, SAC ¶¶ 197-216. And, plainly, the

First Amended Complaint is replete with steps taken in furtherance of that agreement. Nothing else is required to establish this first element. *Id*.

**b. The "State Action" argument is misplaced.**

Next, CodePink argues that, without state action, no Section 1985 liability can arise. This is incorrect. Where, as here, the conspiracy aims to deprive individuals of their right to associate, practice religion, or be free from discrimination, a purely private conspiracy may proceed. This has been the case formore than fifty years, when the U.S. Supreme Court held that purely private conspiracies are actionable when discriminatory animus is present. *See Griffin v. Breckenridge*, 403 U.S. 88, 101-102 (1971); *see also Martin v. Masters*, 2025 U.S. Dist. LEXIS 4742, at *3 (N.D. Cal. Jan. 7, 2025). And since the early 1990s, the Court has recognized that religious discrimination constitutes the sort of class-based animus necessary for a state-actor-free claim under Section 1985. *See Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 267-68 (1993). The conspiracy through which CodePink transgressed Plaintiffs' rights is of the kind that does not require a state actor. CodePink joined with others to target a class of Jews who were attempting to exercise their constitutional and statutory right to worship as they choose without interference, intimidation, or impediment. Decades of Supreme Court precedent establishes that private conspiracies of this sort are actionable under Section 1985.

**c. CodePink was driven by antisemitic animus.**

In an attempt to buttress its no-state-actor argument, CodePink argues that Plaintiffs failed to allege class-based discriminatory animus. This argument runs counter to page after page of Plaintiffs' allegations, all of which plausibly establish that antisemitism motivated the actions of CodePink and its co-conspirators. SAC ¶¶ 51-71, 197-216.

Religious groups, including Jews, are recognized as protected classes under Section 1985. *Jews for Jesus, Inc. v. Jewish Cmty. Relations Council, Inc.*, 968 F.2d 286, 291 (2d Cir. 1992). Given that anti-Zionism has been recognized by—among other

courts—this Court as synonymous with antisemitism, especially when directed towards Jewish individuals, CodePink's express targeting of a "A MEGA ZIONIST REAL ESTATE EVENT" is all that Plaintiffs need to show that religious animus motivated every step that CodePink took vis-à-vis the Adas Torah riot. SAC ¶ 202. To be certain, CodePink, with its co-conspirators, intentionally targeted Jewish congregants at a Jewish house of worship, with the goal of instilling so much fear and terror that those Jewish attendees would cease engaging in their religious activities.

It defies reason to suggest that those who showed up at a Synagogue, clad in Hamas insignia, to chant antisemitic rhetoric while physically attacking obviously Orthodox Jews had no class-based animus. At a minimum, the existence of antisemitic animus is plainly "plausible" from the First Amended Complaint's allegations. For that reason, CodePink's argument fails.

**d. The alleged harms are directly attributable to defendants' conduct.**

Finally, CodePink argues that the injuries alleged by Plaintiffs cannot be traced to it. See Doc. 88 at 28. This argument, however, fundamentally misunderstands how conspiracy liability works. CodePink helped to organize and direct an event involving its members, who then engaged in obstruction, intimidation, and assault, which in turn proximately caused harm to Jewish worshippers. SAC. ¶¶ 239-311. That is all that it takes to establish conspiracy liability.  Causation under Section 1985(3) does not require each defendant to have personally committed acts of violence. To do so "would defeat the purpose of permitting a civil conspiracy claim." *Rieves v. Town of Smyrna*, 67 F.4th 856, 863 (6th Cir. 2023). Instead, Section 1983 "permits a jury to hold co-conspirators liable for the damages flowing from a constitutional deprivation that all of the co-conspirators may not have personally carried out." *Sánchez v. Foley*, 972 F.3d 1, 11 (1st Cir. 2020). Here, CodePink agreed to organize, promote, and facilitate a riot outside of an Orthodox Jewish synagogue, and it predictably resulted in violence targeting Jewish worshippers. For that reason, CodePink's argument fails.

### D. CodePink's Wayward "War Crimes" Argument Lacks Any Conceivable Basis in Either Law or Logic.

CodePink ends its motion to dismiss by arguing that Plaintiffs are "demand[ing] that this Court obstruct accountability for violations of the Geneva Conventions." Doc. 88 at 30. To arrive at that conclusion, CodePink has asked the Court to determine that Israeli settlements in the West Bank constitute "a war crime and a crime against humanity," Doc. 88 at 31, and that the Court would "render itself culpable" by legally "shield[ing] or facilitate[ing] violations of international law." Nonsense. As an initial matter, CodePink's argument is based on a hidden—and unfounded—assumption: that the events scheduled to occur at the synagogue on the day of the riot had anything to do with Israeli settlements in the West Bank. No such facts are pleaded in the Amended Complaint. As alleged, one of the events that was scheduled to occur was the Aliyah event, which was to provide information about purchasing real estate in Israel. That CodePink defaulted to the assumption that any real estate purchase in Israel constitutes a war crime is further evidence of CodePink's animus. In CodePink's antisemitic view, all the Jews who intended to enter the synagogue on the day of the riot were criminals, intended to participate in a war crime, and deserved to be kept out of their house of worship by any means necessary. According to CodePink, its followers were not violating the law—they were doing the world a favor by violently attacking Jews and preventing them from exercising their First Amendment rights.

