Thomas B. Harvey (SBN 287198)
tbhlegal@proton.me
LAW OFFICES OF THOMAS B. HARVEY
365 E. Avenida de Los Arboles
Suite 226
Thousand Oaks, CA 91360
(805)768-4440

Attorney for Defendants
PALESTINIAN YOUTH MOVEMENT
COURTNEY LENNA SCHIRF
REMO IBRAHIM

UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF CALIFORNIA
WESTERN DIVISION

RONEN HELMANN, on behalf of all others similarly situated,

Plaintiffs,

v.

CODEPINK WOMEN FOR PEACE, a California entity, CODEPINK ACTION FUND, a California entity, COURTNEY LENNA SCHIRF, and REMO IBRAHIM, d/b/a PALESTINIAN YOUTH MOVEMENT, and JOHN AND JANE DOES 1-20,

Defendants.

Case No. 2:24-cv-05704-SVW-PVC

DEFENDANTS' PALESTINIAN YOUTH MOVEMENT, COURTNEY LENNA SCHIRF, AND REMO IBRAHIM'S, NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' THIRD AMENDED COMPLAINT

Judge: Hon Stephen V. Wilson
Hearing Date: July 28, 2025
Time: 1:30 p.m.
Courtroom: 10A

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE THAT on July 28, 2025, at 1:30 p.m. or as soon thereafter as this matter may be heard in Courtroom 10A of the above-entitled Court located at First Street Courthouse, 350 W. 1st Street, Courtroom 10A, 10th Floor, Los Angeles, CA 90012, Defendants PALESTINIAN YOUTH MOVEMENT, COURTNEY LENNA SCHIRF and REMO IBRAHIM, will and hereby do move the Court to dismiss Plaintiffs' Third Amended Complaint.

This motion is based upon this Notice of Motion, the attached Memorandum of Points & Authorities, the files and records in the case, and any evidence or argument that may be presented at a hearing on this matter.

Respectfully submitted,

Dated: July 17, 2025 LAW OFFICES OF THOMAS B. HARVEY

By: /s/ Thomas B. Harvey
Thomas B. Harvey

Attorney for Defendants
PALESTINIAN YOUTH MOVEMENT
COURTNEY LENNA SCHIRF
REMO IBRAHIM

# TABLE OF CONTENTS

**I. INTRODUCTION…………………………..……………………...1**

**II. STANDARDS OF REVIEW……………………………………………..3**

A. Fed. R. Civ. Proc. 12(b)(1) Requires an Injury in Fact That is Fairly Traceable to Defendants……………………………………………..3

B. Fed. R. Civ. Proc. 12(b)(6) Requires Facts Sufficient to Make a Claim Plausible…………………………………………………...........4

**III. ELEMENTS OF THE FACE ACT (18 U.S.C. § 248)……………………..5**

**IV. DEFENDANTS' MOTION TO STRIKE…………………………………6**

**V. ARGUMENT……………………………………………………………8**

A. Plaintiffs' Claim Under the FACE Act Fails Under Rule 12(b)(6)……9

1. Plaintiffs Fail to Plausibly Allege Defendants Used Force, Threats of Force, or Physical Obstruction to Interfere with Their Freedom of Religion……………………………………………………………..9

2. Plaintiffs Fail to Plausibly Allege Defendants Intended to Injure, Interfere with, or Intimidate Them Because of Their Freedom of Religion……………………………………………………………13

3. Plaintiffs Have Alleged No Facts Allowing Them to Plausibly Claim That Defendants are Responsible for any Harmful Acts……………..14

4. Defendants' Alleged Activities Constitute Protected First Amendment Speech and Advocacy………………………………..17

B. This Court Lacks Jurisdiction to Shield and Facilitate the Commission of War Crimes in Violation of International Law, as Plaintiff Requests……18

1. The United States is Party to the Fourth Geneva Convention

Which Prohibits Confiscation of Land and Forcible Population Transfer……19

2. Israel's Annexation, Confiscation, and Settlement Practices Constitute Crimes Against Humanity and War Crimes……20

VI. **PYM DEFENDANTS RESPECTFULLY JOIN IN THE MOTIONS FILED BY ANY CO-DEFENDANT TO DISMISS PLAINTIFFS' SECOND AMENDED CLASS ACTION COMPLAINT TO THE EXTENT THEY APPLY……23**

VII. **CONCLUSION**……23

## TABLE OF AUTHORITIES

**Page**

**CASES**

*Allen v. Wright,*
468 U.S. 737 (1984)……………………………………………………………4

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)…………………………………………………………4,18

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 868 (2009)……………….…5,11

*Collins v. Jordan,*
110 F.3d 1363 (9th Cir. 1996)………………………………………………17

*Conservation Force v. Salazar*,
646 F.3d 1240 (9th Cir. 2011)……………………………………………...6

*Counterman v. Colorado*,
600 U.S. 66 (2023)……………………………………………………………9

*Cousins v. Lockyer*,
568 F.3d 1063 (9th Cir. 2009)…………………………………….4,5,17,18

*Dahlia v. Rodriguez*,
735 F.3d 1060 (9th Cir. 2013)……………………………………………..5,18

*Elhanafi v. Fox Television Stations, Inc*.,
2012 WL 6569341, (Sup. Ct. Kings County, Dec. 17, 2012)………………..7

*Kokkonen v. Guardian Life Ins. Co. of America*,
511 U.S. 375, 114 S.Ct. 1673, 128 L.Ed. 2d 391 (1994)…………………..3

*Kristensen v. Credit Payment Servs. Inc.*, 879 F.3d 1010 (9th Cir. 2018)....15

*Lotierzo v. A Woman's World Med. Ctr.*, 278 F.3d 1180 (11th Cir. 2002)....6

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 134 S. Ct. 1377 (2014)....4

*Lujan v. Defenders of Wildlife*, 504 U.S. 555, 112 S.Ct. 2130, 119 L.Ed. 2d 351 (1992)....4

*NAACP v. Clairborne Hardware Co.*, 458 U.S. 886 (1982)....9

*Native Village of Kivalina v. Exxon Mobil Corp.*, 696 F.3d 849 (9th Cir. 2012)....4

