Mark Kleiman (SBN 115919)
mark@krlaw.us
KLEIMAN / RAJARAM
12121 Wilshire Blvd., Ste. 810
Los Angeles, CA  90025
Tel: 310-392-5455 / Fax: 310-306-8491

Collin Poirot (NY 5673405)
*(pro hac vice pending)*
cpoirot.law@gmail.com
2603 Oak Lawn, Suite 300
Dallas TX  75219
214-392-2281

Attorneys for Defendants
CODEPINK WOMEN FOR PEACE
CODEPINK ACTION FUND

## UNITED STATES DISTRICT COURT
### FOR THE CENTRAL DISTRICT OF CALIFORNIA
### WESTERN DIVISION

| | |
|---|---|
| RONEN HELMANN, on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>CODEPINK WOMEN FOR PEACE, a California entity, CODEPINK ACTION FUND, a California entity, HONOR THE EARTH, a Minnesota entity, COURTNEY LENNA SCHIRF, and REMO IBRAHIM, d/b/a PALESTINIAN YOUTH MOVEMENT, and JOHN AND JANE DOES 1-20,<br><br>Defendants. | Case No. 2:24-cv-05704-SVW-PVC<br><br>**[CORRECTED]**<br>DEFENDANTS' CODEPINK WOMEN FOR PEACE AND CODEPINK ACTION FUND, NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S THIRD AMENDED CLASS ACTION COMPLAINT<br><br>Judge:  Hon Stephen V. Wilson<br>Hearing Date:   July 28, 2025<br>Time:          1:30 p.m.<br>Courtroom:    10A |

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE THAT on July 28, 2025, at 1:30 p.m. or as soon thereafter as this matter may be heard in Courtroom 10A of the above-entitled Court located at First Street Courthouse, 350 W. 1st Street, Courtroom 10A, 10th Floor, Los Angeles, CA 90012, Defendants CODEPINK WOMEN FOR PEACE and CODEPINK ACTION FUND, will and hereby do move the Court to dismiss Plaintiff's Third Amended Class Action Complaint pursuant to Fed. R.Civ.Pro 12(b)(1) and 12(b)(6)

This motion is based upon this Notice of Motion, the attached Memorandum of Points & Authorities, the files and records in the case, and any evidence or argument that may be presented at a hearing on this matter.

Respectfully submitted,

Dated:  July 17, 2025

KLEIMAN / RAJARAM

By:_____

Mark Kleiman

Attorneys for Defendants
CODEPINK WOMEN FOR PEACE
CODEPINK ACTION FUND

[CORRECTED] DEFENDANTS' CODEPINK WOMEN FOR PEACE AND CODEPINK ACTION FUND, NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S THIRD AMENDED CLASS ACTION COMPLAINT

# **TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES .................................................................. 5

MEMORANDUM OF POINTS AND AUTHORITIES .......................... 8

I.      INTRODUCTION ....................................................................... 8

II.     FACTS ALLEGED ..................................................................... 9

III.    STANDARDS OF REVIEW ...................................................... 11

    A.    Fed.R.Civ.Proc. 12(b)(6) Requires Facts Sufficient to Make Claims Plausible ........................................... 11

IV.     ELEMENTS OF A VIOLATION OF 18 U.S.C. § 248(a)(2) ........ 12

    A.    18 U.S.C. §248(a)(2) Requires Specific Intent to Injure, Intimidate, or Interfere with a Person *Because* of Their Exercise of Religious Freedom ........................... 12

V.      ARGUMENT ............................................................................. 14

    A.    Plaintiff Fails to State a Claim Under the FACE Act So The Complaint Must Be Dismissed Under Rule 12(b)(6) ..... 14

        1.    Plaintiff Fails to Plausibly Allege Specific Intent Based on Religious Exercise ..................... 15

        2.    Plaintiffs Fails to Plausibly Allege CodePink Used Threats of Force that Were True Threats and Undeserving of First Amendment Protection ........... 16

        3.    Plaintiff Fails to Plausibly Allege an Intent to Injure, Interfere With, or Intimidate Him – a Reckless Mens Rea is Insufficient .................................. 18

        4.    CodePink's Alleged Activities Constitute Protected First Amendment Speech and Advocacy .................. 18

[CORRECTED] DEFENDANTS' CODEPINK WOMEN FOR PEACE AND CODEPINK ACTION FUND, NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S THIRD AMENDED CLASS ACTION COMPLAINT

5.    Plaintiff Fails to Plausibly Allege a Theory of Agency
That Renders CodePink Liable for the Acts of
Individual Protesters ................................................................19

B.    This Court Lacks Jurisdiction to Shield and Facilitate the
Commission of War Crimes in Violation of International
Law, as Plaintiff Requests ........................................................20

1.    MHI's Real Estate Sales Events Aid and Abet
Violations of International Law...............................................20

2.    The United States is Party to the Fourth Geneva
Convention Prohibiting Confiscating Land and
Forcibly Transferring Populations...........................................21

3.    Israel's Annexation, Confiscation, and Settlement
Practices Constitute Crimes Against Humanity and
War Crimes ...............................................................................21

C.    Plaintiff Cannot Satisfy the Requirements for Class
Certification .......................................................................................23

VI.    DEFENDANTS' MOTION TO STRIKE ................................................24

VII.    CONCLUSION .........................................................................................25

[CORRECTED] DEFENDANTS' CODEPINK WOMEN FOR PEACE AND CODEPINK ACTION FUND, NOTICE
OF MOTION AND MOTION TO DISMISS PLAINTIFF'S THIRD AMENDED CLASS ACTION COMPLAINT

