Thomas B. Harvey (SBN 287198)
tbhlegal@proton.me
LAW OFFICES OF THOMAS B. HARVEY
365 E. Avenida de Los Arboles
# 226
Thousand Oaks, CA 91360
(805)768-4440

Attorney for Defendants
PALESTINIAN YOUTH MOVEMENT
COURTNEY LENNA SCHIRF
REMO IBRAHIM

UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF CALIFORNIA
WESTERN DIVISION

| | |
|---|---|
| RONEN HELMANN, and all others similarly situated<br><br>Plaintiff,<br><br>v.<br><br>CODEPINK WOMEN FOR PEACE, a California entity; CODEPINK ACTION FUND, a California entity; COURTNEY LENNA SCHIRF; REMO IBRAHIM, d/b/a PALESTINIAN YOUTH MOVEMENT; PALESTINIAN YOUTH MOVEMENT; and DOES #1-100,<br><br>Defendants. | Case No. 2:24-cv-05704-SVW-PVC<br><br>DEFENDANTS PALESTINIAN YOUTH MOVEMENT, COURTNEY LENNA SCHIRF, AND REMO IBRAHIM'S REPLY MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S THIRD AMENDED CLASS ACTION COMPLAINT<br><br>Judge:  Hon Stephen V. Wilson<br>Hearing Date:   JULY 28, 2025<br>Time:            1:30 p.m.<br>Courtroom:     10A |

1     Defendant PALESTINIAN YOUTH MOVEMENT, COURTNEY SCHIRF,

2   AND REMO IBRAHIM ("PYM") respectfully submits this Reply Memorandum of

3   Points and Authorities in support of its Motion to Dismiss Plaintiff's Third

4   Amended Class Action Complaint ("TAC"), pursuant to Federal Rule of Civil

5   Procedure Rule 12(b)(6) for failure to state a claim.

6

7

8   Dated:  July 25, 2025          LAW OFFICES OF THOMAS B. HARVEY

9

10                                       By:___/s/___Thomas B. Harvey_____

11                                              Thomas B. Harvey

12
                                         Attorney for Defendants
13                                       PALESTINIAN YOUTH MOVEMENT
                                         COURTNEY LENNA SCHIRF
14                                       REMO IBRAHIM

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFS' PALESTINIAN YOUTH MOVEMENT, COURTNEY SCHIRF, AND REMO IBRAHIM'S REPLY
MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S THIRD AMENDED CLASS
ACTION COMPLAINT

1

## **TABLE OF CONTENTS**

2

3  I.  INTRODUCTION…………………………………..…………………………...7
   II.  ARGUMENT…………………………………………………………………..7

4     A. Plaintiff's FACE Act Claim Fails Under 12(b)(6)…………………..8

5       1.   Plaintiff's Opposition Confirms That PYM's Social Media Posts
            Are Protected Political Speech, Not True Threats………………..8

6         a.) Plaintiff Misapplies *Planned Parenthood* and *Hart*……………8

7         b.) Plaintiff Misapplies *Virgina v. Black*…………………………..9
          c.) PYM's language contains no explicit or implicit threats of

8         violence…………………………………………………………….9

9         d.) Plaintiff's "Pattern of Violence" Evidence Is Insufficient……..10
          e) Plaintiff Ignores *Counterman*'s Recklessness Standard………..10

10    B.  The Court Should Still Strike Plaintiff's Prejudicial and Irrelevant

11    Claims……………………………………………………………………11

12      1. Allegations About Unrelated Events Are Impertinent……………12

       2. Conclusory Allegations Violate *Twombly* Standards…………..… 12
13     3. Scandalous Matter Should Be Stricken…………………..……..… 13

14    C. Plaintiff's Claims Should be Dismissed under 12(b) (2) Because They
      Cannot Establish the Required Causal Connection Under Article III Standing
15    Requirements……………………………………………………………..13

16    D.   Plaintiff Still Fails to Allege a FACE Act Violation………………….14
        1. The Real Estate Advertisement Contained No Religious Content…14
17      2. PYM Targeted a Real Estate Event, Not Religious Worship……...15

