Mark Kleiman (SBN 115919)
mark@krlaw.us
KLEIMAN / RAJARAM
12121 Wilshire Blvd., Ste. 810
Los Angeles, CA 90025
Tel: 310-392-5455 / Fax: 310-306-8491

Collin Poirot (NY 5673405)
(pro hac vice)
cpoirot.law@gmail.com
2603 Oak Lawn, Suite 300
Dallas TX 75219
214-392-2281

Attorneys for Defendants
CODEPINK WOMEN FOR PEACE
CODEPINK ACTION FUND

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**WESTERN DIVISION**

| | |
|---|---|
| RONEN HELMANN, on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>CODEPINK WOMEN FOR PEACE, a California entity, CODEPINK ACTION FUND, a California entity; COURTNEY LENNA SCHIRF; REMO IBRAHIM aka REMO ABBOUD; PALESTINIAN YOUTH MOVEMENT; and DOES 1-100,<br><br>Defendants. | CASE NO: 2:24-cv-05704-SVW-PVC<br><br>Honorable Stephen V. Wilson<br>Courtroom 10A<br><br>DEFENDANTS' CODEPINK WOMEN FOR PEACE AND CODEPINK ACTION FUND NOTICE OF MOTION AND REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFFS' THIRD AMENDED COMPLAINT [FILED WITH PROPOSED ORDER]<br><br>**Judge:** **Hon. Stephen V. Wilson**<br>**Hearing Date:** **July 28, 2025**<br>**Hearing Time:** **1:30 PM**<br>**Place:** **Courtroom 10A** |

Defendant CODEPINK WOMEN FOR PEACE and CODEPINK ACTION FUND ("CODEPINK") respectfully submits this Reply Memorandum of Points and Authorities in support of its Motion to Dismiss Plaintiffs' Third Amended Complaint ("TAC").

RESPECTFULLY SUBMITTED,

Date: July 25, 2025

By: ___/s/__Collin Poirot________

Collin Poirot
Attorney for Defendants
CODEPINK WOMEN FOR PEACE
CODEPINK ACTION FUND

# TABLE OF CONTENTS

TABLE OF CONTENTS ....................III

REPLY MEMORANDUM OF POINTS AND AUTHORITIES ....................1

I. Introduction ....................1

II. Argument ....................1

A. This Court Has Not Ruled on the Specific Intent Requirement for a FACE Act Violation ....................1

B. Defendants' Alleged Conduct is Still Protected by the First Amendment ......2

C. Plaintiff's Claim is Barred by International Law and the Political Question Doctrine Does Not Apply ....................7

III. Conclusion ....................8

CERTIFICATE OF SERVICE ....................10

L.R. 11-6.2 CERTIFICATE OF COMPLIANCE ....................11

## REPLY MEMORANDUM OF POINTS AND AUTHORITIES

### I. Introduction

Plaintiff's opposition to CodePink defendants' motion to dismiss rests on several misapprehensions of settled legal principles, this Court's rulings, and CodePink's legal arguments. First, the Court has not ruled on whether Plaintiff has alleged facts sufficient to plausibly plead the specific intent required under the FACE Act. Second, there is no "political question" raised by Defendants' Motion to Dismiss. We are not asking the Court to address the propriety of what Congress or the Executive has done; on the contrary, we are asking the Court to proceed in accordance with a duly signed treaty, Executive Branch declarations about West Bank settlements, and adjudicated findings about those settlements.

### II. Argument

#### A. This Court Has Not Ruled on the Specific Intent Requirement for a FACE Act Violation

Plaintiff's law of the case arguments misread this Court's prior order. Although this Court previously found that Plaintiff plausibly alleged a violation of the FACE Act, it did not rule on the question of the intent required for such a violation, raised in the CodePink Defendants' prior motion, (Dkt. 78, pp. 20-21, 24). As such, there is no binding law of the case on this question.

The specific intent requirement for a FACE Act violation is made plain by the act's legislative history, and requires Plaintiff to allege that Defendants

engaged in physical obstruction, violence, or threats *because* of Plaintiff's religious exercise. New Beginnings Ministries v. George, 2018 WL 11378829, *15 (S.D.O.H. 2018) (citing Lotierzo v. A Woman's World Med. Ctr., 278 F.3d 1180, 1182 (11th Cir. 2002) (citations omitted)).

Plaintiff appears to agree with Defendant's interpretation of the FACE Act's intent requirement as well, and notes in his Opposition: "The FACE Act does not ask whether the underlying event is laudable, it asks only whether defendants used threats *to impede religious exercise*" (emphasis added). Dkt. No. 116, p. 3. In this case, Plaintiff's own pleadings show the exact opposite—CodePink was *unaware* of any religious services occurring at the time of the real estate sale, and only intended to support advocacy against the real estate event. Plaintiff has utterly failed to plausibly allege that CodePink made the social media posts in question in order "to impede religious exercise."

