UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:24-cv-05704-SVW-PVC | Date | August 13, 2025 |
|---|---|---|---|
| Title | *Ronen Helmann v. Codepink Women for Peace et al* | | |

Present: The Honorable   STEPHEN V. WILSON, U.S. DISTRICT JUDGE

| Daniel Tamayo | N/A |
|---|---|
| Deputy Clerk | Court Reporter / Recorder |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| N/A | N/A |

**Proceedings:** ORDER GRANTING PYM'S MOTION TO DISMISS [112] AND DENYING CODEPINK'S MOTION TO DISMISS [114]

## I. Introduction

Before the Court are motions to dismiss brought by CodePink Action Fund and CodePink Women for Peace ("CodePink"); the Palestinian Youth Movement ("PYM"); Remo Ibrahim; and Courtney Schirf (collectively, "Defendants"). ECF Nos. 112, 114. For the following reasons, PYM's motion is GRANTED and CodePink's motion is DENIED.

## II. Factual and Procedural Background

The Court reviewed the facts of this case extensively in its previous order. Order on Motions to Dismiss, ECF No. 105 ("Order"), at 2-7. Here, the Court briefly summarizes the relevant facts and reviews Plaintiffs' new allegations made in their amended pleading.

|  |  | : |  |
|---|---|---|---|
|  | Initials of Preparer | DTA |  |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:24-cv-05704-SVW-PVC | Date | August 13, 2025 |
|---|---|---|---|
| Title | *Ronen Helmann v. Codepink Women for Peace et al* | | |

    This case arises out of the events that took place at the Adas Torah Synagogue (the "Synagogue"), an Orthodox Jewish house of worship, on June 23, 2024. Third Amended Complaint, ECF No. 106 ("TAC") ¶ 2. On June 23, 2024, the Synagogue, alongside its usual daily religious services, hosted a special "Aliyah Event," where a real estate company presented opportunities to purchase homes in Israel; the event allegedly held religious significance for many attendees. *Id.* ¶¶ 128-34, 220. Plaintiffs Ronen Helmann, Noah Pollak, and StandWithUs Center for Legal Justice (collectively, "Plaintiffs") are various individuals who attempted to enter the Synagogue on June 23, 2024, in order to attend the Aliyah Event, regularly scheduled prayer services, or both.[1] *Id.* ¶¶ 27, 242-314.

    On June 21, 2024, CodePink's Los Angeles and Southeast Los Angeles chapters made multiple-image posts on their Instagram accounts urging: "HELP US ADVOCATE THE STOP OF HOMES BEING SOLD ON STOLEN PALESTINIAN LAND" at "A MEGA ZIONIST REAL ESTATE EVENT…IN LA THIS WEEK!" *Id.* ¶¶ 144-45. The posts placed the date and address of the Aliyah Event at the Synagogue, which was identified by name, inside of an inverted red triangle. *Id.* ¶¶ 146-149. Plaintiffs allege this inverted triangle is used by Hamas to celebrate its use of violence against Jews and also "as a target designator to identify Jews and Jewish targets for extermination." *Id.* ¶¶ 150-51.

    PYM also posted on its social media profiles calling for members to protest the Aliyah Event. *Id.* ¶¶ 152-57. Specifically, on June 20, 2024, PYM posted an image on its Instagram account that called for its members to show up at "12 PM SHARP" and declaring "OUR LAND IS NOT FOR SALE." *Id.* ¶¶ 152, 155. The image urged members to "STAND AGAINST SETTLER EXPANSION AT SUNDAY'S REAL ESTATE EVENT SELLING HOMES TO BUILD 'ANGLO NEIGHBORHOODS' IN PALESTINE" and stated that "Racist settler expansionists are not welcome in Los Angeles! This blatant example of land theft is operating in our own backyard. The Nakba[2] is ongoing and must be confronted!" *Id.* ¶¶ 155-56. The image concluded by stating "FROM THE BELLY OF THE BEAST NO JUSTICE, NO PEACE." *Id.* ¶ 157. Plaintiffs allege that "belly of the beast" refers to a synagogue. *Id.* A picture of

---

[1] Pollak and StandWithUs are plaintiffs in the related case also before the court, *StandWithUs Center for Legal Justice v. CodePink et al*, 2:24-cv-06253-SVW-PVC. No amended complaint was filed in that case after the Court issued its order on the first motion to dismiss. For simplicity, and because the allegations as to Pollak and StandWithUs are contained in the complaints in both cases, the Court includes them as "Plaintiffs" here despite that they are only plaintiffs in the other case.