Given CodePink's argument, Plaintiff unfortunately must make the obvious explicit. An informational Aliyah event at an Orthodox synagogue is not a war crime. Even if that absurd statement were taken seriously (and it should not be) CodePink has no jurisdiction to police imaginary war crimes. And, even if that absurdity were credited, CodePink would still be held liable because the sort of violence and intimidation perpetuated by CodePink against the Orthodox Jewish congregation far exceeds anything remotely proportional to the objections they have to the Aliyah event.

At bottom—and even giving credence to all the ludicrousness in CodePink's argument—it could still not shield them from FACE Act liability.

Plaintiffs' First Amended Complaint seeks redress for individuals who sought to attend both an Aliyah event and prayer services inside Adas Torah Synagogue but were obstructed by force or threats of force from Defendants. Defendants' actions constituted a violation of the FACE Act, and those actions serve as the basis of Plaintiffs' First Amended Complaint. Full stop.

In asking the Court to offer a declaration on whether Israeli settlements constitute a war crime and a crime against humanity, CodePink has asked the Court to opine on a political question that is squarely committed to the political branches of the U.S. Government. In fact, the basic legality of Israeli settlements in the West Bank is a question that the political branches—and in particular, the Executive— have firmly reserved for themselves.[3] And it is worth noting that while U.S. Administrations have shifted their positions toward Israeli settlements, not a single U.S. Administration has declared them unequivocally "illegal." Now, CodePink is asking the Court to go a step further and declare the presence of Jews in the West Bank a "war crime." "The Supreme Court has indicated that disputes involving political questions lie outside of the Article III jurisdiction of federal courts." *Corrie v. Caterpillar*, 503 F.3d 974, 980 (9th Cir. 2007). Indeed, "[t]he nonjusticiability of a political question is primarily a function of the separation of powers." *Baker v. Carr*, 369 U.S. 186, 210 (1962). Baker identifies six different tests that a court may independently consider when determining whether to defer to the political branches on a particular question raised by the parties:

---

[3] *See, e.g.*, Yaakov Katz, West Bank Settlements Not Illegal, Pompeo Announces in Historic Shift, JERUSALEM POST (Nov. 18, 2019), https://www.jpost.com/israel-news/west-bank-settlements-not-illegal-us-decides-in-historic-us-policy-shift-608222; Simon Lewis & Humeyra Pamuk, US Says Israel's New Settlements in West Bank Are 'Inconsistent' with International Law, REUTERS (Feb. 23, 2024), https://www.reuters.com/world/middle-east/blinken-says-israels-new-settlements-west-bank-inconsistent-with-international-2024-02-23/.

> Prominent on the surface of any case held to involve a political question is found [1] a textually demonstrable constitutional commitment of the issue to a coordinate political department; or [2] a lack of judicially discoverable and manageable standards for resolving it; or [3] the impossibility of deciding without an initial policy determination of a kind clearly for nonjudicial discretion; or [4] the impossibility of a court's undertaking independent resolution without expressing lack of the respect due coordinate branches of government; or [5] an unusual need for unquestioning adherence to a political decision already made; or [6] the potentiality of embarrassment from multifarious pronouncements by various departments on one question.
>
> *Id*. at 217.

The question raised by Defendant CodePink clearly implicates, at the very least, tests two, three, four, and six as outlined in Baker. The Supreme Court's usage of the conjunction "or" between each test indicates that if any one of these tests is satisfied, the question at issue must necessarily be left to the political branches, as is firmly the case here.

## III. CONCLUSION

For the foregoing reasons, CodePink's motion to dismiss and strike should be denied.

Dated: February 10, 2025 Respectfully submitted

By: /s/ Mark L. Javitch

Mark L. Javitch (SBN 323729)
JAVITCH LAW OFFICE
3 East 3rd Ave. Ste. 200
San Mateo CA 94401
Tel: (650) 781-8000
Fax: (650) 648-0705

*Attorney for Plaintiff*
RONEN HELMANN

## CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Plaintiff, certifies that this brief contains 5,099 words, which:

X complies with the word limit of L.R. 11-6.1.

___ complies with the word limit set by court order dated ______

Dated: February 10, 2025 *_/s/ Mark L. Javitch_*
Mark L. Javitch

## CERTIFICATE OF SERVICE

STATE OF CALIFORNIA, COUNTY OF SAN MATEO

At the time of service, I was over 18 years of age. I am employed in County of San Mateo, State of California. My business address is Javitch Law Office, 3 East 3rd Ave, Ste. 200, San Mateo, California, 94401.

I declare that I served a copy of this document via the Court's Electronic Filing System to all counsel of record.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: February 10, 2025 *_/s/ Mark L. Javitch_*
Mark L. Javitch