*New Beginnings Ministries v. George*, 2018 WL 11378829, *15 (S.D.O.H. 2018)....6

*Planned Parenthood of Columbia/Willamette, Inc. v. Am. Coal. of Life Activists*, 290 F.3d 1058 (9th Cir. 2002)....5,9

*Sirer v. Aksoy*, 2023 WL 3166453 (S.D. Fla., May 1, 2023) ....8

*Sprewell v. Golden State Warriors*, 266 F.3d 979 (9th Cir. 2001)....5,18

*Van Der Linden v. Khan*, 535 S.W.3d 179 (Tex. App 2017)....7

*Vavak v. Abbott Labs., Inc.*, No. SACV 10-1995 JVS (RZx) 2011 U.S. Dist. LEXIS 111408 (C.D. Cal. June 17, 2011)....7

**STATUTES**

18 U.S.C. § 248 .......... 6
18 U.S.C. § 248(a)(2).......... 6
18 U.S.C. § 248(d)(1).......... 17

**OTHER AUTHORITIES**

Fed.R.Civ.Proc. 12(b)(1).......... 3
Fed.R.Civ.Proc. 12(b)(6).......... 4,9,13,17
Fed.R.Civ. Proc. 12(f).......... 6

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' THIRD AMENDED CLASS ACTION COMPLAINT**

## I. INTRODUCTION

Defendants Palestinian Youth Movement (PYM), Courtney Schirf (Schirf), and Remo Ibrahim (Ibrahim) (collectively "Defendants") move to dismiss the instant complaint. Plaintiffs' Third Amended Complaint ("TAC") once again accuses Defendants of making social media posts encouraging supporters to protest the illegal sale of occupied Palestinian land and controlling the actions of 100 Doe "rioters" who were present at the protest. Like its predecessor, the TAC relies extensively on generalized assertions and conclusory restatements of the elements of the pled causes of action. In sum, Plaintiffs still seek to punish Defendants' protected First Amendment activity expressing support for Palestinians and principled opposition to Israel's illegal occupation of the West Bank and its ongoing genocide in Gaza.[1]

Plaintiffs seek to punish Defendants for posting about a protest against My Home in Israel's ("MHI") sale of occupied Palestinian land in the illegal, Jewish-

[1] Amnesty International, *Amnesty International investigation concludes Israel is committing genocide against Palestinians in Gaza*. December 5, 2024, https://www.amnesty.org/en/latest/news/2024/12/amnesty-international-concludes-israel-is-committing-genocide-against-palestinians-in-gaza/; Omer Bartov, *I'm a Genocide Scholar. I know it When I See It,* July 15, 2025, New York Times. https://www.nytimes.com/2025/07/15/opinion/israel-gaza-holocaust-genocide-palestinians.html; Staff, *Renowned Israeli professor says Israel committing genocide in Gaza*, July 15, 2025. Middle East Eye, https://www.middleeasteye.net/news/israeli-professor-omer-bartov-says-israel-committing-genocide-gaza; Julia Conley, *Even Once Reluctant Scholars Now Agree on Israel's Gaza Assault: It's a Genocide,* May 15, 2025, Common Dreams, https://www.commondreams.org/news/israel-is-committing-genocide-in-gaza

only settlements in Occupied Palestine[2]—an event that never mentioned religious obligations. (TAC at 27). The New Jersey Division on Civil Rights is investigating MHI for "discrimination based on race, religion, ancestry, national origin, and other protected characteristics" during the previous events.[3] MHI has drawn protests throughout the country, facing accusations of supporting apartheid and genocide. MHI's Los Angeles event was no different.[4]

Much like the Second Amended Complaint, the TAC alleges that PYM's social media account shared a post giving the time of the sale "12 PM SHARP," saying "OUR LAND IS NOT FOR SALE" (TAC ¶¶ 152-157) and "STAND AGAINST SETTLER EXPANSION AT SUNDAY'S REAL ESTATE EVENT SELLING HOMES TO BUILD 'ANGLO NEIGHBORHOODS' IN PALESTINE." *Id*.

However, after the Court's order dismissing all claims against the PYM Defendants, Plaintiffs have made minor changes. (ECF 105) The Third Amended Complaint only seeks damages under the FACE Act, although remnants of the 1985 claim (3) remain in the jurisdiction and are included in the TAC's prayer for relief. (TAC at  5-6, 75) The TAC also seeks to avoid dismissal by asserting in a conclusory manner without any support that PYM's social media posts are blood libel (*Id*. at 33) and weakly attempts to meet the ratification requirement to show vicarious liability. (*Id*. at 62)

All Plaintiffs' claims fail. They still lack standing to proceed because Plaintiffs' injuries are not fairly traceable to Defendants' alleged conduct. Rather,

[2] Gabor Rona, *The Illegality of Israeli Settlement Real Estate Sales*, August 29, 2024. Lawfare https://www.lawfaremedia.org/article/the-illegality-of-israeli-settlement-real-estate-sales

[3]Arvind Dilawar, "Organizers of Israeli Real Estate Event in LA Under Investigation in New Jersey," September 4, 2024 (last accessed October 22, 2024) <https://lapublicpress.org/2024/09/israeli-real-estate-fair-housing-investigation/>.

[4] Id.

they are traceable to people over whom Defendants had no control. Even after adding a whopping two paragraphs to the TAC showing PYM and Ibrahim posted on social media the day after the protest against the illegal land sale (Id.), Plaintiffs still fail to establish ratification because they cannot show a principal/agent relationship between any of the PYM Defendants and the people who committed the acts the TAC alleges.

Plaintiffs' claims fail under the FACE Act for the same reasons they failed the last time Defendants were forced to file this motion: PYM's social media posts still do not amount to "true threats", even after Plaintiffs futilely attempt to provide the "history and context" the Court noted the SAC lacked to convert these anodyne phrases into a "true threat" and remove them from First Amendment Protections. (TAC at 32-40) Even if the Court were to agree that Plaintiffs' newly added, conclusory allegations changed social media posts into true threats, there is no showing that these threats were intended to result in violations of the FACE Act, the only remaining claim.