## TABLE OF AUTHORITIES

**Page**

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009) ...........................................................................11,25

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 868 (2009) ................... 11,17,25

*Blakemore v. Superior Court,*
    (2005) 129 Cal. App.4th 36 ................................................................23

*Church of Scientology of California v. U.S. Dept. of Justice,*
    612 F.2d 417 (9th Cir. 1979) ..............................................................13

*Clausing v.. San Francisco Unified School Dist.,*
    (1990) 221 Cal.App.3d 1224 ..............................................................23

*Collins v. Jordan,*
    110 F.3d 1363 (9th Cir. 1996) ............................................................18

*Cousins v. Lockyer,*
    568 F.3d 1063 (9th Cir. 2009) ............................................................11

*Dahlia v. Rodriguez,*
    735 F.3d 1060 (9th Cir. 2013) ............................................................11

*Elhanafi v. Fox Television Stations, Inc.,*
    2012 WL 6569341, *2 (Sup. Ct. Kings County, Dec. 17, 2012) ..................25

*Gerber v. Herskovitz,*
    14 F.4th 500 (6th Cir. 2021) ..............................................................19

*Gonzalez v. Planned Parenthood of L.A.,*
    759 F.3d 1112 (9th Cir. 2014) ............................................................17

*In re Honest Co., Inc. Sec. Litig.,*
    343 F.R.D. 147, 150 (C.D. Cal. 2022) ..................................................24

*Lotierzo v. A Woman's World Med. Ctr.,*
    278 F.3d 1180 (11th Cir. 2002) ..........................................................12

*New Beginnings Ministries v. George*,
    2018 WL 11378829 (S.D.O.H. 2018) ................................................ 12,14,15

*Prince v. CLS Transportation, Inc.*,
    (2004) 118 Cal. App. 4th, 1320 ......................................................... 23

*Richardson v. United States*,
    841 F.2d. 993 (9th Cir. 1988) .......................................................... 8

*Saldana v. Occidental Petroleum Corp.*,
    774 F.3d 544 (9th Cir. 2014) .......................................................... 17

*Sharpe v. Console*,
    123 F.Supp.2d 87, (N.D.N.Y. 2000) ............................................... 13

*Sprewell v. Golden State Warriors*,
    266 F.3d 979 (9th Cir. 2001) .......................................................... 11

*U.S. v. American Trucking Ass'ns*,
    310 U.S. 534, 543 (1940) .............................................................. 13

*Van Der Linden v. Khan*,
    535 S.W.3d 179 (Tex. App 2017) ................................................... 25

**<u>STATUTES</u>**

18 U.S.C. § 248 ............................................................................ *passim*

Fed.R.Civ.Proc. 12(b)(6) ............................................................ 11,14

Fed.R.Civ.Proc. 12(f) .................................................................. 24

[CORRECTED] DEFENDANTS' CODEPINK WOMEN FOR PEACE AND CODEPINK ACTION FUND, NOTICE
OF MOTION AND MOTION TO DISMISS PLAINTIFF'S THIRD AMENDED CLASS ACTION COMPLAINT

## **MISCELLANEOUS**

139 Cong. Rec. S15660, 1993 WL 470962 (Nov. 3, 1993) ...................................... 14

1907 Hague Regulations IV .......................................................................................... 22

ICRC Rule 130 ............................................................................................................... 22

[CORRECTED] DEFENDANTS' CODEPINK WOMEN FOR PEACE AND CODEPINK ACTION FUND, NOTICE
OF MOTION AND MOTION TO DISMISS PLAINTIFF'S THIRD AMENDED CLASS ACTION COMPLAINT

## MEMORANDUM OF POINTS & AUTHORITIES

### I.     INTRODUCTION

CodePink Defendants move to dismiss Plaintiff's Third Amended Complaint ("TAC"). This Court has already ruled that the facts alleged by Plaintiff do not plausibly plead a theory of agency accountability that would render CodePink vicariously liable for the acts of any individual protester, even if they *were* CodePink members. Dkt. 105, p. 30. Because the TAC includes no new factual allegations against CodePink with regard to agency, the law of the case is that CodePink may be held liable only for the social media posts promoting the protest.[1]

In sum, Plaintiff dislikes CodePink's support for Palestinians and opposition to Israel's illegal occupation of the West Bank and ongoing genocide in Gaza. Plaintiff sued to punish CodePink for organizing a protest against real estate company My Home in Israel's ("MHI") illegal sale of racially-restricted land in the illegal, Jewish-only settlements in occupied Palestine. Most importantly, MHI's real estate sale was never advertised as a religious event nor claimed any religious character *whatsoever*. *See* TAC fn. 102, ¶ 393.

Plaintiff never alleges that CodePink knew or should have known that the real estate sale had religious significance for him nor the other attendees. For that matter, Plaintiff's own exhibit of the advertisement for the sale shows that the event was advertised as "the Mega-Event of the Year", promising financing, legal, and funds transfer information, and offering special discounts for "event participants"—in other words, it was advertised as a purely transactional, economic activity. *See* TAC ¶ 138. The promotional materials say nothing at all about religion and do not mention "Aliyah". <u>Id.</u> As Plaintiff states in the TAC, the ad for the MHI event "was

---

[1] <u>Richardson v. United States</u> 841 F.2d. 993, 996 (9th Cir. 1988). In the unlikely event that the Court reconsiders its prior ruling that there is no basis pled for imposing vicarious liability CodePink defendants incorporate by reference their argument at Dkt. 49, pp. 22-23.