18      3. No Evidence of Knowledge About Religious Services……………15
        4. Plaintiffs Have Alleged No Facts Allowing Them to Plausibly Claim

19      That Defendants are Responsible for any Harmful Acts…………..15

20        a.) Post-Event Statements Do Not Establish Ratification……..15
        5. Defendants' Alleged Activities Constitute Protected First

21      Amendment Speech and Advocacy………………………………..…16

22    E. PYM's International Law Arguments Are Relevant and Meritorious……17
        1. Good Faith Basis for Legal Claims Negates Threatening Intent….17
23      2. Protected Opinion on International Law……………………………..18

24      3. No Advocacy for Self-Help or Violence…………………………….19
        4. Acts in the US Can Also Violate International Law………………19
25

26  VII.   CONCLUSION………………………………………………………..20

27

28

**CERTIFICATE OF SERVICE**………………………………………………..**21**

**L.R. 11-6.2 CERTIFICATE OF COMPLIANCE**……………………………....**22**

DEFS' PALESTINIAN YOUTH MOVEMENT, COURTNEY SCHIRF, AND REMO IBRAHIM'S REPLY
MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S THIRD AMENDED CLASS
ACTION COMPLAINT

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009)…………………………………………………16

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 868 (2009)……………..……16

*Counterman v. Colorado,*
    600 U.S. 66 (2023)………………………………………………..11

*Cousins v. Lockyer,*
    568 F.3d 1063 (9th Cir. 2009)……………………………………16

*Dahlia v. Rodriguez,*
    735 F.3d 1060 (9th Cir. 2013)……………………………………16

*Kokkonen v. Guardian Life Ins. Co. of America,*
    511 U.S. 375, 377-78 (1994)……………………………………..13

*Kristensen v. Credit Payment Servs. Inc.,*
    879 F.3d 1010 (9th Cir. 2018)……………………………………14,15

*Lujan v. Defenders of Wildlife,*
    504 U.S. 555, 112 S.Ct. 2130, 119 L.Ed. 2d 351 (1992)……………………13

*New York Times v. Sullivan,*
    376 U.S. 254 (1964)………………………………………………18

*NAACP v. Clairborne Hardware Co.,*
    458 U.S. 886 (1982)………………………………………………8

*Planned Parenthood of Columbia/Willamette, Inc. v.*
    *Am. Coal. of Life Activists,* 290 F.3d 1058 (9th Cir. 2002)……………8,10,11

*Sprewell v. Golden State Warriors,*
    266 F.3d 979 (9th Cir. 2001)……………………………………17

*Vavak v. Abbott Labs., Inc.,*

No. SACV 10-1995 JVS (RZx) 2011 U.S. Dist. LEXIS 111408 (C.D. Cal.

June 17, 2011)……………………………………………………………12

*Virginia v Black*,

538 U. S. 343, 360 (2003)……………………………………………7,9,11

**STATUTES**

18 U.S.C. § 248(d)(1)…………………………………………………………16

**OTHER AUTHORITIES**

Fed.R.Civ.Proc. 12(b)(1)…………………………………………………...13

Fed.R.Civ.Proc. 12(b)(6)……………………………….…....................8, 16

Fed.R.Civ. Proc. 12(f)…………………………………………………..12,13

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

Plaintiff's Opposition (ECF 117) does not cure the TAC's fundamental defects. The Court previously dismissed all claims against the PYM Defendants because the alleged conduct did not meet the FACE Act's statutory requirements and did not amount to a true threat, and they failed to establish vicarious liability. Plaintiff's attempt to revive these claims through inflammatory rhetoric, conclusory allegations, and irrelevant historical context fails.

Instead, Plaintiff's Opposition confirms what Defendants argued in their motion to dismiss: this case seeks to punish protected political speech criticizing Israeli settlement policy by recasting ordinary protest organizing as criminal threats. Despite adding allegations to the Third Amended Complaint ("TAC") Plaintiff still cannot transform PYM's social media posts into actionable "true threats" to remove them from First Amendment protection or establish the required principal-agent relationship for vicarious liability.