**B. Defendants' Alleged Conduct is Still Protected by the First Amendment**

Plaintiff relies heavily on Planned Parenthood, 290 F.3d 1058, but the analogy fails. Even under Plaintiff's preferred standard, a true threat must constitute "a serious expression of intent to inflict bodily harm." 290 F.3d at 1077. There, "GUILTY" posters named specific doctors alongside a history of assassinations. Here, CodePink's alleged symbolic speech—an inverted red triangle—is not alleged to have been connected any targeted killings or hate crimes

in the United States. Rather, Plaintiffs merely allege that one specific organization—Hamas—has used the symbol in a particular way within the specific context of its operations in Gaza.

The critical distinguishing factor in Planned Parenthood was that three abortion doctors who had previously appeared on virtually identical "WANTED" posters ***had actually been murdered, in the United States***. 290 F.3d at 1063-64. The Ninth Circuit emphasized that this pattern of actual killings gave the posters their threatening symbolic meaning: "ACLA had a 'wanted'-poster type in the past that is a pattern that is recognized, more than a decade later, and doctors who appeared on the posters were not treated with milk and cookies." Id. at 1086. The symbolic death threat from being pictured on a “WANTED” poster was, in that case, very widely understood by the public and the targeted doctors.

**a) CodePink’s language contains no explicit or implicit threats of violence.**

CodePink’s conduct involved none of these elements. CodePink posted on social media calling for advocacy and promoting a planned protest—pure speech protected by the First Amendment. The symbol on which Plaintiff’s case entirely relies is, by admission of their own citation, commonly used “innocuously.” Unlike Hart's trucks, CodePink’s posts did not physically obstruct anyone or anything. And unlike the Ryder truck's immediate association with the Oklahoma City bombing, the language in CodePink’s posts is innocuous.

**b) Plaintiff's "Pattern of Violence" Evidence Is Insufficient**

Plaintiff's chart of allegedly violent incidents at similar events actually undermines their case. Most incidents involved two or three arrests out of hundreds or thousands of protesters, and many involved violence by counter-protesters rather than pro-Palestine demonstrators, as is the case here. This sparse record cannot establish the type of systematic pattern of violence that gave meaning to the materials in Planned Parenthood.

Moreover, Plaintiff provides no evidence that CodePink organized, controlled, or was even present at most of these other events. Holding CodePink responsible for the actions of unrelated protesters at different events organized by different people would violate basic principles of individual responsibility and First Amendment protection.

Here, Plaintiff provides no evidence that attendees of previous Israeli real estate events held in synagogues—which were also the target of heated and high-profile protests—were killed or even harmed, let alone that they were harmed by CodePink. The incidents Plaintiff cites involve minor altercations, brief arrests, and property damage—***not the systematic murder*** that gave meaning to the "WANTED" posters in Planned Parenthood. Without this crucial factual predicate, Plaintiff's analogy fails entirely.

1. **Plaintiff Ignores Counterman's Recklessness Standard**

Critically, Plaintiff ignores Counterman v. Colorado, 600 U.S. 66 (2023), which requires proof that Defendants "consciously disregarded" a substantial risk their speech would be seen as threatening. The TAC alleges no facts showing CodePink intended or foresaw violence.

Plaintiffs argue that CodePink's post constitutes a true threat based on its symbolic, non-verbal meaning. But under Counterman v. Colorado, 600 U.S. 66 (2023), a "true threat" requires subjective recklessness: that the speaker consciously disregarded a substantial risk that their statement would be interpreted as a threat of unlawful violence. Nothing in the TAC alleges or plausibly supports that mental state, and the overt non-violence of the accompanying call-to-action ("help us advocate") renders the inference of such a mindset implausible. The relatively peaceful and subdued call to action immediately undermines any threat of violence allegedly associated with the accompanying symbol.

As in Virginia v. Black, 538 U.S. 343, 359 (2003), the context must transform such speech into a serious expression of unlawful violence. Plaintiffs attempt to draw analogies to Planned Parenthood v. ACLA, 290 F.3d 1058 (9th Cir. 2002), but there, the defendants identified specific doctors, published home addresses, and invoked a pattern of prior assassinations. That is not remotely analogous to CodePink's non-violent call to action, modeled on many other prior

protests of similar events which are not alleged to have resulted in bodily injury and certainly not in assassination.

2. **Plaintiff Wrongly Relies on Hart**

In United States v. Hart, the defendant physically parked Ryder trucks that blocked clinic entrances, preventing access to the facilities. 212 F.3d at 1070-71. The court found this conduct threatening because: (1) it involved physical blockage of clinic access; (2) Ryder trucks had an immediate, universally understood connection to the Oklahoma City bombing; and (3) the defendant's own statements suggested he intended the trucks to be perceived as bomb threats. Id. at 1072-73.