[2] The "Nakba" refers to the defeat of the Arab armies in the 1948 Arab-Israeli War. *Id.* ¶ 212, n.71.

| | : |
|---|---|
| Initials of Preparer | DTA |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:24-cv-05704-SVW-PVC | Date | August 13, 2025 |
|---|---|---|---|
| Title | *Ronen Helmann v. Codepink Women for Peace et al* | | |

PYM's social media post is included in the TAC and is reproduced below.[3]



Remo Ibrahim and Courtney Schirf are various principals of PYM. *Id*. ¶¶ 79, 81. Schirf, a resident of Austin, Texas, is a lead organizer for PYM, and controls PYM's social media profiles. *Id*. ¶¶ 79-80. Ibrahim, a resident of Mission Viejo, California, is the head of the local chapter of PYM for Los Angeles, Orange County, and the Inland Empire, and has control over the local chapter of PYM's social media profiles. *Id*. ¶¶ 81-83. Schirf and Ibrahim also promoted the protest under PYM's name on their social media profiles. *Id*. ¶ 154.

---

[3] This picture was submitted for the first time in Plaintiffs' amended pleading, or the Court would have included it in its prior order. Neither the previous complaint, nor the TAC, include a picture of CodePink's post.

| | : |
|---|---|
| Initials of Preparer | DTA |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:24-cv-05704-SVW-PVC | Date | August 13, 2025 |
|---|---|---|---|
| Title | *Ronen Helmann v. Codepink Women for Peace et al* | | |

On June 23, 2024, shortly before the Aliyah Event, more than 200 individuals marched into the Pico-Robertson neighborhood and physically obstructed access to the Synagogue. *Id.* ¶ 221. Once the mob was in front of the Synagogue, chaos and violence quickly ensued. *Id.* ¶ 222.

Plaintiffs each attempted to enter the Synagogue to attend either the Aliyah Event, prayer services, or both, and each either encountered difficulties entering the Synagogue or were completely unable to enter at all because of the commotion caused by the rioting mob. *Id.* ¶¶ 242-314. Plaintiffs filed claims against Defendants alleging they violated the Freedom of Access to Clinic Entrances Act (the "FACE Act").[4] *Id.* ¶¶ 380-397.

Defendants then moved to dismiss, which the Court ruled on in its previous order. ECF Nos. 86, 88; Order at 1, 35. In that order, the Court dismissed without prejudice all outstanding claims except the FACE Act claim against CodePink. Order at 35.

Subsequent to that order, Plaintiffs filed the TAC, which chiefly re-alleged the FACE Act claim against PYM, Ibrahim, and Schirf, and added new allegations relevant to that claim. Three sets of allegations are pertinent: first, additional allegations regarding the nature of PYM's social media post, second, allegations regarding PYM's history of disruptive and violent protests, and third, allegations regarding statements made by PYM after the riot.

First, as to the social media post, Plaintiffs allege that numerous terms and elements of the post have inflammatory and/or anti-Semitic meaning or connotation. Plaintiffs first explain some historical anti-Semitic statements known as "blood libels," namely the lie that Jews used "the blood of Christian children to bake matzahs," the "continuing belief that Jews were responsible for the Passion and Crucifixion of Jesus," and "allegations of well poisoning." *Id.* ¶¶ 158-164. These blood libel accusations "often led to pogroms, violent riots launched against Jews and frequently encouraged by government authorities." *Id* ¶ 163. Plaintiffs allege that "[t]he latest blood libel falsely accuses Jews and Israelis of

---

[4] Plaintiffs filed other claims in their original complaint, but after the Court dismissed those claims, Plaintiffs only re-allege the FACE Act claim against CodePink and PYM.

| | : |
|---|---|
| Initials of Preparer | DTA |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:24-cv-05704-SVW-PVC | Date | August 13, 2025 |
|---|---|---|---|
| Title | *Ronen Helmann v. Codepink Women for Peace et al* | | |

selling real estate stolen from Palestinians constituting an international war crime." *Id*. ¶ 164. Plaintiffs similarly allege that PYM's social media post's reference to "land theft" follows from a "general antisemitic belief that Jews and Israelis are not entitled to their own land in Israel." *Id*. ¶¶ 181-85.