For these reasons and others discussed below, Plaintiffs' Third Amended Complaint should be dismissed with prejudice.[5]

## II. STANDARDS OF REVIEW

### A. Fed. R. Civ. Proc. 12(b)(1) Requires an Injury That is Fairly Traceable to the Defendants

Federal courts have limited jurisdiction, *see*, Art. III, U.S. Const., and plaintiffs must prove their case lies within a court's jurisdiction. *Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 377-78 (1994). Plaintiff must establish he has (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a

[5]

favorable judicial decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-561 (1992). Plaintiff "bears the burden of establishing these elements" and "at the pleading stage, [he] must clearly allege facts demonstrating each element." Id. (citation omitted). It is black letter law that the injury pled must "be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court." *Lujan*, 504 U.S. at 560-61 (citation omitted). Further, "the line of causation between the [alleged] illegal conduct and injury" must not be "too attenuated." *Allen v. Wright*, 468 U.S. 737, 752 (1984) (concluding that a weak demonstration of causation precludes Article III standing), *overruled on other grounds by Lexmark Int'l, Inc. v. Static Control Components, Inc*., 134 S. Ct. 1377, 1388 (2014). Since the line of causation must be more than attenuated, "where the causal chain involves third parties whose numerous independent decisions collectively have a significant effect on plaintiffs' injuries... the causal chain [is] too weak to support standing at the pleading stage.'" (citations and internal quotation marks omitted). *Native Village of Kivalina v. Exxon Mobil Corp*., 696 F.3d 849, 867 (9th Cir. 2012).

### B. Fed. R. Civ. Proc. 12(b)(6) Requires Facts Sufficient to Make a Claim Plausible

Although "a complaint need not contain detailed factual allegations . . . it must plead enough facts to state a claim to relief that is plausible on its face." *Cousins v. Lockyer*, 568 F.3d 1063, 1067-68 (9th Cir. 2009) (internal quotation marks and citations omitted). A claim is facially plausible only when it "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). "[C]onclusory allegations of law and unwarranted inferences are insufficient to avoid . . . dismissal" under this standard. *Cousins*, 568 F.3d at 1067

(internal quotation marks omitted). A court may reject as implausible allegations that are too speculative to warrant further factual development. *Dahlia v. Rodriguez*, 735 F.3d 1060, 1076 (9th Cir. 2013). The allegations must be enough to raise a right to relief above the speculative level. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 548 (2009). Complaints offering only "labels and conclusions…will not do." *Id*. at 555. The same applies to complaints that only include "naked assertion[s]" without "further factual enhancement." *Id*. at 557. The court need not accept allegations that are merely conclusory, are unwarranted deductions, or unreasonable inferences. *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). This principle applies when documents incorporated by reference into the complaint or matters subject to judicial notice directly conflict with the allegations in the complaint. *Id.*

When the guesses, conclusory language, innuendo, and statements in direct conflict with the sources cited by Plaintiffs in the TAC are stripped away, what remains of Plaintiffs' allegations that are grounded in specific facts is this: (1) PYM was one of several organizations that informed the public about an illegal real estate event offering land in the occupied West Bank; (2) PYM informed its supporters via instagram; (3) persons unknown acted threateningly and said frightening things, and (4) some unknown persons used "bear spray" and assaulted people. From these crumbs, Plaintiffs conclude that PYM Defendants directed these activities, along with other defendants. These are not facts sufficient to make a cognizable legal theory plausible. *Conservation Force v. Salazar*, 646 F.3d 1240, 1241-42 (9th Cir. 2011).

## III. ELEMENTS OF THE FACE ACT (18 U.S.C. § 248)

The Freedom of Access to Clinic Entrances Act (FACE Act) was passed in 1994, when women's health clinics were being bombed and doctors who worked there were being murdered. A far lesser-known provision in the bill protects places

of worship. The law's "place of worship" cause of action has so seldom been invoked that caselaw interpreting this provision is scarce. Defendants could find no cases from the Ninth Circuit where such a suit has been brought.

Other circuits, however, have identified four elements required to plead a violation of 18 U.S.C. § 248(a)(2): "Plaintiffs must demonstrate that Defendants used or attempted to use (1) force, threat of force, or physical obstruction; (2) with the intent to; (3) injure, intimidate, or interfere with a person; (4) because that person is exercising or is seeking to exercise his or her right of religious freedom at a place of religious worship." *New Beginnings Ministries v. George*, 2018 WL 11378829, *15 (S.D.O.H. 2018) (citing *Lotierzo v. A Woman's World Med. Ctr*., 278 F.3d 1180, 1182 (11th Cir. 2002) (citations omitted)).

Plaintiffs fail to allege facts that can plausibly show a violation of the statute attributable to PYM Defendants.

## IV. DEFENDANTS' MOTION TO STRIKE

Under Federal Rule of Civil Procedure 12(f) ("Rule 12(f)"), the Court may strike any "redundant, immaterial, impertinent, or scandalous matter" from a complaint. Fed.R.Civ.Proc. 12(f). A motion to strike is proper where such relief is "necessary to avoid prejudice or will further the interests of judicial efficiency." *In re Honost Co., Inc. Sec. Litig.,* 343 F.R.D. 147, 150 (C.D. Cal. 2022).

The TAC is replete with scandalous and impertinent allegations against PYM which have no possible relation to the causes of action in this case. These claims are included for the sole purpose of prejudicing Defendants in the eyes of the Court and the general public by scandalously maligning them as antisemitic and supportive of terrorism. The TAC also includes superfluous references to a claim under § 1985(3).

For these reasons, Defendants hereby move the court to strike the following paragraphs of the amended complaint under Rule 12(f):

A. Paragraphs 41 through 46 in their entirety. These paragraphs accuse PYM of "terrorizing Jews" and supporting terrorism, based, again, on alleged participation in a national conference. Plaintiff accuses PYM of "celebrat[ing] the terror attacks of October 7, 2023," but the quotes offered in support of this accusation do not celebrate or support terrorism at all. The claims in these paragraphs have nothing whatsoever to do with the elements of the plead causes of action. These paragraphs are included solely to malign and prejudice the Defendants as antisemites and supporters of terrorism.