8

merely a common ad for residential real estate." Id. Plaintiff offers no basis whatsoever to find that CodePink knew or should have known that he and other attendees intended to participate as a form of religious exercise, rather than as a secular activity of purchasing real estate.

Furthermore, the event in question was not the first MHI real estate sale that has occurred in America. Indeed, MHI's previous real estate events have been investigated by the New Jersey Division on Civil Rights for possible "discrimination on the basis of race, religion, ancestry, national origin and other protected characteristics."[2] MHI's real estate events have drawn protests throughout the country precisely because MHI is no mere real estate company, but is specifically engaged in selling illegally-occupied and racially-restricted lands in the West Bank, and has repeatedly been accused of aiding and abetting apartheid and genocide. The protest against MHI's real estate sale at Adas Torah occurred within this context, and was no different from the protests outside of MHI's prior events. CodePink's intent in promoting this particular protest is abundantly clear from the plain text of its social media posts: to "advocate the stop of homes being sold on stolen Palestinian land." TAC ¶ 145. This political advocacy and speech is squarely protected by the First Amendment, and Plaintiff's claim must be dismissed.

## II.    **FACTS ALLEGED**

Plaintiff alleges that CodePink promoted a protest of the MHI event in Los Angeles through its social media account. Specifically, Plaintiff alleges that CodePink was a collaborator on an Instagram post "claiming that 'A MEGA ZIONIST REAL ESTATE EVENT IS IN LA THIS WEEK!'" and urging viewers to "HELP ADVOCATE THE STOP OF HOMES BEING SOLD ON STOLEN PALESTINIAN LAND!" TAC ¶ 144-5. The addresses and dates of the MHI real

---

[2] Arvind Dilawar, "Organizers of Israeli Real Estate Event in LA Under Investigation in New Jersey," Sept. 4, 2024 (last accessed Oct. 22, 2024) https://tinyurl.com/ysdkxc6r.

estate events "were placed inside inverted red triangles." TAC ¶ 149. Plaintiff alleges that "Hamas and its supporters… have used inverted red triangles as a symbol for Hamas and to celebrate its use of violence against Jews and Israelis" and that "the inverted red triangle acts as a target designator to identify Jews and Jewish targets for extermination." TAC ¶ 150-1. According to the source Plaintiff cites in the TAC as support for this alleged symbolic meaning, although the inverted red triangle can sometimes be used to signify Hamas or violent resistance "in many popular anti-Zionist memes and political cartoons," it can also "be used innocuously in general pro-Palestine social media posts." TAC fn. 47.

Plaintiff does not allege any facts to show that CodePink's use of the red triangle was an instance of the former, rather than the latter. When coupled with plain text of the posts, which merely calls for advocacy, Plaintiff's failure to allege any facts to suggest that this particular use of the red triangle was a call for extreme violence is facially implausible. Plaintiff also fails to allege that the public is generally aware of this alleged meaning of inverted red triangles, nor that he or anyone else actually viewed the CodePink post and interpreted it as designating "targets for extermination."

Plaintiff states that CodePink expressed its understanding that "no religious services were scheduled at the time of the real estate sale," that the protest at the MHI event was "a peaceful protest against the illegal sale of stolen land in Palestine in a synagogue," and that "[c]ontrary to what the media is falsely reporting, the entrance was never blocked by anyone." TAC ¶¶ 327-28, 322-3. Finally, Plaintiff states that "all three events continued at the Synagogue on June 23, 2024" but that, "upon information and belief," some members were unable to attend. TAC ¶ 296.

Relieved of legally conclusory language and mere restatements of the alleged offenses' elements, the facts asserted against CodePink boil down to First Amendment protected speech activity. None of the pled facts can support Plaintiff's

1  claim under the invoked statute, and in fact, the TAC includes facts that make it

2  impossible for Plaintiff to plead this cause of action. For these reasons, the

3  complaint should be dismissed with prejudice.

4  **III.**  **STANDARDS OF REVIEW**

5  **A. Fed.R.Civ.Proc. 12(b)(6) Requires Facts Sufficient to Make Claims**

6  **Plausible**

7  A complaint "must plead enough facts to state a claim to relief that is

8  plausible on its face." Cousins v. Lockyer, 568 F.3d 1063, 1067-68 (9th Cir. 2009)

9  (internal quotation marks and citations omitted). A claim is facially plausible only

10  when it "allows the court to draw the reasonable inference that the defendant is

11  liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678, (2009)

12  (internal quotation marks omitted). "[C]onclusory allegations of law and

13  unwarranted inferences are insufficient to avoid . . . dismissal." Cousins, 568 F.3d at

14  1067 (internal quotation marks omitted). A court may reject as implausible

15  allegations that are too speculative to warrant further factual development. Dahlia v.

16  Rodriguez, 735 F.3d 1060, 1076 (9th Cir. 2013). The allegations must be enough to

17  raise a right to relief above the speculative level. Bell Atl. Corp. v. Twombly, 550

18  U.S. 544, 548 (2009). Allegations that are merely conclusory, are unwarranted

19  deductions, or unreasonable inferences need not be accepted. Sprewell v. Golden

20  State Warriors, 266 F.3d 979, 988 (9th Cir. 2001).

21  When the guesses, conclusory language, and innuendo are stripped away,

22  what remains of Plaintiff's allegations that are grounded in specific facts is this: (1)

23  CodePink was one of several organizations which called for a demonstration to

24  oppose a real estate event illegally offering land sales in the occupied West Bank;

25  (2) CodePink's social media posts promoted the demonstration, and invited its

26  supporters to "help advocate" against the illegal sale; (3) CodePink included red

27  inverted triangles in its social media posts promoting the protest, alongside text that

28

[CORRECTED] DEFENDANTS' CODEPINK WOMEN FOR PEACE AND CODEPINK ACTION FUND, NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S THIRD AMENDED CLASS ACTION COMPLAINT

called for *advocacy* against the illegal sale of stolen land; (4) that other actors including Hamas have used inverted red triangles to "identify Jews and Jewish targets for extermination"; and (5) that CodePink later stated that it had no idea that a synagogue would be holding religious services on a Sunday, that the protest itself was peaceful, and that none of its members blocked the entrance. These few facts do not make plausible the theory that CodePink intended to issue a true threat to Plaintiff or anyone else because of their exercise of religion.