Plaintiff's heavy reliance on *Planned Parenthood of Columbia/Willamette v. American Coalition of Life Activists, Virginia v Black,* and *United States v. Hart* undermines their case, as those decisions involved fundamentally different circumstances that are absent here.

In short, Plaintiff's Opposition attempts to salvage a fatally deficient Complaint by distorting Defendants' protected speech into "true threats" and manufacturing intent to interfere with religious exercise. But repackaging conclusory allegations cannot cure the absence of plausible facts showing (1) a serious expression of intent to harm, (2) targeting of religious (not political) activity, or (3) proximate causation between PYM's posts and third-party conduct. The Court should dismiss the Third Amended Complaint ("TAC") with prejudice.

## II.    ARGUMENT

DEFS' PALESTINIAN YOUTH MOVEMENT, COURTNEY SCHIRF, AND REMO IBRAHIM'S REPLY MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S THIRD AMENDED CLASS ACTION COMPLAINT

### A. **Plaintiff's FACE Act Claim Fails Under 12(b)(6)**

#### 1. **Plaintiff's Opposition Confirms That PYM's Social Media Posts Are Protected Political Speech, Not True Threats**

Plaintiff's Opposition inadvertently demonstrates that PYM's posts constitute core political speech protected by the First Amendment. Plaintiff acknowledges that "criticizing Israeli policy by labeling its conduct 'land theft' and organizing a protest to express that viewpoint is activity that squarely falls within First Amendment activity." (ECF 117 at 2). This concession is fatal to Plaintiff's case.

##### a. **Plaintiff Misapplies *Planned Parenthood* and *Hart***

Plaintiff relies heavily on *Planned Parenthood*, 290 F.3d 1058 (9th Cir. 2022), but the analogy fails. Even under Plaintiff's preferred standard, a true threat must constitute "a serious expression of intent to inflict bodily harm." *Id*. at 1077. There, "GUILTY" posters named specific doctors alongside a history of assassinations. Here, PYM's posts criticized Israeli land sales—***not individuals***—and lacked any reference to violence. (ECF 117 at 5–6) The posts are indistinguishable from the protected advocacy in *NAACP v. Claiborne Hardware*, 458 U.S. 886 (1982) ("no justice, no peace").

The critical distinguishing factor in *Planned Parenthood* was that three abortion doctors who had previously appeared on virtually identical "WANTED" posters ***had actually been murdered***. 290 F.3d at 1063-64. The Ninth Circuit emphasized that this pattern of actual killings gave the posters their threatening meaning. *Id*. at 1086. Nothing remotely close to that occurred at the synagogue.

In *United States v. Hart*, 212 F.3d 1067, 1070 (8th Cir. 1999) the defendant physically parked Ryder trucks that blocked clinic entrances, preventing access to the facilities. The court found this conduct threatening because: (1) it involved physical blockage of clinic access; (2) Ryder trucks had an immediate, universally understood connection to the Oklahoma City bombing; and (3) the defendant's own

statements suggested he intended the trucks to be perceived as bomb threats. *Id*. at
1072-73.

PYM's conduct involved none of these elements. PYM posted on social media
about a planned protest—pure speech protected by the First Amendment. Unlike
*Hart's* trucks, PYM's posts did not physically obstruct anyone or anything. And
unlike the Ryder truck's immediate association with the Oklahoma City bombing,
the language in PYM's posts lacks any direct symbolic connection to violence.

### b.    Plaintiff Misapplies *Virgina v. Black*

Plaintiff's reliance on *Virginia v. Black* 538 U.S. 343 (2003) is misplaced. In
*Black*, the Supreme Court addressed cross burning as a symbol that carries a
uniquely violent and terroristic connotation due to its historical use by the Ku Klux
Klan. The Court emphasized that cross burning was "a particularly virulent form of
intimidation" and that its performance alone could be sufficient to instill fear
because of its longstanding association with racial violence. *Id*. at 363.