CodePink's conduct involved none of these elements. CodePink posted on social media about a planned protest—pure speech protected by the First Amendment. Unlike Hart's trucks, CodePink's posts did not physically obstruct anyone or anything. And unlike the Ryder truck's immediate association with the Oklahoma City bombing, the only alleged symbolic language in CodePink's post—even according to Plaintiff's own citations— can just as plausibly be "innocuous[s]." Finally, there is not a single fact alleged that could show CodePink intended the social media posts to be perceived as threats of assassination or violence.

In addition to failing the Twombly/Iqbal standard, Plaintiff also cites no law countering Defendant's arguments that this "aggressive" protest is protected by the

First Amendment. Gerber v. Herskovitz, 14 F.4th 500, 504, 508-509 (6th Cir. 2021) (First Amendment protected regular, prolonged protests in front of a synagogue routinely held during scheduled worship, even with inflammatory signs saying "Resist Jewish Power."). Plaintiff also fails to counter Defendant's argument that "offensive and coercive" speech is First Amendment protected activity, including "the use of speeches, marches, and threats of social ostracism." Planned Parenthood, 290 F.3d at 1070, as amended (July 10, 2002) (citing NAACP v. Clairborne Hardware Co., 458 U.S. 886, 933 (1982)).

### C. Plaintiff's Claim is Barred by International Law and the Political Question Doctrine Does Not Apply

Plaintiffs' opposition fails to meaningfully respond to Defendants' argument that this Court lacks jurisdiction to facilitate a violation of international law. Plaintiffs seek to use the FACE Act to shield conduct that directly supports the sale of racially-restricted land in illegal settlements in occupied territory—conduct that multiple international bodies have characterized as war crimes and crimes against humanity. (Dkt. 114, pp. 20-22).

As detailed in CodePink's Motion to Dismiss, this Court should not become a forum for violating treaty obligations by enforcing violations of what international law has adjudged illegal population transfers and property confiscations. The Court's role is not to validate activity that violates U.S. treaty obligations or international humanitarian law. That Plaintiffs seek to characterize

political protest against such conduct as a violation of the FACE Act only underscores the fundamental misapplication of the statute and the Court's jurisdiction.

The political question doctrine is also inapplicable here, and Plaintiffs either fail to comprehend or disingenuously misrepresent Defendants' international law argument. Defendants do not ask this court to make a *finding* that Israel's settlement regime constitutes a war crime because this finding *has already been made*. Both the U.S.'s position at the time of filing and the ICJ's 2024 ruling declare Israel's settlement regime illegitimate under international law.[1] The U.S.'s position at the time of the Complaint's filing controls, as Plaintiff "bears the burden of establishing standing as of the time [s]he brought th[e] lawsuit and maintaining it thereafter." Carney v. Adams, 592 U.S. 53, 59 (2020). Defendants ask this court not to disturb these findings as international law binds the court's jurisdiction.

## III. Conclusion

Because this court has not ruled on the mental state required for a violation of the FACE Act's religious exercise subsection; because Plaintiff has failed to

[1] Matthew Lee, Associated Press, "Biden Administration restores U.S. policy calling Israeli settlements 'illegitimate' under international law," Feb. 23, 2024, available at https://tinyurl.com/3k3k46vh; United Nations, OHCHR, Press Release, "Experts hail ICJ declaration on illegality of Israel's presence in the occupied Palestinian territory as 'historic' for Palestinians and international law," July 30, 2024, available at https://tinyurl.com/4bptuzka.

allege that CodePink acted with the requisite specific intent or reckless mens rea; and because CodePink's posts are still covered by the First Amendment, this case should be dismissed. Because Plaintiff has now attempted *four times* to successfully plead his causes of action and has failed to do so, dismissal should be with prejudice. This court must not be used to shield a violation of international law, nor to criminalize commonplace, "innocuous[s]" political rhetoric and protest.

Respectfully Submitted,

___/s/__Collin Poirot______

Collin Poirot (NY 5673405)
(pro hac vice)
cpoirot.law@gmail.com
2603 Oak Lawn, Suite 300
Dallas TX 75219
214-392-2281

Mark Kleiman (SBN 115919)
mark@krlaw.us
KLEIMAN / RAJARAM
12121 Wilshire Blvd., Ste. 810
Los Angeles, CA 90025
Tel: 310-392-5455 / Fax: 310-306-8491

Attorneys for Defendants
CODEPINK WOMEN FOR PEACE
CODEPINK ACTION FUND

**CERTIFICATE OF SERVICE**

I hereby certify that on July 25, 2025, I electronically filed the foregoing with the Clerk of the Court for the United States District Court, Central District of California by using the CM/ECF System.

Participants in the case who are registered CM/ECF Users will be served by the CM/ECF System.

Dated: July 25, 2025 ___/s/__Collin Poirot______

Collin Poirot

## L.R. 11-6.2 CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Defendant CODEPINK certifies that this brief contains 1,882 words, which complies with the word limit of L.R. 11-6.1.

Dated: July 25, 2025

___/s/__Collin Poirot________
Collin Poirot
Attorney for Defendants
CODEPINK WOMEN FOR PEACE
CODEPINK ACTION FUND