Other terms in the social media post similarly have special meaning designed to instigate violence and inflame anti-Semitism. *Id*. ¶¶ 188-200. The use of "Anglo" and "racist" in the social media post implies that the event is racist because "Anglo" is associated with white people, but the term "Anglo" in the real estate ad refers to English-speaking neighborhoods, making "racist" also inaccurate. *Id*. ¶¶ 189-90. The term "settler" implies that Israel is committing an atrocity against Palestinians similar to what Americans did to native populations. *Id*. ¶ 195.

Second, Plaintiffs allege several other incidents where PYM or Ibrahim were violent or disruptive prior to the riot.[5] On April 3, 2024, PYM organized a protest in Toronto at which protestors attacked Toronto police and threw horse manure. *Id*. ¶ 213. On May 4, 2024, the LAPD arrested Ibrahim while he was participating in an encampment at USC. *Id*. ¶¶ 204-205. In May 2024, a pro-Israel summit in Dallas, Texas was cancelled because of threats made by PYM. *Id*. ¶ 214.

Finally, after the riot, Plaintiffs allege that PYM made two statements. The first is a statement by Ibrahim in an interview after the riot, where he said:

> This real estate event was advertised for weeks, the LA community was outraged, and we showed up, because we show up to confront Zionism and white supremacy wherever it manifests, that's the bottom line.

TAC ¶ 336.

---

[5] Plaintiffs also make allegations regarding protests not organized by PYM, or that took place after the riot. *See id*. ¶¶ 208-211 (describing protests in Teaneck, NJ, organized by organizer that Ibrahim allegedly "learned" from); 215-217 (describing threats and protests in July 2024 and January 2025; 219 (describing violence by "counter-protestors" at "pro-Palestinian rally"). These events are irrelevant because they do not predate the events of this case or do not directly involve PYM.

| | : |
|---|---|
| Initials of Preparer | DTA |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:24-cv-05704-SVW-PVC | Date | August 13, 2025 |
|---|---|---|---|
| Title | *Ronen Helmann v. Codepink Women for Peace et al* | | |

The second is a social media post by PYM on June 24, 2024 (the day after the riot), saying:

> We will not back down: no institution complicit in colonization and genocide gets a pass. Across North America, we have a role to play in the dismantling of Zionism, its genocidal war machine, and its political institutions wherever they manifest. The selling of stolen Palestinian land in North American cities will not go unchallenged, no matter where the events take place. We can and will continue to confront any institution that seeks to promote, celebrate, or aid the Zionist settler project in our own backyards.

TAC ¶ 337.

Defendants move to dismiss the amended complaint, and Plaintiffs oppose dismissal. ECF Nos. 112, 114, 116, 117.

### III.    Legal Standard

A motion to dismiss under Rule 12(b)(6) challenges the legal sufficiency of the claims stated in the complaint. *See* Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss, the plaintiff's complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. A complaint that offers mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Id.*; *see also Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) (citing *Iqbal*, 556 U.S. at 678).

In reviewing a Rule 12(b)(6) motion, a court "must accept as true all factual allegations in the complaint and draw all reasonable inferences in favor of the nonmoving party." *Retail Prop. Trust v. United Bhd. of Carpenters & Joiners of Am.*, 768 F.3d 938, 945 (9th Cir. 2014). Thus, "[w]hile legal conclusions can provide the complaint's framework, they must be supported by factual allegations. When

| | : | |
|---|---|---|
| | Initials of Preparer | DTA |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:24-cv-05704-SVW-PVC | Date | August 13, 2025 |
|---|---|---|---|
| Title | *Ronen Helmann v. Codepink Women for Peace et al* | | |

there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679.

### IV.   Discussion

#### A.   PYM's Liability

The FACE Act gives a private right of action to sue anyone who: (1) "by force or threat of force or by physical obstruction, (2) intentionally injures, intimidates or interferes with or attempts to injure, intimidate or interfere with" (3) "any person lawfully exercising or seeking to exercise the First Amendment right of religious freedom at a place of religious worship." 18 U.S.C. § 248(a).

Plaintiffs argue that PYM violated the FACE Act through two different actions: (1) its social media post encouraging protest at the Aliyah Event; and (2) the actions of the protestors who allegedly obstructed access to the Synagogue. The Court will address each in turn.