B. Paragraphs 70 through 78, in their entirety. These paragraphs describe other, wholly unrelated protests that PYM allegedly supported via social media posts, and argue these protests required additional security and were disruptive. These unrelated protest events have nothing to do with the plead causes of action and are included solely to muddy the waters and malign and prejudice Defendants. None of these events are relevant to the Adas Torah protest, and Plaintiff has not pled facts showing that Defendants are responsible for these other, wholly unrelated protest events, nor the allegedly violent activities of anonymous attendees at those demonstrations.

C. Paragraph 214, in its entirety. Here, Plaintiff alleges that "[u]pon information and belief, the phrase 'BELLY OF THE BEAST' refers to a synagogue." TAC ¶¶ 157. The *Twombly* plausibility standard permits a plaintiff to plead facts alleged upon information and belief only where those facts "are peculiarly within the possession and control of the defendant, or where the belief is based on factual information that makes the inference" plausible. *Vavak v. Abbott Labs., Inc.*, No. SACV 10-1995 JVS (RZx), 2011 U.S. Dist. LEXIS 111408, at *6 (C.D. Cal. June 17, 2011). Here, Plaintiff improperly alleges a fact which is both facially implausible and not within Defendants' possession or control, solely to malign the defendants as antisemites. This allegation has no relation to the plead causes of action and is prejudicial.

These sections of the TAC by and large seek to defame Defendants as avowed supporters of terrorism, which is directly prejudicial to Defendants. *See, e.g. Van Der Linden v. Khan*, 535 S.W.3d 179, 198 (Tex. App 2017) ("Khan alleges that falsely accusing someone of having admitted that he provided financial support to terrorists constitutes defamation per se. We agree."); *Elhanafi v. Fox Television*

*Stations, Inc*., 2012 WL 6569341, *2 (Sup. Ct. Kings County, Dec. 17, 2012) (finding possible defamation where the public "might infer that plaintiffs are terrorists and/or terrorist sympathizers/abettors" based on Fox News story); *Sirer v. Aksoy*, 2023 WL 3166453, *2 (S.D. Fla., May 1, 2023). These scandalous and impertinent allegations have no relevance to the TAC's claims and are prejudicial to Defendants. As such, they should be stricken from the complaint.

## V. ARGUMENT

The Court dismissed the FACE Act claim against PYM Defendants in the SAC for two main reasons: 1) PYM's social media posts did not constitute a true threat under Ninth Circuit or Supreme Court precedent (ECF 105 at 22); and 2) no agency relationship existed between PYM and protesters at the illegal land sale.

The TAC adds no facts that change either of these findings, and the TAC should be dismissed with prejudice.[6]

### A. Plaintiffs' Claim Under the FACE Act Still Fails Under Rule 12(b)(6)

#### 1. Plaintiffs Fail to Plausibly Allege Defendants Used Force, Threats of Force, or Physical Obstruction to Interfere with Their Freedom of Religion

[6] Under the "law of the case" doctrine, a court is ordinarily precluded from reexamining an issue previously decided by the same court, or a higher court, in the same case. *See United States* v. *Maybusher*, 735 F.2d 366, 370 (9th Cir. 1984), cert. denied, 469 U.S. 1110, 83 L. Ed. 2d 783, 105 S. Ct. 790 (1985); *Kimball v. Callahan*, 590 F.2d 768, 771 (9th Cir.), cert. denied, 444 U.S. 826, 62 L. Ed. 2d 33, 100 S. Ct. 49 (1979). There is a well-established exception, however, which allows reexamination when "controlling authority has made a contrary decision of law applicable to such issues." *Kimball*, 590 F.2d at 771-72. *Richardson v. United States*, 841 F.2d 993, 996 (9th Cir. 1988). Defendants believe the Court was correct in its order dismissing all claims against Pym Defendants. (ECF 105). If, however, the Court chooses to revise its previous holding, Defendants incorporate all arguments made in its motion to dismiss the Second Amended Complaint (ECF 86).

**a. PYM's Social Media Posts Are Not a True Threat**

Plaintiffs fail to plausibly allege that PYM's social media posts were a true threat. Where Plaintiffs rely on a "threat of force" to plead a violation of the FACE Act, they must show that the threat was a "true threat." 290 F.3d 1058, 1073. *Planned Parenthood of Columbia/Willamette, Inc. v. Am. Coal. of Life Activists*, 290 F.3d 1058, 1070 (9th Cir. 2002), *as amended* (July 10, 2002) (citing *NAACP v. Clairborne Hardware Co.*, 458 U.S. 886, 933 (1982)).

Under the Supreme Court's true threat doctrine, Defendants' speech was not a "threat," as speech only qualifies as a "true threat" where "in the entire context and under all the circumstances, a reasonable person would foresee [it] would be interpreted by those to whom the statement is communicated as a serious expression of intent to inflict bodily harm upon that person." *Id.* at 1077. To lose First Amendment protections, the statement must be a "serious expression of an intent to commit an act of unlawful violence to a particular individual or group of individuals." (ECF 105 at 23)(Citing *Virginia v. Black*, 538 U.S. 343, 359. The Supreme Court recently recognized a recklessness *scienter* requirement for culpable true threats, such that the Defendant must have "consciously disregarded a substantial risk that his communications would be viewed as threatening violence." *Counterman v. Colorado*, 600 U.S. 66, 69 (2023).

Because this Court has already thoroughly analyzed the SAC in its order and found PYM's social media posts were not true threats, I will only address the additional facts in the TAC that purport to add the "context or history" necessary to infer phrases like "no justice, no peace" or "belly of the beast" are calls for violence. (ECF 105 at 24) Plaintiffs fruitlessly add new allegations to the Third Amended Complaint in a vain attempt at showing this history and context. (TAC at 32-44).

These irrelevant, confused, and unsupported allegations fall into three categories: blood libel, antisemitism, and violence.

Plaintiffs allege PYM's posts are blood libel because they claim the land sale is illegal, they included the word "anglo", and that they called the land sale settler expansion.