## IV.    ELEMENTS OF A VIOLATION OF 18 U.S.C. § 248(a)(2)

The FACE Act was passed in 1994, when women's health clinics were being bombed and their doctors murdered. A far lesser-known provision in the bill protects places of worship. The law's "religious freedom" cause of action has so seldom been invoked that caselaw interpreting this provision is scarce. Defendants found no Ninth circuit cases where such a suit has been brought. Other circuits, however, have identified four elements required to plead a violation of 18 U.S.C. § 248(a)(2): "Plaintiffs must demonstrate that Defendants used or attempted to use (1) force, threat of force, or physical obstruction; (2) with the intent to; (3) injure, intimidate, or interfere with a person; (4) *because* that person is exercising or is seeking to exercise his or her right of religious freedom at a place of religious worship." New Beginnings Ministries v. George, 2018 WL 11378829, *15 (S.D.O.H. 2018) (emphasis added) (citing Lotierzo v. A Woman's World Med. Ctr., 278 F.3d 1180, 1182 (11th Cir. 2002) (citations omitted)).

### A.    18 U.S.C. § 248(a)(2) Requires Specific Intent to Injure, Intimidate, or Interfere with a Person *Because* of Their Exercise of Religious Freedom

This law requires specific intent. A claim for relief under 18 U.S.C. § 248(a)(2) requires Plaintiff to allege facts plausibly showing that Defendants intended to injure, intimidate, or interfere with him *because* of his exercise of

[CORRECTED] DEFENDANTS' CODEPINK WOMEN FOR PEACE AND CODEPINK ACTION FUND, NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S THIRD AMENDED CLASS ACTION COMPLAINT

freedom of religion. 248(a)(2) requires that any threat of force or intimidation (or actual injury) must be intended to affect "any person lawfully exercising or seeking to exercise the First Amendment right of religious freedom at a place of religious worship".  Although the word "because" does not appear in the religious freedom subsection of the FACE Act the same way that it appears in the reproductive clinic subsection, the religious freedom subsection must also be construed as a specific intent offense in order to avoid absurd results. *See e.g.,* Sharpe v. Console, 123 F.Supp.2d 87, 90-1 (N.D.N.Y. 2000) (finding "Plaintiff's interpretation of FACE's *mens rea* standard (such that one only need show obstruction to prove intent) could lead to ridiculous results."). A general intent requirement for a FACE Act violation would create a private cause of action any time construction blocked a place of worship's entrances to repair the building; volunteer firefighters ordered congregants to evacuate for a fire drill; a nearby private event restricted public access; or in many other common scenarios. Only a specific intent *mens rea* can protect the Act from these absurd results.

Where, as here, the plain text of the statute produces an absurd or unreasonable result, the Court should not follow it and should instead look to legislative history to discern the statute's purpose. Church of Scientology of California v. U.S. Dept. of Justice, 612 F.2d 417, 422 (9th Cir. 1979) (quoting U.S. v. American Trucking Ass'ns, 310 U.S. 534, 543 (1940) (when the plain text of a statute "led to absurd or futile results… this Court has looked beyond the words to the purpose of the act. Frequently…even when the plain meaning did not produce absurd results but merely an unreasonable one plainly at variance with the policy of the legislation as a whole, this Court has followed that purpose, rather than the literal words." (internal quotations omitted)).

The FACE Act's legislative history makes it abundantly clear that the religious expression subsection was intended to require a specific intent *mens rea*.

[CORRECTED] DEFENDANTS' CODEPINK WOMEN FOR PEACE AND CODEPINK ACTION FUND, NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S THIRD AMENDED CLASS ACTION COMPLAINT

As one federal court noted, "there are no legislative findings related to the religious liberties provision…in an official congressional report. Instead, all that exist are Senator Hatch's statements made when he proposed the religious access amendment." <u>New Beginnings Ministries v. George</u>, 2018 WL 11378829, *6 (S.D. Ohio, Sept. 28, 2018). Senator Hatch (the amendment's sponsor), explained: "the religious liberty amendment that I am offering is very straightforward. It would ensure that the first amendment right of religious liberty receives the same protection from interference that [FACEA] would give abortion…Through this amendment, religious liberty would also be protected against private intrusion-in exactly the same way that [FACEA] would protect abortion."139 Cong. Rec. S15660, 1993 WL 470962 (Nov. 3, 1993). The only legislative history clearly dictates that the subsection be construed as equal in scope to the reproductive health clause—that it should be interpreted and applied "exactly same way." There is no record of any congressional debate or discussion that would support interpreting one subsection as a specific intent violation, and the second as applicable to any and all conduct that obstructs entry to any space used for religious worship, for any reason whatsoever.

A violation of the FACE Act's religious exercise subsection therefore requires that Defendants act "*because* [Plaintiff] is exercising or is seeking to exercise his or her religious freedom." <u>New Beginnings Ministries v. George</u>, 2018 WL 11378829 *3. Plaintiff has not plead facts making such a specific intent plausible in this case.