No such inference can reasonably be drawn from PYM's use of generalized
political slogans like "BELLY OF THE BEAST" or "OUR LAND IS NOT FOR
SALE." These phrases, unlike a burning cross, are not inherently threatening and
have no comparable history of association with violence. Nor was PYM's social
media post directed at a specific individual or group in a way that would imply a
personal threat. The medium, content, and context of the expression here distinguish
it sharply from the act at issue in *Black*.

### c.    PYM's language contains no explicit or implicit threats of violence.

PYM posted on social media about a planned protest—pure speech protected
by the First Amendment. The phrases Plaintiff challenges—"must be confronted,"
"no justice, no peace," and "belly of the beast"—are standard political rhetoric used
in countless protest contexts without any threatening meaning. Unlike *Hart's* trucks,

PYM's posts did not physically obstruct anyone or anything. And unlike the Ryder truck's immediate association with the Oklahoma City bombing, the language in PYM's posts lacks any direct symbolic connection to violence.

### d.    Plaintiff's "Pattern of Violence" Evidence Is Insufficient

Plaintiff's chart of allegedly violent incidents at similar events actually undermines their case.  Most incidents involved minimal violence (2-3 arrests out of hundreds or thousands of protesters), and many involved violence by counter-protesters rather than pro-Palestine demonstrators. This sparse record cannot establish the type of systematic pattern of violence that gave meaning to the materials in *Planned Parenthood*.

Moreover, Plaintiff provides no evidence that PYM organized, controlled, or was even present at most of these other events. Holding PYM responsible for the actions of unrelated protesters at different events organized by different people would violate basic principles of individual responsibility and First Amendment protection.

Plaintiff's attempt to transform these common protest phrases into threats through "context" fails because they provide no historical evidence that these specific phrases have been associated with violence when used by PYM or similar organizations. This distinguishes the case from both *Planned Parenthood* and *Hart*, where the threatening symbols had direct historical connections to actual violence.

Here, Plaintiff provides no evidence that attendees of previous synagogue real estate events were killed or even seriously harmed, let alone that they were harmed by PYM Defendants. The incidents Plaintiff cites involve minor altercations, brief arrests, and property damage—***not the systematic murder*** that gave meaning to the "WANTED" posters in *Planned Parenthood*. Without this crucial factual predicate, Plaintiff's analogy fails entirely.

### e.  Plaintiff Ignores *Counterman*'s Recklessness Standard

Critically, Plaintiff ignores *Counterman v. Colorado*, 600 U.S. 66 (2023), which requires proof that Defendants "consciously disregarded" a substantial risk their speech would be seen as threatening. The TAC alleges no facts showing PYM intended or foresaw violence.

Plaintiff argues that PYM's post constitutes a true threat based on its political rhetoric, context, and alleged consequences. But under *Counterman*, a "true threat" requires subjective recklessness: that the speaker consciously disregarded a substantial risk that their statement would be interpreted as a threat of unlawful violence. *Id*. at 69. Nothing in the TAC alleges or plausibly supports that mental state.

The slogans cited ("OUR LAND IS NOT FOR SALE," "NO JUSTICE, NO PEACE," "BELLY OF THE BEAST") are commonplace protest rhetoric and do not express an intent to inflict bodily harm. As in *Virginia v. Black*, 538 U.S. 343, 360 (2003), the context must transform such speech into a serious expression of unlawful violence. Plaintiff attempts to draw analogies to *Planned Parenthood* but there, the defendants identified specific doctors, published home addresses, and invoked a pattern of prior assassinations. That is not remotely analogous to PYM's generalized political post.

## B.  The Court Should Still Strike Plaintiff's Prejudicial and Irrelevant Claims

Plaintiff's opposition fails to address Defendants' motion to strike scandalous and impertinent allegations that serve only to prejudice Defendants in the eyes of the Court. The TAC contains extensive allegations about PYM's alleged support for terrorism and participation in unrelated conferences and protests that have no bearing on the elements of Plaintiff's FACE Act claim.