##### 1.   PYM's social media post is not plausibly a true threat.

Up first is Plaintiffs' theory that PYM's social media post violated the FACE Act. To support this theory, they must show that the post itself constitutes "force," a "threat of force," or "physical obstruction." *See* 18 U.S.C. § 248(a). At the outset, the post does not involve "force" or "physical obstruction"—it is a purely speech-based communication.

So, for this post to violate the FACE Act, it must constitute a "threat of force." In *Planned Parenthood of Columbia/Willamette, Inc. v. Am. Coal of Life Activists*, the Ninth Circuit defined "threat of force" as a "true threat" that "comports with the First Amendment." 290 F.3d 1058, 1071 (9th Cir. 2002). A true threat is "a statement which, in the entire context and under all circumstances, a reasonable person would foresee would be interpreted by those to whom the statement is communicated as a serious

|  | : |
|---|---|
| Initials of Preparer | DTA |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:24-cv-05704-SVW-PVC | Date | August 13, 2025 |
|---|---|---|---|
| Title | *Ronen Helmann v. Codepink Women for Peace et al* | | |

expression of intent to inflict bodily harm on that person."[6] *Id.*

In determining whether this definition is met, courts consider "the entire factual context." *Id.* at 1075. A true threat need not be explicit—the "fact that a threat is subtle does not make it less of a threat." *Id.* Indeed, "a statement that does not explicitly threaten violence may be a true threat where a speaker makes a statement against a known background of targeted violence." *Thunder Studios, Inc. v. Kazal*, 13 F.4th 736, 746 (9th Cir. 2021) (citing *Virginia v. Black*, 538 U.S. 343, 360 (2003) (e.g., because of its history as a white-supremacist symbol, burning a cross is "often" a true threat)).

Importantly, a "threat doesn't need to be communicated directly to its victim or specify when it will be carried out." *United States v. Parr*, 545 F.3d 491, 497 (7th Cir. 2008). Quite the contrary, "a statement may qualify as a [true] threat even if it is never communicated to the victim." *United States v. Spring*, 305 F.3d 276, 280-81 (4th Cir. 2022).

With the contours of a true threat in mind, the Court turns to the social media post at issue.

The Court's previous order found that PYM's use of the phrases "no justice, no peace" and "belly of the beast" did not make its social media post a true threat. Order at 22-24. Plaintiffs now argue that several other words and elements of the social media post demonstrate that the post is plausibly a true threat. Specifically, Plaintiffs argue that the post uses inflammatory and/or anti-Semitic words, those being "racist," "settler," "land theft," "Anglo neighborhoods," and has a red tinge, all elements designed to "stir up the maximum hatred against the targeted Jews." Plaintiff's Opposition to PYM Motion to Dismiss, ECF No. 117 ("Opp."), at 5. Plaintiffs also add allegations to the complaint regarding historical anti-Semitism, called "blood libel," that led to violence against Jews, and argue that this historical anti-Semitism is linked to the words and symbols in PYM's post. TAC ¶¶ 158-164; Opp. at 5-8.

---

[6] CodePink in its briefing and at the hearing raised arguments about subjective intent under *Counterman v. Colorado*, which held that courts should apply a "recklessness" standard when evaluating true threats. *See* 600 U.S. 66, 79 (2023). The Court considered this issue in a detailed footnote in its previous order and found it irrelevant in light of the FACE Act itself incorporating a specific subjective intent requirement, which the Court found was adequately plead here. *See* Order at 18, n.8.

| | : |
|---|---|
| Initials of Preparer | DTA |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:24-cv-05704-SVW-PVC | Date | August 13, 2025 |
|---|---|---|---|
| Title | *Ronen Helmann v. Codepink Women for Peace et al* | | |

As an initial matter, Plaintiffs fail to connect PYM's post to their allegations regarding historical anti-Semitism. Beyond Plaintiffs' conclusory allegation that "[t]he latest blood libel falsely accuses Jews and Israelis of selling real estate stolen from Palestinians constituting an international war crime," TAC ¶ 164, no allegations or argument connects any elements of PYM's post to historical anti-Semitism mentioned in the TAC, like the lie that Jewish people "were charged with using the blood of Christian children to bake matzahs." *Id*. ¶ 161. The claims in PYM's post bear no factual resemblance to the historical examples of "blood libels" described in the TAC.