The TAC describes blood libels as commonly being made close to Passover. (TAC at 32). The four scholarly experts Plaintiffs cite define blood libel as "accusations or libels that Jews killed Christian, and especially Christian children."[7] The experts refer throughout to blood libel as involving images of Christian children murdered, either implicitly or explicitly, by Jews. They discuss, among other things, the Tree of Life massacre, the shooting at the synagogue in California, QAnon theories about child kidnapping, and murders directly related to the Nazis' blood libel. Every example includes either a reference to a child or a ritual, and every example emanates from the elite and powerful political forces within a society that then is affirmed in media. (TAC at 32, fn. 51) None of these blood libel defining characteristics are reflected in any of PYM's social media posts. Moreover, at no point does anything on the website or in the video on the website suggest that allegations of land sales are a violation of international law, using "anglo" to imply racism, or using "settler expansion" to stand for genocide is a blood libel. (Id.)

To accomplish the extraordinary feat of transforming PYM's social media posts into "blood libels", plaintiffs simply assert "the latest blood libel falsely accuses Jews and Israelis of selling real estate stolen from Palestinians constituting an international war crime." (Id. at 164) This is a textbook conclusory allegation replete with "naked assertions… without further factual enhancement." *Bell Atl.*

[7] *The History of Antisemitism: Blood Libel.* Museum of Jewish Heritage, Nov. 29, 2022, mjhnyc.org/events/the-history-of-blood-libel/ (last visited July 17, 2025).

*Corp. v. Twombly*, 550 U.S. 544, 557. Moreover, the entire video they cite in support of their allegations directly conflicts with the allegations. This is exactly the kind of allegation that Courts have not accepted as true under *Gonzalez*.

The second category of newly added allegations is antisemitism, which permeate the TAC and have consistently been included in every version of this complaint. However, Plaintiffs add a section stating the IHRA definition of antisemitism, allege that PYM's social media posts violate that definition, reallege that Schirf and Ibrahim control PYM social media, and thus infer that Schirf and Ibrahim promoted antisemitic content. (TAC ¶¶153-154, 168-173, 201) These allegations fall far short of showing that PYM's social media posts meet the definition of a true threat.

The third category of newly added allegations is violence. The additional facts fall into three subcategories: Ibrahim's arrest; violence at previous protest, and violence at the land sale on June 23, 2024. These allegations suffer from the same deficiencies as their allegations of blood libel. In some instances, they contradict the internal logic of the TAC, showing that PYM works alongside police and Jews instead of being lawless antisemites. In others, the allegations directly undermine by their references. But ultimately, they all fail to provide a context and history that would morph PYM's social media posts into true threats.

While it may come as some surprise to Plaintiffs, an arrest is not a conviction, but rather an allegation against someone, and this applies to Mr. Ibrahim as well. Within the protest contexts, police frequently use arrests simply to dispel protesters, never intending for charges to issue. In Los Angeles alone, this has happened hundreds of times just in the last year.[8]

[8] Gabrielle Gillette, *LA City Attorney declines to file criminal charges on most arrests at encampment*, Daily Bruin, April 25, 2025, https://dailybruin.com/2025/04/25/la-city-attorney-declines-to-file-criminal-charges-on-most-arrests-at-encampment

Nor do Plaintiffs' allegations of violence at other protests provide the context or history the Court seeks to transmute PYM's social media posts to true threats. A cursory examination of news coverage of the Toronto protest sponsored by Jews Say No To Genocide reveals that while more than a thousand people participated in the march, only three were issued citations.[9] The police's primary concern was not violence by protesters, which was virtually nonexistent per the arrest record, but the use of a flatbed truck. Once police brought horses in that began to trample protesters, one unidentified protester responded by throwing manure.[10] Finally, Jews Say No to Genocide wasn't protesting against an illegal land sale, but rather, it was an annual event that organizers worked directly with the police to plan.[11]

Plaintiffs also cite a protest planned by Richie Siegel, a 65-year-old Jewish resident from Teaneck, who condemned the illegal land sale events, the settlements, and the racism inherent in them.[12] Siegel, Jewish Voices for Peace, and several others organized the protest in Teaneck.[13] There was no call for violence. There is no evidence, whether in the sources cited by Plaintiffs or any that Defendants could find, that Siegel and PYM worked together, let alone that "Ibrahim learned how to play Synagogue events" from him. (TAC at 41)

The Court employed a four-step analysis to determine whether the Defendants' social media posts were true threats: 1) accept all Plaintiffs' allegations

[9] David Gray-Donald and Nur Dogan, *Violent Crackdown at Land Day March*, The Grind Magazine, March 31, 2024. https://www.thegrindmag.ca/violent-crackdown-at-land-day-march/

[10] Id.

[11] Id.

[12] Maya Yang, *Hundreds of Palestine supporters protest Israeli real estate event at New Jersey synagogue*, The Guardian, March 11, 2024, https://www.theguardian.com/us-news/2024/mar/11/new-jersey-israel-palestine-protest-real-estate.

[13] Id.

as true, unless they are conclusory and invented out of thin air; 2) consider the context at the time of the posts; 3) factor in Defendants' protest history; 4) determine whether the text of the posts combine with some symbol or historical context similar to the "GUILTY" posters in *Planned Parenthood*.

Here, it is critical to note the wholly conclusory and invented out of thin air nature of the recently added allegations. The allegations of "blood libel" rely on a website featuring four experts discussing the concept almost entirely in medieval Europe, under the Nazi regime, Franco, and one incident in upstate New York in the early 20th century. (TAC at 32, fn. 51) They define blood libel as a false accusation against Jews involving children, the killing of children, and the consumption of their blood, usually Christian children. (*Id.*) After citing these experts, Plaintiffs simply assert the new blood libel is calling land sales illegal, using "anglo" to imply racism, and using settler expansion to describe the sales and imply genocide. The Court should ignore that naked assertion, among others that are completely fabricated or contradicted by the sources the TAC cites as detailed above. After the Court does that, and separates out the many allegations irrelevant to PYM, and certainly not PYM-LA where Ibrahim works, the case against PYM is thin at best.