## V.    <u>ARGUMENT</u>

### A. <u>Plaintiff Fails to State a Claim Under the FACE Act So the Complaint Must Be Dismissed Under Rule 12(b)(6)</u>

Plaintiff fails to allege facts that plausibly show a FACE Act violation. Although the "religious exercise" subsection of the FACE Act has not been

addressed in this Circuit, the plain language does not encompass real estate sales events, even if they occur at a location that is normally used for religious purposes.

## 1. **Plaintiff Fails to Plausibly Allege Specific Intent Based on a Religious Exercise**

A violation of the FACE Act's religious exercise subsection requires that Defendants act "*because* [Plaintiff] is exercising or is seeking to exercise his or her religious freedom." New Beginnings Ministries v. George, 2018 WL 11378829 *3. Plaintiff fails to plausibly allege Defendants protested the real estate sale *because* of Plaintiff's exercise of religious freedom. Plaintiff does not allege CodePink even mentioned prayer, worship, Jews or Judaism, called for violence, physical force, or intimidation. Plaintiff's only specific facts pled against CodePink are that the organization announced a "Mega Zionist Real Estate Event," and encouraged supporters to "HELP US ADVOCATE THE STOP OF HOMES BEING SOLD ON STOLEN PALESTINIAN LAND." TAC ¶¶ 144-5. No pled facts plausibly show CodePink intended to injure, restrict movement, or threaten violence against people coming to exercise religious freedom.

The only image Plaintiff incorporates here is an advertisement offers discounted prices, mortgage advice, and help with money transfers. Not a word is said about *Aliyah* or the Jewish religion. *See* TAC ¶ 138. Plaintiff's previously-filed sources in the SAC show that the real estate event advertisement real estate made no mention of religion, prayer, worship, nor even of *Aliyah*. The event is described as a real estate opportunity, with discounts offered for participants. FAC n. 11, video. Nothing in the advertisement suggests the event was religious, and sources in the TAC show that Defendants were *unaware*, believing that "no religious services were scheduled" at the time. TAC ¶ 328. Plaintiffs fail to allege any facts suggesting that CodePink knew that religious worship would occur on a Sunday. At most, Plaintiff's

[CORRECTED] DEFENDANTS' CODEPINK WOMEN FOR PEACE AND CODEPINK ACTION FUND, NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S THIRD AMENDED CLASS ACTION COMPLAINT

allegations might show CodePink intended to advocate against the real estate sale, and to oppose an ongoing genocide.

The facts pled make it impossible for Plaintiff to plausibly allege that CodePink intended to injure, intimidate, or interfere with them because of his religious exercise.

## 2. **Plaintiff Fails to Plausibly Allege CodePink Used Threats of Force that Were True Threats and Undeserving of First Amendment Protection**

This Court has already held that Plaintiff fails to plausibly render CodePink liable for the acts of individual protesters. Therefore, Plaintiff must plausibly allege that CodePink's social media posts, by themselves, are force, a threat of force, or a physical obstruction. As this Court has already held, "the posts do not involve 'force' or 'physical obstruction'—they are purely speech-based communications." Dkt. No. 105, p. 17.

The only speech prohibited by the FACE Act is that which uses "force or threat of force… [t]o intimidate or interfere with... or attempt to intimidate or interfere with any person lawfully exercising or seeking to exercise the First Amendment right or religious freedom at a place or religious worship." 18 U.S.C. 248(a)(2).

In addition to failing to plead either the specific intent that is required for a FACE Act violation (*see supra*, p. 8) or that Defendant intentionally injured, intimidated, or interfered with him (*see infra*, pp. 10-11), Plaintiff also fails to plead plausible facts showing the red triangle image satisfies the "true threat" standard. Even the ADL definition cited by Plaintiff acknowledges the triangle can be used innocuously. (TAC, ¶ 151, fn. 47) Where two different interpretations may be made of the same facts, Plaintiff must state further facts making the "true threat" claim

probable, rather than merely plausible. *See* <u>Bell Atlantic v. Twombley</u>, 550 U.S. 544, 557 (2007). Such factual allegations are absent here.

Plaintiff, for example, alleges that CodePink "operatives" harassed CNN anchor Dana Bash at a synagogue while she was there to worship. Yet the very article he cites for this claim shows that Bash was giving a lecture there. TA photograph in the article Plaintiff incorporates shows Bash standing next to a projection screen with her name, "DANA BASH" in giant letters, and holding several file folders. TAC ¶¶ 66-67, fn. 47.[3] Plaintiff also alleges that someone from CodePink assaulted a Republican Congressman at the 2024 Republican Convention—*but never allege that CodePink directed or ratified this*. TAC ¶ 64.[4]

Plaintiff's efforts to compare the red triangle symbol with the "WANTED" posters that were published shortly before abortion doctors were murdered will not save this claim, for Plaintiffs have failed to allege *even one incident* in the United States where anyone targeted with a red triangle was then violently assaulted. By contrast, as this Court has recognized, WANTED posters were repeatedly followed by murder, which was the key fact that rendered them true threats. *See* Dkt. 131, p. 21.

Plaintiff fails to advance plausible facts that would transform a hyperbolic image on social media to a true threat, or facts to show even a reckless state of mind on the part of the poster. The scant facts Plaintiff *does* allege are often belied by the evidence he invokes. There are simply not enough facts alleged here to strip CodePink's speech of its First Amendment protections.