The Ninth Circuit has held that motions to strike serve "to avoid the expenditure of time and money that must arise from litigating spurious issues by

dispensing with those issues prior to trial." *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993). Under this standard, "immaterial matter is that which has no essential or important relationship to the claim for relief or the defenses being pleaded." *Id*. Courts within the Ninth Circuit routinely strike allegations that "could have no possible bearing on the subject matter of the litigation." *Colaprico v. Sun Microsystems, Inc*., 758 F. Supp. 1335, 1339 (N.D. Cal. 1991). Here, the extensive allegations about PYM's alleged support for terrorism and participation in unrelated conferences force Defendants to litigate spurious issues about their general political affiliations rather than the specific question of whether their social media posts about the Adas Torah real estate event constituted true threats under FACE Act.

### 1. Allegations About Unrelated Events Are Impertinent

Plaintiff describes conferences, protests, and activities that occurred at different times, in different locations, involving different people, and addressing different issues. (TAC ¶¶ 41-46,70-78 These allegations cannot establish that PYM's social media posts about the Adas Torah real estate event constituted true threats. Federal Rule of Civil Procedure 12(f) permits striking matter that is "impertinent", "scandalous", and "immaterial"— *In re Honost Co., Inc. Sec. Litig.,* 343 F.R.D. 147, 150 (C.D. Cal. 2022). These allegations serve no purpose other than to prejudice the court against PYM as extremist or terrorist-supporting.

### 2. Conclusory Allegations Violate *Twombly* Standards

Plaintiff's assertion that "BELLY OF THE BEAST" refers to a synagogue is alleged "upon information and belief" without any factual basis (TAC ¶214). Under *Twombly*, allegations "upon information and belief" are permitted only where the facts "are peculiarly within the possession and control of the defendant, or where the belief is based on factual information that makes the inference" plausible. *Vavak v. Abbott Labs., Inc.*, 2011 U.S. Dist. LEXIS 111408, at *6 (C.D. Cal. June 17, 2011). Here, the meaning of PYM's phrase is not within PYM's control—it is a matter of

public interpretation that Plaintiff could research independently. Plaintiff provided no support for their interpretation.

Plaintiff's attempt to characterize PYM's posts as "blood libel" fails as a matter of law and fact. Plaintiff's own sources define blood libel as false accusations that "Jews killed Christian, and especially Christian children." (ECF 112 at 10, fn.7). The sources consistently describe blood libel as involving ritualistic murder of children, consumption of blood, and similar horrific accusations. (*Id.*)

PYM's posts contain no references to children, ritual murder, or blood consumption. Criticizing real estate transactions as violations of international law— even if incorrect—bears no resemblance to historical blood libel accusations. Plaintiff's assertion that "the latest blood libel falsely accuses Jews and Israelis of selling real estate stolen from Palestinians" (TAC ¶ 164) is a conclusory legal statement unsupported by any factual allegations, which this Court should disregard under *Twombly* and *Iqbal*. As such, the allegation is a naked assertion designed to malign Defendants and should be stricken.

### 3. Scandalous Matter Should Be Stricken

Courts routinely strike allegations that accuse parties of terrorism or criminal activity without adequate factual support. The TAC's repeated accusations that PYM supports terrorism, celebrates violence, and engages in blood libel constitute precisely the type of scandalous matter Rule 12(f) is designed to address. These allegations prejudice Defendants by associating them with terrorism and antisemitism without any connection to the legal claims at issue.

### C. Plaintiff Cannot Establish the Required Causal Connection Under Article III Standing Requirements Under 12(b)(1)

Federal courts have limited jurisdiction, *see*, Art. III, U.S. Const., and plaintiffs must prove their case lies within a court's jurisdiction. *Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 377-78 (1994). Plaintiff must

establish he has (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-561 (1992). Article III requires that Plaintiff's injury be "fairly traceable" to Defendants' conduct, not the independent actions of third parties. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). Here, the alleged obstruction was caused by unknown "Does 1-100" who made independent decisions to travel to the synagogue and engage in allegedly obstructive conduct.