Nor would PYM's post be a true threat even if Plaintiffs successfully made such a connection. Even taking Plaintiffs' allegations that the various elements of PYM's post are inflammatory and anti-Semitic as true, and assuming *arguendo* that the post was also connected to a historical tradition of anti-Semitism, the Ninth Circuit has upheld similar speech.

In *United States v. Bagdasarian*, the defendant, in the months leading up to the 2008 presidential election, posted on an online forum two greatly offensive statements regarding then-candidate for president Barack Obama: "Re: Obama fk the niggar, he will have a 50 cal in the head soon" and "shoot the nig country fkd for another 4 years+, what nig has done ANYTHING right? ? ? ? long term? ? ? ? never in history, except sambos." 652 F.3d 1113, 1115 (9th Cir. 2011). The first statement "coupled a racial slur with an assassination forecast during a highly controversial campaign" and the second statement implored readers to shoot Obama, with the court noting that "[t]here are many unstable individuals in this nation to whom assault weapons and other firearms are readily available, some of whom might believe that they were doing the nation a service were they to follow [the defendant's] commandment." *Id*. at 1120. Nevertheless, the court found that neither statement "would be construed by a reasonable person as a genuine threat by [the defendant] against Obama" because the meaning was "absolutely plain" and "[did] not constitute a threat." *Id*.

Even assuming PYM's post contains terms that are plausibly anti-Semitic, it falls squarely within the Ninth Circuit's analysis in *Bagdasarian*. PYM's post couples allegedly anti-Semitic terms with an instruction to go to the Synagogue at the time of the event. Plaintiffs argue that the inflammatory and anti-Semitic words and elements of the social media post "stirr[ed] up hatred against Jews" and then "instructs followers to appear at the exact location…and moment…when congregants are also planning to be at the

| | : | |
|---|---|---|
| | Initials of Preparer | DTA |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:24-cv-05704-SVW-PVC | Date | August 13, 2025 |
|---|---|---|---|
| Title | *Ronen Helmann v. Codepink Women for Peace et al* | | |

synagogue." Opp. at 8. But the Ninth Circuit rejected almost precisely this argument in *Bagdasarian*, finding that the "coupling of a racial slur with an assassination forecast" was not a true threat, even accounting for the potential actions of readers of the statement who may be inspired to go and commit the violence contemplated by the statement. *Bagdasarian*, 652 F.3d at 1120. Moreover, the actual contemplation of violence was abundantly clear in *Bagdasarian*, where the defendant's statements referred to Obama having "a 50 cal in the head soon" and asked readers to shoot him or else the country would be "fkd for another 4 years+." *Id*. Here, the instruction to readers is not to go commit violence at the Synagogue—it is to protest the Aliyah Event.

Indeed, as the Court found in its previous order, PYM's post most resembles the kind of "political hyperbole" that courts hold is protected by the First Amendment even when it is "vituperative, abusive, and inexact." *See Watts v. United States*, 394 U.S. 705, 708 (1969) (holding that protestor of military draft's statement that "if they ever make me carry a rifle, the first man I want to get in my sights is L.B.J." was not a true threat but instead "political hyperbole"). That PYM's post may contain incendiary or even hateful rhetoric does not strip it of First Amendment protection. *See N. A. A. C. P. v. Claiborne Hardware Co.*, 458 U.S. 886, 902, 929 (1982) (finding that the statement "if we catch any of you going in any of them racist stores, we're gonna break your damn neck," was protected speech); *Sines v. Kessler*, 324 F. Supp. 3d 765, 794 (W.D. Va. 2018) (holding that defendant's statement that counter-protestors of the 2017 Charlottesville Unite the Right rally were "savages" and statements made on defendant's podcast including "Now come on, beating up the wrong negro ... is that even a possibility? Beat up the wrong nigger ...." were "protected speech").