Because the timeframe/context of the posts is not at issue here,[14] the next question is PYM's protest history. Similar to the naked assertions about PYM committing "blood libel," the TAC includes conclusory statements alternately invented out of thin air or contradicted by their sources. Plaintiffs provide examples that undermine their own assertions of Defendants' antisemitism, racism, or blood libel, given PYM's peaceful coordination with Jews Say No to Genocide, the Toronto event sponsor, or Richie Siegel, the Jewish man leading protests in New

[14] The timing of PYM's post is unchanged. There are no new facts about it. It is the same now and the same as it was for Code Pink when the Court earlier found PYM's social media posts were not true threats.

Jersey who echoed PYM's assertion that the land sales are violations of US and international law. They list incidents PYM had nothing to do with such as the event in South Orange or Dallas where the article Plaintiffs quote contains no assertions that PYM threatened the Israel Summit and conveniently omits PYM's collaboration with Jewish Voices for Peace, as it would significantly undermine their claims of antisemitism, racism, and blood libel so critical to their complaint. (TAC at 43, fn. 68.) Most disturbingly, the TAC lists injuries sustained by pro-Palestine protesters at events, as if to suggest PYM and CodePink would be responsible for violence committed by counterprotesters because the Defendants know counterprotesters can commit acts of violence. One can only wonder whether they would have tried to argue Black organizers in the 1960s were responsible for the violence of white racists during the lunch counter sit-ins or the Freedom Rides.

Finally, there is the question of whether PYM's social media posts are comparable to the "GUILTY" signs referenced in *Planned Parenthood*. In spite of Plaintiffs ongoing efforts in the Third Amended Complaint, there are still no symbols "historically linked to violence" within PYM's social media posts. (ECF 105 at 24). There are still no allegations that "no justice, no peace" or "belly of the beast" have led to violence. (*Id.*) Without those, Plaintiffs' claims must fail again.

Even if by some feat of interpretation, this hodgepodge of baseless and irrelevant allegations that only sometimes involve PYM persuaded the court that PYM had a history of violence such that their social media posts could be read as a true threat, Plaintiffs' FACE Act claim would still fail. Plaintiffs at no point even attempt to suggest that people in Los Angeles, the ostensible targets of their posts, knew or would have any reason to know about the dozens of other tangentially related events Plaintiffs unconvincingly stitch together, the IHRA definition of antisemitism, or Plaintiffs' wholly invented definition of blood libel.

Therefore, Plaintiffs failed again to allege any facts that can plausibly show Defendants' social media posts were true threats meeting the "threats of force" requirement under the FACE Act, and the claim must be dismissed with prejudice under Rule 12(b)(6).

**2. Plaintiffs Fail to Plausibly Allege Defendants Intended to Injure, Interfere with, or Intimidate Them Because of Their Freedom of Religion**

Plaintiffs' only specific facts pled against PYM are that PYM's social media shared a post asking people to show up at "12 PM SHARP " saying that "OUR LAND IS NOT FOR SALE" (TAC ¶¶151, 155). The TAC further alleges that PYM posted "STAND AGAINST SETTLER EXPANSION AT SUNDAY'S REAL ESTATE EVENT SELLING HOMES TO BUILD 'ANGLO NEIGHBORHOODS' IN PALESTINE." *Id*. Plaintiffs further allege "upon information and belief" that "Named Defendants" distributed keffiyehs at the protest (TAC ¶229).

Plaintiffs do not allege any facts that could plausibly show any of the PYM Defendants intended to injure Plaintiffs, restrict their freedom of movement, or threaten bodily harm, much less that they intended to do so *because* of Plaintiffs' exercise of freedom of religion. Plaintiffs do not allege any mention of prayer, worship, Jewish people, or Judaism, nor any call for violence, physical force, or intimidation. There are also no facts pled that could plausibly show the PYM Defendants intended to injure, restrict the bodily movement of, or threaten violence against people coming to exercise their religious freedom at the synagogue. Plaintiffs' sources in the TAC show that the published advertisement for the Real Estate event made no mention whatsoever of religion, prayer, worship, nor even of *Aliyah*; the event is described as a real estate opportunity, with discounts offered in

exchange for participation (FAC, video in fn. 11). There is no information in the advertisement from which Defendants could have known this was a religious event.

Even if all of these events Plaintiffs added to the TAC described in the previous section were somehow read together to mean PYM's social media posts were a true threat, Plaintiffs fail over and over again to demonstrate that those posts violate the FACE Act's requirement that the interference occurred because congregants at Adas Torah were exercising their right of religious freedom.

The facts pled therefore make it impossible for Plaintiffs to plausibly allege that Defendants intended to injure, intimidate, or interfere with them because of their exercise of freedom of religion.

### 3. Plaintiffs Have Alleged No Facts Allowing Them to Plausibly Claim That Defendants are Responsible for any Harmful Acts

The Court's Order dismissing the FACE Act claim against PYM Defendants established that vicarious liability apply, that PYM can only be held liable for the acts of their agents acting within the scope of their authority, and that there were three theories of authority: actual, apparent, and ratification. (ECF 105 at 25-32). The Court previously held that Plaintiffs had failed to sufficiently allege an agency relationship between PYM and any protesters at the Synagogue. (ECF 105 at 32).

Plaintiffs added facts attempting once again to sufficiently allege a principal/agent relationship between PYM and the protesters at the Synagogue. (TAC at ¶¶ 336, 337). The first is an uncited quote from Ibrahim talking saying that the LA community showed up to confront Zionism and white supremacy "wherever it manifests" (Id.) The second is segment from a much longer PYM social media post stating that "no institution complicit in colonization and genocide will get a pass." (Id.)

Ibrahim's unsourced quote offers nothing supporting ratification. "Ratification is the affirmance of a prior act done by another" which shows the act was done by an agent with actual authority. (ECF 105 at 31) (Citing *Kristensen v. Credit Payment Servs. Inc*. 879 F. 3d 1010, 1014 (9th Cir. 2018). His quote does not mention the obstruction of the synagogue or religious services, let alone affirm or ratify such an act. Importantly, under the FACE Act, this quote does not imply he even knew there were religious services taking place that day. And it boggles the imagination that something as obscure as the alleged interpretation of Aliyah as a religious requirement to buy land in Israel could be imputed to Ibrahim, especially as the advertisement for the illegal land sale does not mention religion or obligation a single time. There is nothing in the quote that supports liability under the FACE Act.