---

[3] Courts "need not accept as true allegations that contradict matters properly subject to judicial notice or by exhibit" incorporated by reference. <u>Gonzalez v. Planned Parenthood of L.A.</u>, 759 F.3d 1112, 115 (9th Cir. 2014), <u>Saldana v. Occidental Petroleum Corp.</u>, 774 F.3d 544, 551 (9th Cir. 2014).

[4] CodePink not only denied it—they filed an Ethics Complaint with the House of Representatives, seeking a forum to prove Orden was lying. But defendants acknowledge that the Court is required to credit the allegation nonetheless.

17

### 3. **Plaintiff Fails to Plausibly Allege Intent to Injure, Interfere With, or Intimidate Him—a Reckless Mens Rea is Insufficient**

Even if Plaintiff could plausibly allege that CodePink published a true threat, that would still be insufficient to constitute a violation of the FACE Act, because that statute requires a Defendant to have "intentionally" injured, intimidated, or interfered with the Plaintiff or attempted to do so. A reckless *mens rea* is insufficient to show a violation of 18 USC § 248(a)(2). Plaintiffs utterly fail to allege *any* particular intent by CodePink when it made the posts. This Court may not infer an intent that is nowhere alleged in the complaint, and as such, Plaintiff fails to plead this element of the invoked cause of action.

The statute specifically defines "intimidate" as placing one in "reasonable apprehension of bodily harm," and "interfere with" as restricting a person's freedom of movement. 18 U.S.C. § 248(e)(2)-(3). Plaintiff fails to allege facts plausibly showing CodePink intended to place him in reasonable apprehension of bodily harm, restrict his freedom of movement, or injure him. Plaintiff does not allege that CodePink intended to communicate with him *at all*, much less that it intended to place him in fear of bodily harm. Nor does Plaintiff allege that CodePink intended to restrict his freedom of bodily movement, and he certainly does not allege that CodePink intended to injure him.

Absent *some* factual allegation regarding CodePink's actual intent behind the posts, the TAC fails to plead a required element of 18 USC § 248(a)(2), and his claim must be dismissed.

### 4. **CodePink's Alleged Activities Constitute Protected First Amendment Speech and Advocacy**

Demonstrations, marches, and picketing are undeniably protected First Amendment activities. Collins v. Jordan 110 F.3d 1363, 1371 (9th Cir. 1996). This

includes protests far more aggressive than this one. <u>Gerber v. Herskovitz</u>, 14 F.4th 500, 504, 508-509 (6th Cir. 2021) (First Amendment protected regular, prolonged protests in front of a synagogue routinely held <u>during</u> scheduled worship, even with inflammatory signs saying "Resist Jewish Power.").

Even where protected First Amendment speech becomes intertwined with someone's later illegal conduct, the solution is to punish the conduct, not the speech. <u>Id</u>. The FACE Act forbids construing its language to capture "expressive conduct" such as CodePink's social media posts, which are "protected from legal prohibition by the First Amendment." 18 U.S.C. § 248(d)(1). Plaintiff cannot plausibly allege a violation based on CodePink's protected speech.

**5.  Plaintiff Fails to Plausibly Allege a Theory of Agency that Renders CodePink Liable for the Acts of Individual Protesters**

As this Court has previously held, "Plaintiffs do not allege facts sufficient… to establish and theory of agency" because they "(incorrectly) rely on their allegations that CodePink and PYM endorsed disruptive and/or violent protest through their social media posts." Dkt. 105, p. 30. Those allegations do not make it plausible that the alleged CodePink members who allegedly engaged in obstruction "agreed to do so *on behalf of* CodePink and PYM and *subject to* their control." <u>Id.</u> As such, Plaintiff fails to plead specific facts that plausibly render CodePink liable for any conduct engaged in by individuals at the protest.

Plaintiff adds no new factual allegations to the TAC, that point to agency or ratification and therefore the law of the case dictates that CodePink cannot be held liable for the acts of individual protesters.  (Plaintiff incorporates several Instagram posts that were also in the SAC. The newly added posts do not show or discuss anyone blocking the synagogue entrance but instead focus on the actions of the LAPD. *See* TAC ¶¶ 320-323, fns. 84-87.)  We *do* see a line of police at the

synagogue entrance with an 8'-10' gap between them and the demonstrators, who are further away from the entrance.  (We also hear, on the clip incorporated by fn 87, an older woman standing with a group of Israeli-flagged counterprotesters, yelling at young women demonstrators that she hopes they will be raped.)

**B. This Court Lacks Jurisdiction to Shield and Facilitate the Commission of War Crimes in Violation of International Law, as Plaintiff Requests**

This Court may take judicial notice that all nations are subject to international humanitarian law (the law of war/armed conflict) and human rights law, and particularly to customary international law regardless of their signatory status. U.N. member states including the U.S. are bound to abide by and refrain from aiding and abetting violations of these international principles.[5] This includes an obligation not to permit misusing its legal system to shield the wrongful act.[6]

**1. MHI's Real Estate Sales Events Aid and Abet Violations of International Law**

When Defendants labelled the MHI real estate sale an international war crime, this was not hyperbole, but invoked established international law principles. As the International Court of Justice ruled in 2024, Israel's occupation of Gaza and the West Bank, along with the associated settlement regime, annexation, and use of natural resources, is unlawful.[7] This Court can take judicial notice that at the time of

---

[5] United Nations Charter, Art. 1(1)-(3), https://tinyurl.com/5n7fdwvc.

[6] International Law Commission, *Articles on State Responsibility, Art. 16*, available at https://tinyurl.com/53d6p6f8.