Plaintiff's reliance on *Kristensen v. Credit Payment Services* is misplaced because that case involved a direct agency relationship where the defendant company's agents acted within the scope of their authority. 879 F.3d 1010, 1014 (9th Cir. 2018). Even if violence occurred, it was perpetrated by third parties not alleged to be controlled by PYM. The TAC fails to link PYM's social media post to any specific act of force or obstruction. Plaintiff's theory of liability rests on speculation and guilt by association.

Here, Plaintiff alleges no facts establishing that the "Does 1-100" were agents of PYM or subject to PYM's control. The TAC does not allege that PYM communicated with, controlled, or supervised the individuals who allegedly engaged in misconduct. Plaintiff fails to plead facts showing that PYM Defendants directed, authorized, or ratified the acts of any individuals who committed violence. The TAC merely alleges that PYM posted a call to protest and, after the event, issued general political statements. This does not establish the type of principal-agent relationship required to impose liability. See *Kristensen v. Credit Payment Servs.*, 879 F.3d 1010, 1014 (9th Cir. 2018).

### D. <u>Plaintiff Still Fails to Allege a FACE Act Violation</u>

DEFS' PALESTINIAN YOUTH MOVEMENT, COURTNEY SCHIRF, AND REMO IBRAHIM'S REPLY MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S THIRD AMENDED CLASS ACTION COMPLAINT

A violation of the FACE Act's religious exercise subsection therefore requires that Defendants act "*because* [Plaintiff] is exercising or is seeking to exercise his or her religious freedom." *New Beginnings Ministries v. George*, 2018 WL 11378829 *3. Plaintiff has not plead facts making such a specific intent plausible in this case.

### 1. The Real Estate Advertisement Contained No Religious Content

The advertisement for the real estate event made no mention of religious services, religious obligations, or Judaism. (TAC at 27). It was presented as a commercial real estate opportunity with "special discounts exclusive to event participants." Without any indication that religious activities were involved, PYM could not have intended to interfere with religious freedom.

### 2. PYM Targeted a Real Estate Event, Not Religious Worship

PYM's posts specifically targeted what they characterized as an illegal real estate sale, not religious worship. The posts use language like "real estate event selling homes" and "land theft"—commercial and political terminology, not religious language. This demonstrates that PYM's intent was to protest what they viewed as illegal commercial activity, not to interfere with religious practice.

### 3. No Evidence of Knowledge About Religious Services

Plaintiff alleges that the synagogue hosts daily prayer services, but provides no evidence that PYM knew about these services or intended to interfere with them. The protest was scheduled for the same time as the real estate event (12 PM), not during regular religious services.

### 4. Plaintiffs Have Alleged No Facts Allowing Them to Plausibly Claim That Defendants are Responsible for any Harmful Acts

The Court's Order dismissing the FACE Act claim against PYM Defendants established that vicarious liability apply, that PYM can only be held liable for the acts of their agents acting within the scope of their authority, and that there were

three theories of authority: actual, apparent, and ratification. (ECF 105 at 25-32). The Court previously held that Plaintiffs had failed to sufficiently allege an agency relationship between PYM and any protesters at the Synagogue. (ECF 105 at 32).

### a.) Post-Event Statements Do Not Establish Ratification

Plaintiff argues that PYM's post-event statements constitute "ratification" of the obstructive conduct. However, the statements Plaintiff cites express general support for the "pro-Palestine movement" and opposition to what PYM characterized as illegal land sales. (TAC ¶ 337). These statements do not specifically endorse obstruction of religious services or any other conduct violating the FACE Act.

Ratification requires that the principal "affirm a prior act done by another" with knowledge of the specific act being ratified. *Kristensen*, 879 F.3d at 1014. General statements supporting Palestinian rights or the "LA community" cannot ratify specific FACE Act violations that PYM never acknowledged occurred. Post hoc commentary is not ratification. Without plausible allegations of direction or control, Plaintiff cannot impose vicarious liability.