Nor do any of Plaintiffs' new allegations or arguments establish that PYM's social media post is akin to the type of coded message that the Ninth Circuit has held is a true threat that violates the FACE Act. For example, in *Planned Parenthood*, anti-abortion activists published "GUILTY" posters naming abortion providers that closely resembled earlier "WANTED" posters. *Planned* Parenthood, 290 F.3d at 1085 (9th Cir. 2002). After doctors appeared on those earlier posters, they were murdered. *Id*. In that context, the Ninth Circuit said the "GUILTY" posters' message was clear: "You're Wanted or You're Guilty; You'll be shot or Killed." *Id.* Indeed, the Court found in its previous order that the red triangle used in CodePink's post, taking its meaning alleged by Plaintiffs as true, served a similar purpose. *See* Order at 19-22.

| | : |
|---|---|
| Initials of Preparer | DTA |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:24-cv-05704-SVW-PVC | Date | August 13, 2025 |
|---|---|---|---|
| Title | *Ronen Helmann v. Codepink Women for Peace et al* | | |

Plaintiffs fail to allege a similar specific meaning attached to any words or symbols in PYM's post. Plaintiffs' allegations here about the various words and elements of the social media post differ greatly from the meaning of the "WANTED" posters in *Planned Parenthood*. Plaintiffs' allegations that the words and elements of the social media post are inflammatory and anti-Semitic resemble more the Ninth Circuit's analysis in *Bagdasarian*, where the court found the statements in question to not be threats.

Nor do the events alleged about PYM's prior protests establish a pattern such that the words or symbols in PYM's post could take on such a meaning. For example, the "WANTED" posters in *Planned Parenthood* took on additional meaning that made them contextually true threats because of the pattern of doctors being murdered after appearing on a poster. *See Planned Parenthood*, 290 F.3d at 1085. However, in *Planned Parenthood*, this pattern was essentially one-to-one; i.e., if a doctor appeared on a poster, they were targeted for murder. Plaintiffs' allegations about PYM's prior protests utterly fail to establish this same kind of one-to-one relationship. Not only do Plaintiffs' allegations not describe how many other total PYM protests took place (and whether those protests were or were not violent), but the allegations do not clarify whether the same words and symbols Plaintiffs object to in PYM's post here were used in organizing any of these prior protests.

PYM's prior violent and disruptive protests also do not add sufficient context to make PYM's social media post a threat. Here, because the plain language of PYM's statement contains no threat, its potential history of violence is irrelevant—that a person has committed violence once does not necessarily mean that everything they say in the future will be violent or threatening.

In sum, the Court is left without any basis to infer that PYM's post is a true threat. The post is political speech that calls for protest—such speech is protected by the First Amendment. *See Humanitarian L. Project v. Reno*, 205 F.3d 1130, 1137 (9th Cir. 2000) ("[A]dvocacy is pure speech protected by the First Amendment.").

Because PYM's post is not a true threat, it cannot serve as a "threat of force" under the FACE Act. The Court therefore does not need to analyze Plaintiffs' FACE Act claims against PYM, Ibrahim, and Schirf beyond the first element.

|  |  | : |  |
|---|---|---|---|
|  | Initials of Preparer | DTA |  |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:24-cv-05704-SVW-PVC | Date | August 13, 2025 |
|---|---|---|---|
| Title | *Ronen Helmann v. Codepink Women for Peace et al* | | |

**2.      Plaintiffs have not plausibly alleged that the individual protestors were agents of PYM acting within the scope of their authority.**

In its previous order, the Court spelled out the scope of potential vicarious liability under the FACE Act and found 1) that, in order for PYM to be vicariously liable for the actions of individual protestors, Plaintiffs must allege an agency relationship between PYM and the protestors, and 2) that no such relationship was adequately alleged. Order at 25-32. Specifically, the Court found that Plaintiffs made no allegations relevant to establishing an agency relationship between PYM and the protestors. *Id.* at 30-31.

Plaintiffs' TAC adds allegations of two statements made by PYM after the riot, statements that Plaintiffs argue demonstrate that PYM ratified the actions of individual protestors in violating the FACE Act and therefore that PYM should be liable because its ratification created an agency relationship with these individual protestors. TAC ¶¶ 336-37; Opp. at 12-13. Once again, the two statements are:

> This real estate event was advertised for weeks, the LA community was outraged, and we showed up, because we show up to confront Zionism and white supremacy wherever it manifests, that's the bottom line.

> We will not back down: no institution complicit in colonization and genocide gets a pass. Across North America, we have a role to play in the dismantling of Zionism, its genocidal war machine, and its political institutions wherever they manifest. The selling of stolen Palestinian land in North American cities will not go unchallenged, no matter where the events take place. We can and will continue to confront any institution that seeks to promote, celebrate, or aid the Zionist settler project in our own backyards.

TAC ¶¶ 336-37.