PYM's full post provides further context.[15] PYM does not claim responsibility for the protest against the land sale but rather states more broadly that "pro-Palestine organizers and community members" protested the sale of stolen land, were violently attacked by Zionists at the event, and that the police failed to intervene to protect victims of these attacks.[16] It goes on to say that pro-Palestine protesters "won't allow distorted narratives" to conceal the fact that Adas Torah hosted an illegal land sale event, making it complicit in war crimes, necessitating protest and that the media and politicians focused solely on the location of the illegal sale, instead of the violations of international law occurring there.[17] The next slide continues, referring to the Pro-Palestine mass movement once again, before getting to the portion quoted by Plaintiffs: "We will not back down: no institution complicit

[15] https://www.instagram.com/p/C8n3TfEpEVa/?img_index=2

[16] Id.

[17] Id.

in colonization and genocide gets a pass. Across North America, we have a role to play…"[18] With the full context of the social media post, it's clear the "we" here is not Palestinian Youth Movement, but rather the pro-Palestine mass movement writ large.

Even if the court were persuaded that this post meant PYM instead of the broader movement, it includes nothing that ratifies any behavior violative of the FACE Act. There is simply no way to interpret a call to protest genocide and land sales as violations of international law as a ratification of acts intended to obstruct religious services or block entrances to synagogues, or any other FACE Act violation.

With no facts to support its broad sweeping allegations, Plaintiffs have failed to sufficiently plead Defendants' liability via vicarious liability in a principal-agent relationship. Plaintiffs' claims under the FACE Act should be dismissed with prejudice.

### 4. <u>Defendants' Alleged Activities Constitute Protected First Amendment Speech and Advocacy</u>

Demonstrations, marches, and picketing are undeniably protected First Amendment activities. *Collins v. Jordan* 110 F.3d 1363, 1371 (9th Cir. 1996). Even where protected First Amendment speech becomes intertwined with someone's later possibly illegal conduct is to punish the conduct, not the speech. *Id*. The FACE Act explicitly forbids construing its language to capture "expressive conduct (including peaceful picketing or other peaceful demonstration) protected from legal prohibition by the First Amendment to the Constitution[.]" 18 U.S.C. § 248(d)(1). Plaintiffs therefore cannot plausibly allege a violation of either statute based on Defendants' protected speech.

[18] Id.

A district court must dismiss a claim if it "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. Proc. 12(b)(6). Rule 8(a) of the Federal Rules of Civil Procedure requires a plaintiff to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Although "a complaint need not contain detailed factual allegations . . . it must plead enough facts to state a claim to relief that is plausible on its face." *Cousins v. Lockyer*, 568 F.3d 1063, 1067-68 (9th Cir. 2009) (internal quotation marks and citations omitted). A claim is facially plausible only when it "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). "[C]onclusory allegations of law and unwarranted inferences are insufficient to avoid . . . dismissal" under this standard. *Cousins*, 568 F.3d at 1067 (internal quotation marks omitted). A court may reject as implausible allegations that are too speculative to warrant further factual development. *Dahlia v. Rodriguez*, 735 F.3d 1060, 1076 (9th Cir. 2013). The allegations must be enough to raise a right to relief above the speculative level. *Twombly* at 548. The court need not accept allegations that are merely conclusory, are unwarranted deductions, or unreasonable inferences. *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

### B. **<u>This Court Lacks Jurisdiction to Shield and Facilitate the Commission of War Crimes in Violation of International Law, as Plaintiff Requests</u>**

This Court may take judicial notice that all nations are subject to international humanitarian law (the law of war/armed conflict) and human rights law, and particularly to customary international law, regardless of their signatory status. This is important on its own, but especially important in light of the many false statements that PYM claimed the land sale event was illegal. There are dozens of

examples citing these types of sales events as illegal. While opinions may vary about the assessment, it is impossible to claim that PYM's assertions of their illegality are without basis in law.

U.N. member states, including the U.S., are not only bound to abide by these international law principles, but to refrain from aiding and abetting violations of these principles.[19] In the commentary to Article 16 of the Draft Articles on State Responsibility, the International Law Commission clarifies: "[t]he obligation not to provide aid or assistance to facilitate the commission of an internationally wrongful act by another State is not limited to the prohibition on the use of force."[20] This includes an obligation not to permit misusing its legal system to shield the wrongful act.

When Defendants labelled the MHI real estate sale an international war crime, they were not engaging in hyperbole, fearmongering, or antisemitism, but rather invoking established principles of international law. As the International Court of Justice ruled in 2024, Israel's occupation of Gaza and the West Bank, along with the associated settlement regime, annexation, and use of natural resources, is unlawful.[21]

#### 1. <u>**The United States is Party to the Fourth Geneva Convention, Which Prohibits Land Confiscation and Forcible Transfer**</u>

[19] United Nations Charter, Art. 1(1)-(3), https://tinyurl.com/5n7fdwvc..

[20] International Law Commission, *Articles on State Responsibility, Art. 16*, available at https://tinyurl.com/53d6p6f8.

[21] United Nations, OHCHR, Press Release, "Experts hail ICJ declaration on illegality of Israel's presence in the occupied Palestinian territory as "historic" for Palestinians and international law," July 30, 2024, available at https://tinyurl.com/4bptuzka.