[7] United Nations, OHCHR, Press Release, "Experts hail ICJ declaration on illegality of Israel's presence in the occupied Palestinian territory as 'historic' for Palestinians and international law," July 30, 2024, available at https://tinyurl.com/4bptuzka.

the protest in question, MHI listed real estate for sale in several areas of the occupied West Bank, including in the illegal, Jewish-only settlements.[8]

### 2. The United States is Party to the Fourth Geneva Convention Prohibiting Confiscating Land and Forcibly Transferring Populations

The Fourth Geneva Convention, to which the U.S. is a party, prohibits forcibly confiscating or annexing land or transferring populations into and out of the territory.[9] The Geneva Conventions and the Hague Regulations are customary international law and thus universally binding.[10] Plaintiff demands that this Court obstruct accountability for violations of the Geneva Conventions. He would have this Court abrogate the United States' obligations as a High Contracting Party per Common Article 1.[11]

### 3. Israel's Annexation, Confiscation, and Settlement Practices Constitute Crimes Against Humanity and War Crimes

Israel's settlement practice constitutes a war crime and a crime against humanity, violating international humanitarian law principles prohibiting

---

[8] Nevin Kallepalli, "The Disastrous 'Great Israeli Real Estate Event'," Curbed (March 18, 2024). <https://www.curbed.com/article/the-disastrous-great-israeli-real-estate-event.html>. Although the MHI website now appears to have removed the specific listings in the illegal settlements, the listings are viewable through online internet archives such as Wayback Machine, and were still on the website in June 2024.

[9] The Fourth Geneva Convention Relative to the Protection of Civilian Persons in Time of War, 1949, Art. 47, available at https://tinyurl.com/2aa2ujy6; Id. at Art. 49, available at https://tinyurl.com/32htsmyz; Id. at Art. 147, available at https://tinyurl.com/3xt43az6.

[10] International Committee of the Red Cross ("ICRC"), *Customary International Humanitarian Law*, available at https://tinyurl.com/k2at4v4c.

[11] The Fourth Geneva Convention, 1949, Art. 1, available at https://tinyurl.com/mttw42sh.

establishing settlements in occupied territories to confiscate occupied land.[12] The 1907 Hague Regulations IV, to which the U.S. is a party, prohibits land annexation and confiscating private property, and requires the occupying state to only administer and usufruct occupied territory to safeguard their capital.[13] Rule 130 of the ICRC's customary international law database provides that "[s]tates may not deport or transfer parts of their own civilian population into a territory they occupy," and this prohibition is binding customary international law.[14]

In addition to constituting war crimes and crimes against humanity under international humanitarian law, Israel's settlement regime also violates numerous international human rights law treaties.[15] The 1973 U.N. Convention on the Suppression and Punishment of the Crime of Apartheid deems Apartheid an entirely separate crime against humanity.[16] Israel's settlement project violates these long-standing customary international humanitarian and human rights law principles by forcibly transferring its occupying population to the Occupied Territories via its settlements, and by enforcing a regime of racial apartheid.

---

[12] ICRC, *Customary International Humanitarian Law*, available at https://tinyurl.com/k2at4v4c.

[13] 1907 Hague Regulations IV, Respecting the Laws and Customs of War on Land and its Annex: Regulations Concerning the Laws and Customs of War on Land, available at https://tinyurl.com/2hwzu7h5.

[14] ICRC, *International Humanitarian Law Database*, Rule 130, available at https://tinyurl.com/yay4rddd.

[15] The International Convention on the Elimination of All Forms of Racial Discrimination ("ICERD"), to which the U.S. is a party, Article 1 prohibits racial discrimination and condemns racial segregation and apartheid. ICERD, 1965, available at https://tinyurl.com/fjzy2c59.

[16] Convention on the Suppression and Punishment of the Crime of Apartheid, 1976, Art. 1, available at https://tinyurl.com/yc7kfj9x.

In conclusion, this Court cannot legally shield or facilitate violations of international law in such a way as to render itself culpable. As such an exercise of jurisdiction would be *ultra vires*, the TAC must be dismissed.

### C. <u>Plaintiff Cannot Satisfy the Requirements for Class Certification</u>

Class allegations may be dismissed where "there is no reasonable possibility that the plaintiff could establish a community of interest among the potential class members and that individual issues predominate over common questions of law and fact." <u>Blakemore v. Superior Ct.</u>, (2005) 129 Cal. App. 4th 36, 53, citing <u>Clausing v. San Francisco Unified School Dist.</u> (1990) 221 Cal.App.3d 1224, 1234. Where each class member's ability to recover depends on facts unique to them, there is no reasonable possibility the named Plaintiff can plead a prima facie community of interests among class members. <u>Prince v. CLS Transportation, Inc.</u>, (2004)118 Cal. App. 4th 1320, 1323–24. Where each claim requires individually determining each potential class member's right to recover, there is no community of interest, commonality or typicality among potential members. Id.

The TAC demonstrates the need for individualized facts determining each class member's recovery right. Plaintiff Helmann alleges being confronted by John and Jane Does yelling at him, scaring him such that he ultimately decided to go home. TAC ¶¶ 11-3. SCLJ Member #1 alleges no threats, yelling or intimidation, but used a side entrance after learning of it on Whatsapp. TAC ¶¶ 264-7. SCLJ Member #6 attended morning prayers before the protests, remained inside, but when the protests began could not focus on the Torah because of the commotion outside. TAC ¶¶ 291-2. These are just a few examples of the widely varying individual experiences and facts that nullify the purported class's commonality and typicality, and make it impossible for Plaintiff to plead a prima facie community of interests among class members.