### 5. Defendants' Alleged Activities Constitute Protected First Amendment Speech and Advocacy

Demonstrations, marches, and picketing are undeniably protected First Amendment activities. *Collins v. Jordan* 110 F.3d 1363, 1371 (9th Cir. 1996). Even where protected First Amendment speech becomes intertwined with someone's later possibly illegal conduct is to punish the conduct, not the speech. *Id*. The FACE Act explicitly forbids construing its language to capture "expressive conduct (including peaceful picketing or other peaceful demonstration) protected from legal prohibition by the First Amendment to the Constitution[.]" 18 U.S.C. § 248(d)(1). Plaintiff

therefore cannot plausibly allege a violation of either statute based on Defendants' protected speech.

A district court must dismiss a claim if it "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. Proc. 12(b)(6). Rule 8(a) of the Federal Rules of Civil Procedure requires a plaintiff to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Although "a complaint need not contain detailed factual allegations . . . it must plead enough facts to state a claim to relief that is plausible on its face." *Cousins v. Lockyer*, 568 F.3d 1063, 1067-68 (9th Cir. 2009) (internal quotation marks and citations omitted). A claim is facially plausible only when it "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). "[C]onclusory allegations of law and unwarranted inferences are insufficient to avoid . . . dismissal" under this standard. *Cousins*, 568 F.3d at 1067 (internal quotation marks omitted). A court may reject as implausible allegations that are too speculative to warrant further factual development. *Dahlia v. Rodriguez*, 735 F.3d 1060, 1076 (9th Cir. 2013). The allegations must be enough to raise a right to relief above the speculative level. *Twombly* at 548. The court need not accept allegations that are merely conclusory, are unwarranted deductions, or unreasonable inferences. *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

## E. **PYM's International Law Arguments Are Relevant and Meritorious**

Plaintiff's opposition fails to meaningfully respond to PYM's argument that this Court lacks jurisdiction to facilitate the violation of international law. Plaintiff seeks to use the FACE Act to shield conduct that directly supports the sale of land in illegal settlements in occupied territory—conduct that multiple international bodies have characterized as war crimes and crimes against humanity.

As detailed in the motion to dismiss, this Court should not become a forum for enforcing the purported religious rights of individuals engaged in what international law deems illegal population transfers and property confiscations. The Court's role is not to validate activity that violates U.S. treaty obligations or international humanitarian law. That Plaintiff seeks to characterize political protest against such conduct as a violation of the FACE Act only underscores the fundamental misapplication of the statute and the Court's jurisdiction.

### 1. Good Faith Basis for Legal Claims Negates Threatening Intent

PYM's characterization of the real estate event as involving "illegal" sales has substantial basis in international law scholarship and United Nations resolutions. The International Court of Justice ruled in 2024 that Israel's occupation and settlement regime is unlawful.[1] Multiple international law experts have characterized settlement real estate sales as violations of the Fourth Geneva Convention.[2] Whether or not this Court agrees with these interpretations, their existence demonstrates that PYM's posts were based on good-faith legal arguments, not threats of violence.

### 2. Protected Opinion on International Law

---

[1] United Nations, OHCHR, Press Release, "Experts hail ICJ declaration on illegality of Israel's presence in the occupied Palestinian territory as "historic" for Palestinians and international law," July 30, 2024, available at https://tinyurl.com/4bptuzka.

[2] The Fourth Geneva Convention Relative to the Protection of Civilian Persons in Time of War, 1949, Art. 47, available at https://tinyurl.com/2aa2ujy6; The Fourth Geneva Convention Art. 49, available at https://tinyurl.com/32htsmyz; The Fourth Geneva Convention, 1949, Art. 147, available at https://tinyurl.com/3xt43az6.

[2] International Committee of the Red Cross ("ICRC"), *Customary International Humanitarian Law*, available at https://tinyurl.com/k2at4v4c.

The Supreme Court in *New York Times v. Sullivan* established that "debate on public issues should be uninhibited, robust, and wide-open, and that it may well include vehement, caustic, and sometimes unpleasantly sharp attacks on government and public officials." 376 U.S. 254, 270 (1964). The Court emphasized the need to preserve "the opportunity for free political discussion, to the end that government may be responsive to the will of the people and that changes, if desired, may be obtained by peaceful means." *Id*. at 301. Plaintiff's allegations about PYM's criticism of Israeli settlement policy are precisely the type of political speech *Sullivan* was designed to protect. These allegations serve only to chill PYM's exercise of core First Amendment rights by forcing them to defend their political viewpoints rather than the specific conduct alleged in this FACE Act claim.