These statements fail to raise an inference of an agency relationship between PYM and the protestors based on actual or apparent authority. PYM's first statement saying "we showed up" could mean that PYM's message influenced people who share PYM's point of view to show up, or "we" could

|   |   | : |   |
|---|---|---|---|
|   | Initials of Preparer | DTA |   |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:24-cv-05704-SVW-PVC | Date | August 13, 2025 |
|---|---|---|---|
| Title | *Ronen Helmann v. Codepink Women for Peace et al* | | |

refer to the protestors and PYM as a unified front. Even granting the second, more generous interpretation, "[t]o establish an agency relationship, Plaintiffs must allege that both the principal and the agent have manifested an assent that the principal has the right to control the agent." *W. Sugar Co-op. v. Archer-Daniels-Midland Co.*, No. CV 11-3473 CBM MANX, 2012 WL 3101659, at *5 (C.D. Cal. July 31, 2012) (citing *United States v. Bonds,* 608 F.3d 495, 506 (9th Cir.2010)); *Bauman v. Daimler Chrysler Corp.,* 644 F.3d 909, 923 (9th Cir.2011). Here, while "we showed up" perhaps denotes some association between PYM and the protestors, no facts raise any inference of the protestors' assent to be controlled, a critical stumbling block in the way of finding an agency relationship between PYM and the protestors.

Indeed, courts have found more substantial allegations regarding a protest organizer's control over protestors insufficient to plead an agency relationship. The Fifth Circuit, analyzing a Black Lives Matter protest, found that the plaintiff had not adequately plead an agency relationship between protest organizers and protestors despite allegations that the organizer "organized the protest, was its leader, and often directed the protesters' movements." *Doe v. Mckesson*, 71 F.4th 278, 287 (5th Cir. 2023), *cert. denied,* 144 S. Ct. 913 (2024). The court held that these allegations failed to demonstrate that the protestors were "subject to [the organizer's] right to control." *Id*. (internal citation and quotation marks omitted). In terms of the organizer's control over protestors, the allegations in *McKesson* fly far above Plaintiffs' allegations here. The Court can no more infer a right to control from PYM's statements after the fact than from PYM's social media post itself, which the Court already rejected in its previous order as a potential theory of liability. *See* Order at 30-32.

Nor can the Court infer ratification by PYM of the protestors' actions. "Ratification is the affirmance of a prior act done by another," in which case "the act is given effect as if done by an agent acting with actual authority." *Kristensen v. Credit Payment Servs. Inc.*, 879 F.3d 1010, 1014 (9th Cir. 2018) (quoting Restatement (Third) of Agency § 4.01).

Here, PYM's statements simply fail to ratify the violence or blocking of entrances that occurred at the synagogue. The statements, in sum, amount to PYM stating that a protest happened, that some of its members were there, and that PYM will continue in the future to protest what it claims is "Zionism," "white supremacy," or "the selling of stolen Palestinian land in North American cities." Neither of PYM's statements even acknowledge that the protest turned into a riot, let alone acknowledge any of the alleged

| | : |
|---|---|
| Initials of Preparer | DTA |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:24-cv-05704-SVW-PVC | Date | August 13, 2025 |
|---|---|---|---|
| Title | *Ronen Helmann v. Codepink Women for Peace et al* | | |

behavior by individual protestors that violated the FACE Act. While Plaintiffs certainly contest PYM's characterizations of the riot, the way PYM discusses the riot, accurate or not, fails to suggest that PYM ratified FACE Act violations.

Moreover, Plaintiffs' failure to plead a pre-existing agency relationship is fatal to their ratification argument in the first instance. For a principal to be able to ratify an agent's tort, there must be a pre-existing agency relationship between the principal and the agent who committed the originally unauthorized tort. *Batzel v. Smith*, 333 F.3d 1018, 1036 (9th Cir. 2003), *superseded in part by statute on other grounds as stated in Breazeale v. Victim Servs., Inc.*, 878 F.3d 759, 766–67 (9th Cir. 2017) ("Although a principal is liable when it ratifies an originally unauthorized tort, the principal-agent relationship is still a requisite, and ratification can have no meaning without it."); *see also Canilao v. City Com. Invs., LLC*, 613 F. Supp. 3d 1236, 1249 (N.D. Cal. 2022) ("In the Ninth Circuit, agency through ratification presupposes an existing agency relationship.") (citing *Batzel*, 878 F.3d at 766-67).