The Fourth Geneva Convention, to which the U.S. is a party, prohibits confiscating or annexing land by force or forcibly transferring populations into and out of the territory.[22] The Geneva Conventions and the Hague Regulations have become customary international law and are thus universally binding.[23] Plaintiff demands that this Court obstruct accountability for violations of the Geneva Conventions. He would have this Court abrogate the United States' obligations as a High Contracting Party per Common Article 1.[24]

### 2. <u>Israel's Annexation, Confiscation, and Settlement Practices Constitute Crimes Against Humanity and War Crimes</u>

Israel's settlement practice constitutes a war crime and a crime against humanity, violating international humanitarian law principles prohibiting settlements in occupied territories and confiscating occupied land.[25] The 1907 Hague Regulations IV, to which the U.S. is a party, prohibit land annexation and the confiscating private property, and require the occupying state to administer = occupied territory to safeguard its capital.[26] Rule 130 of the ICRC's customary international law database provides that "[s]tates may not deport or transfer parts of

[22] The Fourth Geneva Convention Relative to the Protection of Civilian Persons in Time of War, 1949, Art. 47, available at https://tinyurl.com/2aa2ujy6; The Fourth Geneva Convention Art. 49, available at https://tinyurl.com/32htsmyz; The Fourth Geneva Convention, 1949, Art. 147, available at https://tinyurl.com/3xt43az6.
[23] International Committee of the Red Cross ("ICRC"), *Customary International Humanitarian Law*, available at https://tinyurl.com/k2at4v4c.
[24] The Fourth Geneva Convention, 1949, Art. 1, available at https://tinyurl.com/mttw42sh.
[25] ICRC, *Customary International Humanitarian Law*, available at https://tinyurl.com/k2at4v4c.
[26] 1907 Hague Regulations IV, Respecting the Laws and Customs of War on Land and its Annex: Regulations Concerning the Laws and Customs of War on Land, available at https://tinyurl.com/2hwzu7h5.

their own civilian population into a territory they occupy," and recognizes that prohibition as binding customary international law.[27]

In addition to constituting war crimes and crimes against humanity under international humanitarian law, Israel's settlement regime also violates numerous international human rights law treaties.[28] The 1973 U.N. Convention on the Suppression and Punishment of the Crime of Apartheid deems Apartheid an entirely separate crime against humanity.[29] Israel's settlement project violates these long-standing customary international humanitarian law and human rights law principles by forcibly transferring its occupying population to the Occupied Territories via its settlements, and by enforcing a regime of racial apartheid.

In conclusion, this Court cannot legally shield or facilitate violations of international law in such a way as to render itself culpable. As such, an exercise of jurisdiction would be *ultra vires*, the TAC must be dismissed.

## VI. **PYM DEFENDANTS RESPECTFULLY JOIN IN THE MOTIONS FILED BY ANY CO-DEFENDANT TO DISMISS PLAINTIFFS' SECOND AMENDED CLASS ACTION COMPLAINT TO THE EXTENT THEY APPLY**

PYM Defendants note that other defendants filed motions to dismiss and motions to strike the Third Amended Complaint, raising other arguments common to all defendants, including, without limitation, those relating to Plaintiffs' lack of

[27] ICRC, *International Humanitarian Law Database*, Rule 130, available at https://tinyurl.com/yay4rddd.

[28] The International Convention on the Elimination of All Forms of Racial Discrimination ("ICERD"), to which the U.S. is a party, Article 1 prohibits racial discrimination and condemns racial segregation and apartheid. International Convention on the Elimination of All Forms of Racial Discrimination ("ICERD"), 1965, available at https://tinyurl.com/fjzy2c59.

[29] Convention on the Suppression and Punishment of the Crime of Apartheid, 1976, Art. 1, available at https://tinyurl.com/yc7kfj9x.

standing, failure to demonstrate specific intent under the FACE Act, motion to Strike, and the failure to meet the requirements for class certification. PYM Defendants respectfully join those arguments.

## VI. CONCLUSION

The Court has a gate-keeping function, even at the pleading stage. That function is perhaps most needed when political actors dress as litigants and demand that judges turn their courtrooms into stages for ideological or even theological disputes. That is why *Iqbal* and *Twombly* demand that the rhetoric must be tethered to facts, and that grant theories be supported by enough of those facts to at least make the theories plausible.

Those guardrails have been entirely breached here. Several groups called for a demonstration. PYM asked its supporters to help advocate against the illegal sale of illegally occupied land, and it did not know that religious services were scheduled at the synagogue that day, a Sunday, not a notable day for Jewish religious gatherings. Yet in this hyperbolic atmosphere, a constitutionally protected call for legal protest has been recast as a campaign of terror.

The law requires more of a plaintiff than hyperbole. There must be at least a nod to the reality-based community—a latticework of facts and inferences that are plausible. The plaintiffs have utterly failed at even this most basic requirement. There are no facts showing PYM intended to obstruct religious services, no facts showing it called on anyone to do so, and no facts showing even the faintest link between a call for advocacy and the chaotic scene that eventually arose when armed counter-protestors arrived and spent hours antagonizing the anti-genocide demonstrators.

Plaintiffs have already amended their Complaint thrice, it has been dismissed once, and yet they still fail to identify a single specific fact making their claims

against PYM plausible or establishing Article III standing. Because the Plaintiffs have failed four times to plausibly plead their invoked causes of action, and because further amendment would be a futile waste of the Court's resources, this complaint should be dismissed with prejudice.

Respectfully submitted,

Dated: July 17, 2025 LAW OFFICES OF THOMAS B. HARVEY

By: /s/ Thomas B. Harvey
Thomas B. Harvey

Attorney for Defendants
PALESTINIAN YOUTH MOVEMENT
COURTNEY LENNA SCHIRF
REMO IBRAHIM

**L.R. 11–6.2 Certificate of Compliance**

The undersigned counsel of record for Defendants certifies that this brief Contains 6931words, which complies with the word limit of L.R. 11–6.1.

Dated: July 17, 2025 LAW OFFICES OF THOMAS B. HARVEY

By: /s/ Thomas B. Harvey
Thomas B. Harvey

Attorney for Defendants
PALESTINIAN YOUTH MOVEMENT
COURTNEY LENNA SCHIRF
REMO IBRAHIM

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that, on July 17, 2025, a true copy of the PYM DEFENDANTS' MOTION TO DISMISS was filed electronically with the Clerk of Court using the Court's CM/ECF system, which will send by email a notice of docketing activity to the registered Attorney Filer on the attached electronic service list.

Dated: July 17, 2025 LAW OFFICES OF THOMAS B. HARVEY

By: /s/ Thomas B. Harvey
Thomas B. Harvey

Attorney for Defendants
PALESTINIAN YOUTH MOVEMENT
COURTNEY LENNA SCHIRF
REMO IBRAHIM