//

[CORRECTED] DEFENDANTS' CODEPINK WOMEN FOR PEACE AND CODEPINK ACTION FUND, NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S THIRD AMENDED CLASS ACTION COMPLAINT

# VI.    **DEFENDANTS' MOTION TO STRIKE**

The Court may strike any "redundant, immaterial, impertinent, or scandalous matter" from a complaint. Fed.R.Civ.Proc. 12(f). This is proper where doing so is "necessary to avoid prejudice or will further the interests of judicial efficiency." In re Honest Co., Inc. Sec. Litig., 343 F.R.D. 147, 150 (C.D. Cal. 2022).

The TAC contains scandalous and impertinent allegations against CodePink and co-defendant PYM wholly unrelated to the causes of action here. Their only purpose is to prejudice Defendants before the Court and the public by scandalously maligning them as antisemitic terrorism supporters.[17] Defendants move to strike the following:

a. Paragraph 8's text: "(two organizations that seek to destroy the Jewish State of Israel)." No facts are plead showing CodePink "seek[s] to destroy" Israel; this smear is included to scandalize and prejudice Defendants, has nothing to do with the plead causes of action and is irrelevant.

b. Paragraph 28's text: "that supports the terrorist organization Hamas and opposes the State of Israel." This is strikable for the same reasons as the above. Plaintiff makes no allegation that could support the claim that CodePink "supports" Hamas, it is impertinent to the invoked causes of action, and it is clearly scandalous and intended to prejudice CodePink.

c. Paragraphs 31-33 entirely. These paragraphs broadly allege CodePink "has long supported terrorists" calling to annihilate Jewish people. These rest on CodePink's allegedly attending a conference and meeting with Palestinian elected officials. These accusations are scandalous and defamatory.

---

[17] For example, Plaintiff alleges that CodePink members are long-time supporters of Hamas and have met with Hamas "several times." TAC ¶ 33. This conflates meeting with elected officials from Hamas to gather information on the one hand, and actively supporting it on the other.

[CORRECTED] DEFENDANTS' CODEPINK WOMEN FOR PEACE AND CODEPINK ACTION FUND, NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S THIRD AMENDED CLASS ACTION COMPLAINT

d.  Paragraphs 41-46 entirely. These paragraphs accuse PYM of "terrorizing Jews" and supporting terrorism—all for participating in a conference. These claims have nothing to do with the elements of the plead causes of action and only serve to malign and prejudice the Defendants.

e.  Paragraphs 53-78 entirely. These describe other unrelated protests CodePink and PYM allegedly supported via social media, and argue these protests required additional security and were disruptive. These allegations are irrelevant to the causes of action and included solely to malign and prejudice Defendants. No pled facts show that Defendants are even responsible for the alleged protests.

These sections of the TAC seek to defame Defendants as avowed terrorism supporters, which is directly prejudicial to Defendants. *See, e.g.* <u>Van Der Linden v. Khan</u>, 535 S.W.3d 179, 198 (Tex. App 2017) ("Khan alleges that falsely accusing someone of having admitted that he provided financial support to terrorists constitutes defamation per se. We agree."); <u>Elhanafi v. Fox Television Stations, Inc.</u>, 2012 WL 6569341, *2 (Sup. Ct. Kings County, Dec. 17, 2012) (finding possible defamation where the public "might infer that plaintiffs are terrorists and/or terrorist sympathizers/abettors"). These scandalous and impertinent allegations are irrelevant to the TAC's claims, prejudicial to Defendants, and should be stricken.

## VII.  <u>CONCLUSION</u>

The Court has a gate-keeping function, even at the pleading stage. That function is most needed when political actors dress as litigants and demand that judges turn their courtrooms into stages for ideological or even theological disputes. That is why <u>Iqbal</u> and <u>Twombly</u> demand that Plaintiff's rhetoric be tethered to enough facts to at least make the theories plausible. Those guardrails have been entirely breached here, where Plaintiff's hyperbole recasts a constitutionally protected call for legal protest against an illegal real estate event as a campaign of

[CORRECTED] DEFENDANTS' CODEPINK WOMEN FOR PEACE AND CODEPINK ACTION FUND, NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S THIRD AMENDED CLASS ACTION COMPLAINT

terror. The law requires more of Plaintiff than hyperbole. There must be at least a nod to the reality-based community. Plaintiff has utterly failed at even this most basic requirement, and fails to identify facts making their claims plausible or establishing Article III standing.

Because Plaintiff has failed *four times* to plausibly plead his invoked causes of action, and because further amendment would be a futile waste of the Court's resources, this complaint should be dismissed with prejudice.

Respectfully submitted,

Dated: July 17, 2025                     KLEIMAN / RAJARAM

By:_____
                                        Mark Kleiman

                                        Attorneys for Defendants
                                        CODEPINK WOMEN FOR PEACE
                                        CODEPINK ACTION FUND

26

## **L.R. 11-62 CERTIFICATE OF COMPLIANCE**

The undersigned counsel of record for Defendants CODEPINK WOMEN FOR PEACE CODEPINK ACTION FUND certifies that this brief contains 6,025 words which complies with the limit of L.D. 11-6.1.

Dated:  July 17, 2025                                KLEIMAN / RAJARAM

By: _____
                                                             Mark Kleiman

                                                             Attorneys for Defendants
                                                             CODEPINK WOMEN FOR PEACE
                                                             CODEPINK ACTION FUND

[CORRECTED] DEFENDANTS' CODEPINK WOMEN FOR PEACE AND CODEPINK ACTION FUND, NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S THIRD AMENDED CLASS ACTION COMPLAINT