### 3. No Advocacy for Self-Help or Violence

Critically, PYM never advocated violence or "self-help" remedies for the alleged international law violations. The posts called for protest and confrontation through legal means—exactly the type of political advocacy the First Amendment protects. Plaintiff's characterization of PYM's legal arguments as demonstrating "a right to engage in self-help" (ECF 117 at 15) misrepresents both PYM's posts and Defendants' legal arguments.

### 4. Acts in the US Can Also Violate International Law

Defendants do not ask this Court to rule on the legality of Israeli settlements under international law. However, it is clear that acts on US soil can violate international law, contrary to Plaintiff's thinking (ECF 117 at 15). Defendants ask only that the Court recognize that political speech criticizing foreign government actions—even using strong language—cannot constitute criminal threats under the First Amendment and FACE Act. This presents a straightforward question of domestic constitutional and statutory interpretation within this Court's jurisdiction.

When Defendants labelled the MHI real estate sale an international war crime, they were not engaging in hyperbole, fearmongering, or antisemitism, but rather invoking established principles of international law. As the International Court of Justice ruled in 2024, Israel's occupation of Gaza and the West Bank, along with the associated settlement regime, annexation, and use of natural resources, is unlawful.[3]

## III.    Conclusion

Plaintiffs have now filed four complaints and still fail to plausibly allege a claim against the PYM Defendants. The Court should dismiss the Third Amended Complaint with prejudice and strike the scandalous allegations identified above.

Respectfully submitted,

Dated: July 25, 2025

LAW OFFICES OF THOMAS B. HARVEY

By:__/s/___Thomas B. Harvey_____
        Thomas B. Harvey

Attorney for Defendants
PALESTINIAN YOUTH MOVEMENT
COURTNEY LENNA SCHIRF
REMO IBRAHIM

---

[3] United Nations, OHCHR, Press Release, "Experts hail ICJ declaration on illegality of Israel's presence in the occupied Palestinian territory as "historic" for Palestinians and international law," July 30, 2024, available at https://tinyurl.com/4bptuzka.

DEFS' PALESTINIAN YOUTH MOVEMENT, COURTNEY SCHIRF, AND REMO IBRAHIM'S REPLY MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S THIRD AMENDED CLASS ACTION COMPLAINT

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on July 25, 2025, I electronically filed the foregoing with

the Clerk of the Court for the United States District Court, Central District of

California by using the CM/ECF System.

Participants in the case who are registered CM/ECF Users will be served by

the CM/ECF System.

LAW OFFICES OF THOMAS B. HARVEY


By:__/s/___Thomas B. Harvey_____
        Thomas B. Harvey

Attorney for Defendants
PALESTINIAN YOUTH MOVEMENT
COURTNEY LENNA SCHIRF
REMO IBRAHIM

DEFS' PALESTINIAN YOUTH MOVEMENT, COURTNEY SCHIRF, AND REMO IBRAHIM'S REPLY
MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S THIRD AMENDED CLASS
ACTION COMPLAINT

## **L.R. 11-6.2 CERTIFICATE OF COMPLIANCE**

The undersigned, counsel of record for Defendant PYM certifies that this brief contains 3,859 words, which complies with the word limit of L.R. 11-6.1.

Dated: July 25, 2025

LAW OFFICES OF THOMAS B. HARVEY

By:__/s/___Thomas B. Harvey_____
       Thomas B. Harvey

Attorney for Defendants
PALESTINIAN YOUTH MOVEMENT
COURTNEY LENNA SCHIRF
REMO IBRAHIM

DEFS' PALESTINIAN YOUTH MOVEMENT, COURTNEY SCHIRF, AND REMO IBRAHIM'S REPLY MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S THIRD AMENDED CLASS ACTION COMPLAINT