Because the Court finds Plaintiff has not sufficiently plead an agency relationship between PYM and the protestors in the first instance, any theory of ratification stumbles at this first hurdle. PYM cannot ratify originally unauthorized violations of the FACE Act on behalf of those it had no agency relationship with already.

Therefore, the facts alleged do not "support a reasonable inference" of an agency relationship between PYM and any of its members who violated the FACE Act. *See Sapan v. Shore Cap. Corp.*, No. 8:23-cv-01974, 2024 WL 4002620, at *7 (C.D. Cal. May 31, 2024). Without this relationship, PYM cannot be vicariously liable for the actions of the protestors.

In sum, neither PYM's social media post in advance of the riot nor PYM's statements regarding the riot after the fact provide a viable basis for liability. Therefore, the Court grants PYM's motion to dismiss.

### 3. The Court dismisses the claims against PYM with prejudice.

The Court must grant leave to amend unless it is clear that the complaint's deficiencies cannot be cured by amendment. *Lucas v. Department of Corrections,* 66 F.3d 245, 248 (9th Cir.1995). When

| | : | |
|---|---|---|
| Initials of Preparer | DTA | |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:24-cv-05704-SVW-PVC | Date | August 13, 2025 |
|---|---|---|---|
| Title | *Ronen Helmann v. Codepink Women for Peace et al* | | |

amendment would be futile, dismissal may be ordered with prejudice. *Dumas v. Kipp,* 90 F.3d 386, 393 (9th Cir.1996).

In opposing the first motion to dismiss as to PYM, Plaintiffs argued that "belly of the beast" and "no justice, no peace" made PYM's social media post a threat, and the Court found that Plaintiffs failed to demonstrate that those phrases constituted a threat. Order at 22-24. Now, Plaintiffs again fail to show that PYM's social media post is a threat, even focusing on many other aspects of the post and alleging additional context and meaning to those aspects of the post. It has become clear that it would be futile to continue attempting to reinterpret PYM's post—it simply is not plausibly a threat. Plaintiffs cannot change the words of the post or their plain meaning. Therefore, the Court finds that further amendment would be futile and dismisses the claims against PYM, Ibrahim, and Schirf with prejudice.

### B.     CodePink's Liability

Plaintiffs' now-operative complaint adds few facts regarding CodePink, and the parties' briefing on CodePink's motion to dismiss the amended pleading presents no new arguments that change the Court's thinking as to CodePink's liability in the case.[7] For the reasons laid out in detail in the Court's previous order, the Court again finds that Plaintiffs sufficiently state a claim as to CodePink for liability on the basis that its social media post prior to the riot was a threat of force under the FACE Act, but not on the basis that CodePink ratified the acts of individual protestors who violated the FACE Act. *See* Order at 19-22, 24-32. Therefore, the Court denies CodePink's motion to dismiss.

---

[7] CodePink argues that, even if the social media post is a threat, Plaintiffs have not sufficiently alleged that CodePink intended to block the Synagogue, failing to satisfy the intent element of the FACE Act. In its previous order, the Court found that the use of the red triangle could plausibly be an attempt to intimidate Jewish worshippers from going to the Synagogue or an attempt to incite others to disrupt access to the Synagogue, either of which would satisfy the FACE Act's intent element. Order at 24-25. No new allegations or argument disturb that finding now. Moreover, to the extent that this argument by CodePink argues that Plaintiffs' allegations are not true or that the reasonable inferences made in Plaintiffs' favor are not accurate, particularly those about the meaning of the red triangle, those arguments should be made after the pleadings stage. *See Planned Parenthood*, 290 F.3d at 1069 ("[I]t is a jury question whether actions and communications are clearly outside the ambit of First Amendment protection.").

| | : | |
|---|---|---|
| | Initials of Preparer | DTA |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:24-cv-05704-SVW-PVC | Date | August 13, 2025 |
|---|---|---|---|
| Title | *Ronen Helmann v. Codepink Women for Peace et al* | | |

**V.      Conclusion**

For the foregoing reasons, PYM's motion to dismiss is GRANTED, and CodePink's motion to dismiss is DENIED. The claims against PYM, Ibrahim, and Schirf are dismissed with prejudice.

As to the remaining claims, the Court sets a trial date for January 13, 2026, at 9:00 a.m., with a pretrial conference set for January 5, 2026, at 3:00 p.m.

**IT IS SO ORDERED.**

| | : | |
|---|---|---|
| | Initials of Preparer | DTA |